**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA CLEMENS, JORDAN SIMENSEN, and ADRIA DESPRES, individuals, for themselves and all members of the putative class and on behalf of aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"),<br><br>  Plaintiffs,<br><br>  v.<br><br>HAIR CLUB FOR MEN, LLC, a Delaware corporation, and DOES 1 through 100, inclusive,<br><br>  Defendant. | No. C 15-01431 WHA<br><br><br><br><br><br><br><br><br><br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO CERTIFY CLASS** |

**INTRODUCTION**

In this wage-and-hour putative class action, plaintiffs seek to certify a class. For the reasons stated below, plaintiffs' motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Our plaintiffs are three former hourly employees of defendant Hair Club for Men, LLC, which sold hair restoration products and performed non-surgical treatment for hair loss at twelve treatment centers located throughout California. The centers also offered other services and products similar to a traditional hair salon in connection with their hair restoration services (Avis Dep. at 15–17).

1    All centers in California had the same hours of operation, management structure, and
2 payroll procedures. Each employed one salaried managing director who supervised hourly
3 staff, oversaw the services offered, and managed finances and inventory. In addition to salaries,
4 Hair Club paid its managing directors bonuses based on their ability to control costs, including
5 overtime and premium pay. Each center employed four categories of hourly employees that the
6 managing directors supervised: (i) center administrators, who performed reception
7 responsibilities including scheduling appointments with clients, (ii) stylists, who performed
8 services for clients at their scheduled appointments and sold products, and (iii) new business
9 consultants, who acted as sales representatives and met with prospective clients, and (iv) client
10 relationship managers, who handled business with current clients (*id.* at 27–31, 57–60, 69).

11    All centers used the same procedures for scheduling employees' work assignments.
12 Center administrators worked shifts at the front desks of their respective centers during business
13 hours but did not have any scheduled appointments. Stylists worked schedules comprising
14 appointments to provide services to their clients. Those appointments were scheduled by center
15 administrators. New business consultants generally worked according to a schedule of
16 appointments set by Hair Club's National Contact Center, although they also scheduled some
17 follow-up appointments themselves. Client relations managers managed their own schedules
18 (*id.* at 90–95).

19    Employees clocked in and out of work by inputting an identification number and having
20 their hand prints scanned by a biometric device. Management could edit time entries as
21 recorded by the biometric handprint scanner. The timekeeping system marked all such edits
22 with an "X" next to the edited entry. Although the system maintained a history of edits, Hair
23 Club required employees to submit timesheet correction forms documenting the reason for any
24 edit the employee requested (Avis Dep. at 57–60, 111–12, 136; Brown Dep. at 70; Ekblad Dep.
25 at 85; Garcia Dep. at 62; Lancaster Dep. at 96).

26    Plaintiff Teresa Clemens worked as a client relationship manager at the San Francisco
27 center from April 2014 to October 2014 (Clemens Decl. ¶ 2; Clemens Dep. at 90). Plaintiff
28 Jordan Simensen worked as a stylist at the San Francisco center from February 2005 to

2

September 2015 (Simensen Dep. at 72). Plaintiff Adria Despres worked as a center administrator at the San Francisco center from October 2011 to May 2013 (Despres Decl. ¶ 2; Despres Dep. at 144, 284–85).

Plaintiffs commenced this action in March 2015 claiming that Hair Club imposed uniform policies and practices that denied them meal periods and rest breaks as required by California law, that Hair Club's managing directors improperly edited timesheets resulting in off-the-clock work for which plaintiffs seek unpaid wages, and that Hair Club's wage statements did not contain required information. Finally, plaintiffs bring several additional claims derivative of those already addressed. This order follows full briefing and oral argument.

**ANALYSIS**

Class certification is appropriate when a plaintiff can show that all of the prerequisites of Rule 23(a) and one of the requirements of Rule 23(b) has been met. *Abdullah v. United States Security Associates, Inc.*, 731 F.3d 952, 956–57 (9th Cir. 2013). Rule 23 considers whether "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Plaintiffs seek certification under Rule 23(b)(3), which requires them to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Hair Club does not dispute that plaintiffs have satisfied the requirements of numerosity, adequacy, or typicality. The only issues in dispute are whether common questions will predominate and whether class adjudication is superior to other available methods. (If common questions predominate, the bare requirement of commonality in Rule 23(a)(2) will be satisfied.) This order addresses each requirement in turn. It then addresses several evidentiary issues

### 1. NUMEROSITY.

Under Rule 23(a)(1) the prerequisite of numerosity is satisfied by showing that "joinder of all members is impracticable." This prerequisite is not tied to any fixed numerical threshold but is generally satisfied "when a class includes at least forty members." *Rannis v. Recchia*, 380 Fed. Appx. 646, 650 (9th Cir. 2010). Here, the proposed class includes at least two hundred forty-eight members (Pls.' Appx., Exh. 2.I at 3). Accordingly, this order finds the numerosity requirement is satisfied.

### 2. TYPICALITY.

The typicality requirement of Rule 23(a)(3) tests whether the named plaintiffs and the other members of the class "have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). Our plaintiffs contend they have been injured by Hair Club's policies and practices which it allegedly applied uniformly to all hourly employees at all stores in California. Plaintiffs' alleged injuries are of the same type (namely, unpaid wages) as the other class members. As discussed below, however, the class will be limited to employees that worked for Hair Club from March 27, 2014, through March 27, 2015, due to the statute of limitations applicable to plaintiffs' Section 226(a) claims. Adria Despres stopped working for Hair Club in 2013, so she lacks any claims typical of those of the class.

Nevertheless, this order finds the typicality requirement of Rule 23(a)(3) is satisfied as to Teresa Clemens and Jordan Simensen.

### 3. ADEQUACY.

To determine whether the adequacy of representation requirement of Rule 23(a)(4) is satisfied, two questions must be asked "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing, Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Rule 23(g)(1)(A) further provides that in appointing class counsel, the following factors must be considered:

4

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class . . . .

Plaintiffs and their counsel have pursued this action diligently and zealously, and there do not appear to be any conflicts of interest with the class. Counsel have done significant work identifying and investigating the claims in the action, and they have extensive experience with class actions and with this particular area of law. Moreover, they appear to have sufficient resources to commit to adequately represent the class (Parris Decl. ¶¶ 1–5). Accordingly, this order finds the adequacy requirement of Rule 23(a)(4) is satisfied.

### 4. Predominance of Common Questions.

Class certification under Rule 23(b)(3) requires a showing that "questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." The common questions advanced for certification need not necessarily be questions that will be resolved in favor of the class. At this stage, plaintiffs need only show that there are bona fide questions capable of class-wide resolution. *See Alcantar v. Hobart Service*, 800 F.3d 1047, 1053 (9th Cir. 2015).

Plaintiffs pursue four categories of claims: (i) meal-period and rest-break claims, (ii) off-the-clock claims, (iii) wage-statement claims, and (iv) claims derivative of the first three claims. Defendants contend that individualized questions will predominate in any class-wide adjudication of these claims. The scope of common questions relevant to each category of claims is addressed in turn.

#### A. Meal-Period and Rest-Break Claims.

Section 512(a) of the California Labor Code sets forth the requirements for the provision of a meal break during a work period:

> An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except if the total work

5

1  period per day of the employee is no more than six hours, the meal
2  period may be waived by mutual consent of both the employer and employee.

3  Paragraph 11(B) of IWC Wage Order 5-2001 requires an employer to pay premium
4  wages for meal periods it fails to provide:

> If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided.

Paragraph 12 of IWC Wage Order No. 5-2001 further requires employers to provide employees with paid ten-minute rest breaks:

> (A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted as hours worked, for which there shall be no deduction from wages.
>
> (B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

Both sides agree that Hair Club had a uniform meal-period and rest-break policy that applies to all hourly employees at all locations in California. The policy was set forth in Hair Club's employee handbook as follows (Pls.' Appx., Exh. 2C at 148):

> ***Meal Periods and Breaks***
>
> Breaks allow you to relax and enable you to return to work more refreshed. Depending on the length of your shift and the operational needs of your Center, hourly employees are provided with a ten-minute paid rest period for every three-and-one-half to four hours they work. Full time employees are entitled to two ten-minute break periods. Breaks should be arranged with your Manager to accommodate the work flow. Employees who smoke are not entitled to additional breaks outside of the meal and break policy. Employees who find that the work is preventing them from taking a rest break they desire to take must notify their Manager so that arrangements can be made. Unless the employee provides this notification the Company will assume the employee is taking or voluntarily foregoing the rest breaks to which the employee is entitled. Hourly employees who work more than a five-hour shift

6

> are provided with a mandatory one-half hour unpaid meal period each workday. Employees will be relieved of all duties during the meal period. Taking a half-hour duty-free meal period is mandatory, except those employees who work six hours or less may voluntarily forego the meal period. Hourly employees must clock-out when they start and clock in when they end their meal period. Employees who fail to comply with this policy will be subject to disciplinary action. Employees may not forego breaks or lunch periods in order to leave work earlier.
>
> Remember, if you do not notify your Manager about issues in taking rest breaks, Hair Club will assume you are voluntarily foregoing these breaks to which you are legally entitled.

The policy as it appeared in the employee handbook did not specify when employees should take their meal breaks; however, in practice, Hair Club instructed its employees to take their meal periods near the middle of their eight-hour shifts (Avis Dep. at 101; Clemens Dep. at 193). Additionally, Hair Club facilitated meal periods and rest breaks them by requiring managers and co-workers to provide coverage for center administrators during their meal periods, establishing half-hour blocks during which no appointments could be scheduled for new business managers and stylists (and requiring managing directors to arrange for coverage when needed), and by leaving client relationship managers free to set their own schedules. Stylists could also adjust their schedules if they had concerns a client would run late or some other circumstance would affect their meal periods and rest breaks (Chapman Dep. at 53, 86–87, 126; Avis Dep. at 92–95, 99–100; Clemens Dep. at 228).

Plaintiffs now advance two theories of liability arising from Hair Club's policy and practice regarding meal periods and rest breaks. *First*, plaintiffs contend that Hair Club's written policy is facially unlawful because it failed to state when within a shift employees were required to take their meal periods and rest breaks. Absent such information, they argue, employees who relied on the written policy to determine when to take meal breaks may not have taken their breaks before the end of the fifth hour of their shift, and thus never received a compliant meal break. *Second*, plaintiffs contend that Hair Club's uniform scheduling practices made taking meal periods or rest breaks unrealistic. As a result, plaintiffs argue, meals were often "eaten on the go" or cut short by the arrival of a client.

7

Plaintiffs' contend their first theory presents a question of law common to the class, namely, whether Hair Club's uniform written policy complies with California law. Hair Club responds that its policy was facially lawful, citing admissions by the named plaintiffs that their managers in fact instructed them to take meal periods and rest breaks. Plaintiffs contend that the dispute over whether Hair Club's policy was facially lawful demonstrates the predominance of common questions in adjudicating the meal-period and rest-break claims.

Although the common questions advanced by our plaintiffs need not be resolved in favor of the class to support certification, it is nevertheless appropriate to probe behind plaintiffs' theory and consider the merits of the case to the extent consideration of the requirements of Rule 23 is "enmeshed in the factual an legal issues" presented on the merits. *Comcast v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Here, the predominance of common questions turns on the merits of plaintiffs' facial challenge to Hair Club's written policy, because if plaintiffs' challenge fails, the case will turn to their second theory, in which individualized questions regarding each missed meal period or rest break predominate, as discussed below.

Plaintiffs cite no authority for their position that California law requires an employer to affirmatively state when an employee should take its meal period. California law only requires that such meal periods be "made available." *Brinker v. Superior Court*, 53 Cal. 4th 1004, 1034–41 (2012). Plaintiffs' bald assertion that Hair Club's policy did not comply with the law does not establish a common question that will *predominate* in the adjudication of the claims of the putative class. Rather, the case will likely become mired in the individual issues that plaintiffs' second theory presents, as now discussed.

Plaintiffs second theory is that Hair Club's uniform scheduling practices prevented employees from taking meal periods and rest break. Plaintiffs contend that Hair Club's 30(b)(6) witness, Michele Avis, admitted that an employee's ability to take a meal period or a rest break depended on "the length of the shift, operational needs of [the] center, and [the need] to accommodate workflow" (Avis Dep. 126–27). Plaintiffs misstate Avis's testimony. Avis acknowledged that the shift length, operational needs, and workflow were "part of the

8

1  determination of *when* rest breaks will be provided" (*ibid.*) (emphasis added).  Contrary to
2  plaintiffs, Avis did not state those factors determined *whether* they would be provided at all.
3  Thus, Avis's testimony is not evidence of a uniform practice of failing to provide meal periods
4  or rest breaks due to the operations of the centers.

5  Plaintiffs themselves concede that they took meal periods and rest breaks.  They cite
6  *Alberts v. Aurora Behavioral Health Care*, 241 Cal. App. 4th 388, 408 (2015), for the position
7  that "the fact that some employees may have taken some breaks is an issue that goes to
8  damages.  It is not a proper basis on which to deny certification."  In *Alberts*, employees at a
9  hospital contended they were rarely, if ever, authorized to take meal periods or rest breaks "due
10 to understaffing or the hospital's failure to provide break coverage."  Although some employees
11 averred they could take breaks, the plaintiffs presented evidence that hospital's uniform "system
12 governing rest and meal breaks — which applie[d] to all putative class members — [did] not
13 comply with California law" generally failed.  Thus, in *Alberts*, the common question of
14 whether the established uniform policy violated California law was predominant, and the fact
15 that some employees took breaks despite that policy, in that case, related to the extent of
16 damages.  That is not our case.

17 Here, as stated, plaintiffs have presented no direct evidence of a uniform policy or
18 practice that led to missed meal periods or rest breaks.  Instead, they attempt to bootstrap such a
19 policy by relying on the alleged fact of the missed meal periods in the first place.  Thus, even
20 proof of the alleged uniform practice will turn on individual inquiries into the reason for each
21 missed meal period.

22 This order finds that individual questions will predominate in the adjudication of
23 plaintiffs' meal-period and rest-break claims.  Accordingly, class certification on that issue is
24 **DENIED**.

### B. Off-the-Clock Claims.

26 Plaintiffs also claim that Hair Club's managing directors had a uniform practice of
27 falsifying timekeeping records to reflect thirty-minute meal periods that did not occur or that

9

did not last the full thirty minutes. Thus, plaintiffs claim they are due wages for hours worked that appeared as unpaid meal periods on Hair Club's timesheets.

Plaintiffs cite their own deposition testimony and the declarations of employees from various centers throughout California who submitted declarations as evidence of the alleged uniform practice. The testimony cited does not indicate a uniform practice, but rather indicates that some employees believed their managers sometimes edited their time sheets without permission (Clemens Dep. at 241; Despres Dep. at 287; Simensen Dep. at 128; Anderson Decl. ¶ 12; Andrade Decl. ¶ 10; Blasing Decl. ¶ 11; Campos Decl. ¶ 10; Cates Decl. ¶ 10; Cheng Decl. ¶ 12; Coble Decl. ¶ 10; Davila Decl. ¶ 14; Friend Decl. ¶ 9; Preciado Decl. ¶ 9; Ramirez Decl. ¶ 10).

Hair club responds that all three named plaintiffs admitted that they had on occasion forgotten to clock in or out, which might require an edit to a timesheet (Clemens Dep. at 260; Simensen Dep. at 96; Despres Dep. at 143, 213). Other employees noted the timekeeping system failed on occasion, which also required edits (*e.g.*, Johnson Decl. ¶ 16; Martinez Decl. ¶ 18; Montiel Decl. ¶ 12). Moreover, it is Hair Club's practice to have employees review and sign their timesheets to allow them an opportunity to dispute any edits before the timesheets are sent to payroll (Chapman Dep. at 135–41, 148–49).

Even if, as plaintiffs contend, a significant number of entries on Hair Club's timesheets reflect some edits, plaintiffs have failed to offer evidence that Hair Club had a *uniform practice* of falsifying timesheets. At best, they have offered evidence that some entries for some employees may have been doctored, but they have offered no common form of proof for determining which entries were falsified.

In the depositions of the employees that submitted declarations in support of Hair Club's opposition, many employees acknowledged that Hair Club required employees to submit written forms in conjunction with any request for edits to their timesheets (*e.g.*, Garcia Dep. at 62; Johnson Dep. at 44; Martinez Dep. at 75). Plaintiffs characterize these as "admissions" that written forms should accompany all proper timesheet edits, but such "admissions" were generally the answers to leading questions that called for speculation, and plaintiffs generally

10

only submitted one or two pages of the relevant transcripts. Close review of the few transcripts that included additional testimony beyond the questions that served plaintiffs' interest belies their point. One deponent acknowledged that the absence of a timesheet correction form might be due to "laziness on the employee's part" (Brown Dep. at 70). Another denied that she ever had to submit a timesheet correction form (Ekblad Dep. at 85). A third stated the absence of a timesheet correction form "just means that [she] didn't turn in a paper to say, [she] need this edited. [She] could have verbalized it" (Lancaster Dep. at 590). Thus, even a frequent absence of timesheet correction forms in conjunction with edits to timesheets, is insufficient to establish that Hair Club had a uniform practice of doctoring timesheets.

Plaintiffs have failed to demonstrate that their off-the-clock claims can be adjudicated based on any common form of proof. The only way to determine whether Hair Club is liable for uncompensated hours worked as a result of doctored timesheets is to comb through the timesheets and to vet each edited entry. This cannot be done on a class-wide basis. Accordingly, individual questions will predominate in the adjudication of plaintiffs' off-the-clock claims, so certification of a class to pursue those claims is inappropriate under Rule 23(b)(3).

### C. Wage-Statement Claims.

Section 226(a) of the California Labor Code provides that employers must provide employees with "an accurate itemized statement in writing." The wage statement must state, *inter alia*, "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate." Cal. Labor Code § 226(a)(9). Employees that suffer an injury as a result of "knowing and intentional failure" with regard to Section 226(a) may collect actual damages or statutory damages totaling fifty dollars for the initial violation and one hundred dollars for each violation in a subsequent pay period up to an aggregate penalty of four thousand dollars. Cal. Labor Code § 226(e). Section 226(e)(2) provides that an employee is deemed to suffer injury if an employer fails to provide "accurate and complete information," such that a "reasonable person would be able to readily ascertain the information without reference to other documents or information."

1    Plaintiffs contend that Hair Club issued uniform wage statements at all locations in
2  California throughout the class period and that such wage statements did not list the correct
3  overtime rate or the correct number of hours worked at each corresponding hourly rate.
4  Defendant responds that plaintiffs lack common evidence of liability; however, plaintiffs ignore
5  that Section 226(e)(2) plainly sets forth an objective standard to determine whether an actual
6  injury occurred, which standard can be applied on a class-wide basis.

7    Defendants rely on *Price v. Starbucks*, 192 Cal. App. 4th 1136, 1143–44 (2011), for the
8  position that Section 226(a) requires individual inquiry into subjective harm. *Price* addressed
9  an earlier version of Section 226 that omitted the objective standard set forth in Section
10 226(e)(2). The California legislature amended Section 226 in 2013, to include the objective
11 standard set forth. Citing *Price*, *inter alia*, the legislature noted that the amendment was
12 "necessary to provide further clarity on the issue for purposes of recovering damages under this
13 code section. Senate Comm. on Labor & Indus. Relations Hearing Report on SB 1255 at 4
14 (Apr. 11, 2012) (Pls.' Request for Judicial Notice, Exh. A). This order need not address
15 whether the objective standard of Section 226(e)(2) applies retroactively, however, because the
16 class period will be limited to employees that worked for Hair Club after March 27, 2014, as
17 now discussed.

18   Section 226(e) provides that an employee suffering an injury may recover "the greater of
19 all actual damages" or statutory damages of fifty dollars for the fist violation and one hundred
20 dollars for each subsequent violation up to an aggregate of four thousand dollars, as well as
21 costs and reasonable attorney's fees. At oral argument on this motion, counsel for plaintiffs
22 confirmed that the wage-statement claims herein only sought statutory damages (indeed,
23 plaintiffs have provided no evidence that any class member suffered actual damages).

24   Neither side addressed the statute of limitations applicable to claims based on violations
25 of Section 226(a) in their briefs, but Section 340 of the California Code of Civil Procedure
26 prescribes a one-year limitations period for "[a]n action upon a statute for a penalty or
27 forfeiture." Every decision that has considered the limitations period applicable to claims for
28 statutory damages under Section 226(a) has held that the one-year limitations period for claims

12

for penalties applied. *E.g.*, *Phan v. Sears, Roebuck and Co.*, No. 15-2582, 2016 WL 1408057, at *2 (C.D. Cal. Apr. 11, 2016) (Judge Otis K. Wright); *Brewer v. Gen. Nutrition Corp.*, No. 11-3587, 2015 WL 5072039, at *7 (N.D. Cal. Aug. 27, 2015) (Judge Yvonne Gonzalez Rogers); *Novoa v. Charter Commc'ns, LLC*, 100 F. Supp. 3d 1013, 1024 (E.D. Cal. 2015) (Judge Anthony W. Ishii); *Elliot v. Spherion Pacific Work, LLC*, 572 F. Supp. 2d 1169, 1179 (C.D. Cal. 2008) (Judge Audrey B. Collins). This order holds that plaintiffs' claims for statutory damages under Section 226 are subject to the one-year limitations period for penalties.

Hair Club's liability for plaintiffs' wage-statement claims will be evaluated based on the objective standard of the amended Section 226(e)(2). Liability will be determined based on a common form of proof, namely, Hair Club's uniform wage statements, and testimony of leadership at Hair Club regarding knowledge and intent regarding the alleged deficiencies in the wage statements. Thus, common questions will predominate in the class-wide adjudication of these claims.

### D. Derivative Claims.

Plaintiffs' remaining claims are derivative of their meal-break, rest-period, and off-the-clock claims. Because this order denies class certification as to their meal-break, rest-period, and off-the-clock claims, it also denies certification as to plaintiffs' claims that are derivative thereof.

Plaintiffs also assert a claim under the unlawful prong of the California Unfair Competition Law, relying in part on Hair Club's violation of Section 226(a) as the predicate act. The UCL provides a remedy for restitution for economic injuries caused by the alleged unfair business practice, and claims for restitution are subject to a four-year limitations period. Cal. Bus. & Prof. Code § 17208. Our plaintiffs do not seek restitution. As counsel stated at oral argument, plaintiffs only seek statutory damages. Every decision to consider this question has held that the UCL does not extend the limitations period for claims for statutory damages under Section 226(e). *E.g.*, *Brewer*, 2015 WL 5072039, at *7; *Gunawan v. Howroyd-Wright Empl. Agency*, 997 F. Supp. 2d 1058, 1070 (C.D. Cal. 2014) (Judge Cormac J. Carney); *Ordonez v.*

13

*Radio Shack*, No. 10-7060, 2011 WL 499279, at *4 (C.D. Cal. Feb. 7, 2011) (Judge Christina A. Snyder). So too here.

Thus, because there are no substantial questions common to the class regarding plaintiffs' UCL claim, certification on that claim is also **DENIED**.

### 2. SUPERIORITY.

Rule 23(b)(3) requires the consideration of four factors in assessing superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Hair Club's superiority arguments largely restate its arguments regarding common questions, which this order has already addressed above. Ultimately, a single proceeding in this forum will be preferable and far more efficient than hundreds of individual claims across the state, all based on the same legal theories and much of the same evidence. This order finds that a class action would be superior to individual actions for the adjudication of plaintiffs' wage-statement and derivative UCL claims.

### 3. EVIDENTIARY ISSUES.

Civil Local Rule 7-3 provides, in pertinent part, "any evidentiary and procedural objections to the motion must be contained within the brief or memorandum" in opposition to the motion. Hair Club filed a ten-page standalone motion to strike the declaration of Corey A. Dann who reviewed a sample of Hair Club's timesheets for missed meal periods and for edited entries (Dkt. No. 47). It also filed a separate twenty-page brief listing various objections to evidence submitted in plaintiffs' motion (Dkt. 46-11).

The Court is disappointed at Hair Club's disregard for the local rules in an attempt to circumvent the page limit for its opposition; however, the evidence to which Hair Club objects was not necessary to this order. Even if Dann accurately concluded that Hair Club's timekeeping records show numerous missed meal periods, abbreviated meal periods, or late

meal periods, plaintiffs have failed to proffer a common source of proof that Hair Club did not make compliant meal periods *available*. Similarly, even if Dann is correct that Hair Club's timekeeping records reflect frequent edits to employees' records, individualized questions as to the reason for each edit will still predominate. Accordingly, Hair Club's motion to strike Dann's declaration is **DENIED AS MOOT**.

Hair Club's evidentiary objections generally relate to employee declarations offered by the plaintiffs to support their claim that Hair Club failed to provide compliant meal periods or rest breaks, although the declarations also address certain background information about Hair Club's operating procedures. Hair Club contends that the declarants lack foundation for their statements about policies and practices pertaining to other employees and that they offer improper legal conclusions. The employees' declarations were unnecessary to this order, because plaintiffs failed to demonstrate that plaintiffs or any of the declarants missed meal periods and rest breaks due to an uniform policy or practice imposed by Hair Club. Accordingly, Hair Club's objections are **OVERRULED AS MOOT**.

Plaintiffs also sought judicial notice of several documents relating to the legislative history of Section 226. To the extent not referred to above, those documents were not necessary to this order. Accordingly, plaintiffs' requests for judicial notice as to those documents are **DENIED AS MOOT**.

**CONCLUSION**

For the reasons stated above, plaintiffs' motion for class certification is **GRANTED IN PART AND DENIED IN PART**. A class shall be certified with the following definition:

> All current and former hourly-paid or non-exempt employees employed by Hair Club within the State of California at any time during the period from March 27, 2014, to March 27, 2015.

The class shall proceed only on to plaintiffs' wage-statement claims under Section 226 of the California Labor Code.

Plaintiffs Teresa Clemens and Jordan Simensen, and are hereby **APPOINTED** class representatives. Her counsel at R. Rex Parris Law Firm are hereby **APPOINTED** as class counsel, with attorney John M. Bickford to serve as lead counsel.

By **APRIL 29**, the parties shall jointly submit a proposal for class notification, with the plan to distribute notice by **MAY 15**.

**IT IS SO ORDERED.**

Dated: April 14, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

16