R. Rex Parris (SBN 96567)
  rrparris@rrexparris.com
Kitty K. Szeto (SBN 258136)
  kszeto@rrexparris.com
John M. Bickford (SBN 280929)
  jbickford@rrexparris.com
Eric N. Wilson (SBN 291815)
  ewilson@rrexparris.com
**R. REX PARRIS LAW FIRM**
43364 10th Street West
Lancaster, California 93534
Telephone:  (661) 949-2595
Facsimile:   (661) 949-7524

Attorneys for Plaintiffs, the Certified Class,
and the Aggrieved Employees

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA CLEMENS, JORDAN SIMENSEN, and ADRIA DESPRES, individuals, for themselves and all members of the certified class, and on behalf of aggrieved employees pursuant to the Private Attorneys General Act ("PAGA") <br><br> Plaintiffs, <br><br> v. <br><br> HAIR CLUB FOR MEN, LLC, a Delaware corporation; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No. 3:15-cv-01431-WHA <br><br> **CLASS ACTION** <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Date:  June 23, 2016 <br> Time:  8:00 a.m. <br> Courtroom:  8 <br> Judge:  William H. Alsup |

# TABLE OF CONTENTS

**PAGE(S)**

I. SUMMARY OF MOTION ................................................................................................ 1

II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND ..................................... 2

III. SUMMARY OF THE SETTLEMENT TERMS ............................................................... 2

IV. PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE .................................................................................................................. 4

    A. The proposed settlement is well within the range of reasonableness. .................... 5

    B. The proposed settlement resulted from arm's length negotiations based upon extensive investigation and discovery. .................................................................. 5

    C. The settlement is fair, reasonable, and adequate ..................................................... 6

V. CLASS COUNSEL'S FEE IS REASONABLE UNDER ANY STANDARD ................. 7

    A. The attorneys' fee is justified under the common fund method. ............................ 7

        1. The risks assumed by Class Counsel favor the fee award sought............ 8

        2. Class Counsel obtained an excellent result for the class......................... 9

        3. Class Counsel's award is relatively modest. ........................................... 9

        4. Class Counsel's obtained swift and efficient relief for the class. .......... 10

        5. The skill and reputation of Class Counsel justifies the fee requested.... 10

    B. Class Counsel's lodestar well exceeds the fee request. ....................................... 10

VI. COSTS TO BE REIMBURSED TO CLASS COUNSEL............................................... 11

VII. THE PROPOSED CLASS NOTICE IS ADEQUATE.................................................... 11

VII. APPOINTMENT OF SIMPLURIS, INC. AS THE SETTLEMENT ADMINISTRATOR ......................................................................................................... 12

IX. PROPOSED DEADLINES FOR THE NOTICE PROCESS ......................................... 12

X. THE SERVICE ENHANCEMENT AWARD IS FAIR AND REASONABLE.............. 13

XI. CONCLUSION................................................................................................................ 14

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Acosta v. Trans Union*,
　243 F.R.D. 377 (C.D. Cal. 2007)..................................................................................................4

*Armstrong v. Whirlpool Corp.*,
　2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007) ........................................................................8

*Blum v. Stenson*,
　465 U.S. 886 (1984)......................................................................................................................7

*Boeing Co. v. Van Gemert*,
　444 U.S. 472 (1980)......................................................................................................................7

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
　307 F.3d 997 (9th Cir. 2002) ......................................................................................................11

*Hanlon v. Chrysler Corp.*,
　150 F.3d 1011 (9th Cir. 1998) ......................................................................................................8

*In re Wash. Public Power Supply Sys Sec. Litig.*,
　19 F.3d 1291 (9th Cir. 1994) ....................................................................................................8, 9

*Ingram v. The Coca-Cola Co.*,
　200 F.R.D. 685 (N.D. Ga. 2001)................................................................................................13

*Linney v. Cellular Alaska P'ship*,
　151 F.3d 1234 (9th Cir. 1998) ......................................................................................................4

*Six (6) Mexican Workers Paul, Johnson, Alston & Hunt v. Graulty*,
　886 F.2d 268 (9th Cir. 1989) ........................................................................................................8

*Razilov v. Nationwide Mut. Ins. Co.,*
　No. 01-CV-1466-BR, 2006 WL 3312024 (D. Or. Nov. 13, 2006)..............................................13

*Rodriguez v. West Publ'g Corp.*,
　563 F.3d 948 (9th Cir. 2009) ........................................................................................................4

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ...............................................................................................8, 10

*Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ...............................................................................................13

**Statutes**

Cal. Lab. Code, § 226(e)(1) ...............................................................................................7, 9

**Rules**

Fed. R. Civ. P. 23(c)(2)...............................................................................................11

Fed. R. Civ. P. 23(e) ...............................................................................................4, 11

**I.     SUMMARY OF MOTION**

Plaintiffs Teresa Clemens, Jordan Simensen, and Adria Despres ("Plaintiffs") seek preliminary approval of a proposed class action settlement for 197 Class Members. Subject to Court approval, Defendant Hair Club for Men, LLC ("Defendant") has agreed to pay a total of **$500,000.00** (the "Settlement Fund") to settle:

- Plaintiffs' non-certified individual claims pled in their Complaint, apportioned based on Plaintiffs' respective dates of employment with Defendant ($47,500.00);
- Plaintiffs' certified class claim brought under California Labor Code section 226 ($447,500.00); and
- The portion of Plaintiffs' representative claim brought under California Private Attorneys' General Act that is derivative of their claim brought under California Labor Code section 226 ($5,000.00: $3.750.00 to the LWDA; $1,250.00 to the aggrieved employees).

The Settlement Fund includes payment of attorneys' fees ($175,000.00) and costs ($80,000.00) to Class Counsel, costs of administration and notice relating to the settlement ($5,677.00), and enhancement awards to the Class Representatives Clemens and Simensen ($1,250.00 each, or $2,500.00 total).

This certified class action involved ongoing investigations, exchange of written discovery, third-party analysis of over 2,400 pages of documents, taking and defending 38 depositions, successfully moving for class certification, and attending an arms-length Mandatory Settlement Conference with Judge Spero. As will be demonstrated below, Class Counsel's fee request of 175,000.00, which represents 35% of the Settlement Fund, is fully supported by the use of the percentage fee method and is well below Class Counsel's $338,622.50 lodestar in this case. Additionally, Plaintiffs move for preliminary approval of reimbursement of $80,000.00 in litigation costs and expenses. Plaintiffs also move for preliminary approval of a service enhancement award in the amount of $1,250.00 to both Class Representatives Clemens and Simensen (i.e., $2,500.00 total) for the time they spent on this case and playing a vital role in representing the other class members and obtaining actual monetary relief from Defendant.

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiffs' complaint was filed on March 27, 2015 and sought classwide recovery for Defendant's alleged failure to (1) pay overtime wages; (2) provide meal periods; (3) provide rest breaks; (4) pay minimum wages; (5) pay all wages due at termination; (6) pay regular wages; (7) provide accurate wage statements; and (8) maintain accurate and complete payroll records. The Complaint also alleges violations of California Business & Professions Code section 17200, et seq. and seeks civil penalties under PAGA.

On February 5, 2016, Plaintiffs moved for class certification of all their claims except their representative PAGA claim. On April 14, 2016, the Court granted class certification only as to Plaintiffs' wage statement claim under Labor Code section 226, and certified the following class:

> All current and former hourly-paid or non-exempt employees employed by Hair Club within the State of California at any time during the period from March 27, 2014 to April 14, 2016

("Class Members"). The Court appointed Plaintiffs Teresa Clemens and Jordan Simensen as class representatives ("Class Representatives"), and the R. Rex Parris Law Firm as Class Counsel ("Class Counsel").

The Parties and their respective counsel participated in a mandatory settlement conference with the Hon. Joseph C. Spero on April 27, 2016. The Parties were able to reach an agreement, subject to approval by the Court. At all times, the negotiations leading to this Settlement Agreement have been adversarial, non-collusive, and at arm's length.

## III. SUMMARY OF THE SETTLEMENT TERMS

Defendant Hair Club for Men, LLC ("Defendant") has agreed to pay a total of $500,000.00 to settle:

- Plaintiffs' non-certified individual claims pled in their Complaint, apportioned based on Plaintiffs' respective dates of employment with Defendant ($47,500.00);
- Plaintiffs' certified class claim brought under California Labor Code section 226 ($447,500.00); and

- The portion of Plaintiffs' representative claim brought under California Private Attorneys' General Act that is derivative of their claim brought under California Labor Code section 226 ($5,000.00: $3.750.00 to the LWDA; $1,250.00 to the aggrieved employees).

The Settlement Fund includes payment of attorneys' fees ($175,000.00) and costs ($80,000.00) to Class Counsel, costs of administration and notice relating to the settlement ($5,677.00), and enhancement awards to the Class Representatives Clemens and Simensen ($1,250.00 each, or $2,500.00 total).

Payment to the class for Plaintiffs' certified class claim brought under California Labor Code section 226 will based on the Net Settlement Fund. The Net Settlement Fund will be determined by deducting the following amounts from the $500,000.000 Settlement Fund:

- The portion of the Settlement Fund designated for settlement of Plaintiffs' non-certified individual claims ($47,500.00);
- The payment of a PAGA penalty to the LWDA for Plaintiffs' derivative PAGA claim under California Labor Code section 226 ($3,750.00);
- Court-approved attorneys' fees ($175,000.00) and costs ($80,000.00);
- Costs of administration and notice relating to this settlement ($5,677.00); and
- Enhancement awards to Class Representatives Clemens and Simensen ($1,250.00 each, or $2,500.00 total).

This totals $185,573.00.

Class Members will not be required to submit a claim form. Each Class Member's share of the Net Settlement Fund will be calculated by multiplying the Net Settlement Fund by a fraction, the numerator of which is the total of a Settlement Class Member's number of pay periods during the class period (March 27, 2014 to April 14, 2016), and the denominator of which is the total of all Settlement Class Members' pay periods during the class period. Pay periods shall be calculated from Defendant's records. The Settlement Fund will be proportionally reduced based on any Settlement Class Members who opts-out.

In the event that any settlement checks are uncashed for 180 days, any remaining funds shall escheat to the State of California pursuant to state law

## IV. PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

Federal Rule of Civil Procedure 23(e) requires courts to engage in a two-step process when considering whether to approve the settlement of a class action. First, they must make a preliminary determination whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). At the preliminary approval stage, "the settlement need only be potentially fair." *Id.* In the second step of the process—which occurs after preliminary approval, notification to class members, and the compilation of information as to any objections by class members—courts determine whether final approval of the settlement should be granted.

Courts consider and evaluate several factors as part of its assessment of the appropriateness of a proposed settlement. The Ninth Circuit has identified the following non-exclusive ones that may be considered during both the preliminary and final approval processes:

1) the strength of the plaintiff's case;
2) the risk, expense, complexity and likely duration of further litigation;
3) the risk of maintaining class action status throughout the trial;
4) the amount offered in settlement;
5) the extent of discovery completed and the stage of the proceedings;
6) the experience and view of counsel;
7) the presence of a governmental participant; and
8) the reaction of the class members to the proposed settlement.

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Each of these factors does not necessarily apply to every class action settlement. Further, other factors may apply in evaluating a proposed settlement in a particular case. For example, courts often consider whether the settlement is the product of arm's length negotiations. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution").

### A. The proposed settlement is well within the range of reasonableness.

The portion of the Settlement Fund allocated to settle Plaintiffs' certified class claim brought under California Labor Code section 226 ($447,500.00) for 197 class members is well within the range of reasonableness. Based on the extensive discovery in this case, Class Counsel has determined Plaintiffs and the Class Members have a reasonable likelihood of success at trial on the certified claims. However, a settlement of this considerable monetary amount is preferable to the multi-tiered risks associated with proceeding with trial and a likely appeal, and is in the Class Members' best interests. If Plaintiffs were to have rejected this $500,000.00 Settlement Fund, the case would have to proceed through trial. As with all trials, there is considerable risk for both sides, and that risk is amplified for both sides when the case involves 197 class members.

Were Plaintiffs to succeed in prevailing at a class-action jury trial, the resulting money judgment would likely be subject to many rounds of appeals, where, again, both sides would face considerable risk—for Plaintiffs their jury verdict could be overturned, as could a favorable ruling for the defense. In addition, money judgments must be bonded, and interest accrues during the pendency of appeal. The Class Members still would not have yet received any money during the appeal process, and Class Counsel could have to spend years defending its judgment in possibly several rounds of appeal.

While there are considerable risks associated with a class action trial and resulting appeals, Class Counsel has taken class action cases all the way to the jury trial phase, and stood (and stand) ready and willing to do so again in this case. That said, when presented with a settlement that will benefit the entire class in the very near future, the risk of later potentially recovering nothing, many years later, must be candidly recognized and evaluated. For those reasons, Class Counsel is confident this proposed settlement is in the best interests of the class.

### B. The proposed settlement resulted from arm's length negotiations based upon extensive investigation and discovery.

The parties have actively litigated this case since it was initially filed on March 27, 2015. This certified class action involved ongoing investigations, the exchange of written discovery, the third-party analysis of over 2,400 pages of documents, taking and defending 38 depositions, successfully moving

for class certification, and attending an arms-length Mandatory Settlement Conference with Judge Spero. Bickford Decl., ¶ 4.

During all settlement discussions, the parties exchanged information and discussed all aspects of the case including the risks and delays of further litigation, the risks to both parties, the evidence produced and analyzed, and the possibility of a trial and resulting appeals, among other things. During all settlement discussions, the parties conducted their negotiations at arms' length in an adversarial posture. Arriving at a settlement that was acceptable to both parties was not easy. Defendant and its counsel felt very strongly about Defendant's ability to prevail on the merits at trial. And Class Counsel believed they would have prevailed at trial. After much consideration by the parties as to their respective positions and risks in continued litigation, the parties agreed that this case was well suited for settlement given the costs and risks both sides faced in further, very protracted litigation.

The proposed settlement takes into account the strengths and weaknesses of each side's position and the uncertainty of how the case might have concluded at trial. Class Counsel also conducted interviews of numerous Class Members, not to mention the Class Representatives. Bickford Decl., ¶ 4. Class Counsel also reviewed over 2,400 pages of records and documents produced by both Plaintiffs and Defendant and performed significant research into the law concerning Defendant's defenses. *Id.* The proposed Settlement was based on this incredibly large volume of facts, evidence, and investigation. And, Class Counsel has extensive experience in employment class actions, including extensive experience in California wage-and-hour litigation. Bickford Decl., ¶ 14, *see also id.*, Ex. 4.

### C. The settlement is fair, reasonable, and adequate.

The $447,500.00 allocated to settle Plaintiffs' certified class claim brought under California Labor Code section 226 represents an excellent resolution of this case. The proposed Settlement was calculated using information and data uncovered through formal discovery, case investigation and the exchange of information. The proposed Settlement takes into account the potential risks and rewards inherent in any case and in particular with this case. Moreover, considering all of the facts in this case, the proposed Settlement amount represents a substantial global recovery for all Class Members.

The proposed settlement provides for a Net Settlement Fund of at least $185,573.00 that will be distributed to all 197 Class Members. Each Class Member's share of the Net Settlement Fund will be

6

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL

1  calculated by multiplying the Net Settlement Fund by a fraction, the numerator of which is the total of a
2  Settlement Class Member's number of pay periods during the class period (March 27, 2014 to April 14,
3  2016), and the denominator of which is the total of all Settlement Class Members' pay periods during
4  the class period.  There are a total of 6,623 pay periods during the class period.  This means that a Class
5  Member who worked during the entire class period may receive up to approximately $1,513.05 *after*
6  deductions are made Class Counsel attorneys' fees and costs, settlement administration and notice
7  costs, and enhancement awards (185,573.00 x [54 individual pay periods / 6,623 total pay periods]).

8  This is especially reasonable considering California Labor Code section 226 limits statutory
9  penalties to $4,000.00.  Cal. Lab. Code, § 226(e)(1).  Accordingly, even if the Class Members had filed
10 individual claims, and recovered the maximum statutory penalty of $4,000.00, they would have
11 recovered approximately $2,600.00 after attorneys' fees.  Class Members are therefore receiving
12 approximately the same amount of money they would have received had they filed individual claims.

13 **V.      CLASS COUNSEL'S FEE IS REASONABLE UNDER ANY STANDARD**

14        **A.      The attorneys' fee is justified under the common fund method.**

15 Class counsel seeks the approval of an attorneys' fee award equal to 35% of the Settlement
16 Fund.  This "common fund" doctrine, under which attorneys who create a common fund or benefit for a
17 group of persons may be awarded their fees and costs out of the fund, has long been a staple of class
18 action settlements in federal courts generally:  "a lawyer who recovers a common fund for the benefit
19 of persons other than . . . his client is entitled to a reasonable attorney's fee from the fund as a whole."
20 *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Federal courts, and particularly the Ninth
21 Circuit, have endorsed the percentage method as a fair way to calculate a reasonable fee when
22 contingency fee litigation has produced a common fund.  *See*, *e.g.*, *Blum v. Stenson*, 465 U.S. 886, 900
23 n.16 (1984) (under common fund doctrine, "reasonable fee is based on a percentage of the fund
24 bestowed on the class"); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th
25 Cir. 1990) (common fund fee is generally "calculated as a percentage of the recovery").

26 Although the Ninth Circuit established 25% as a "benchmark" for attorneys' fee awards that are
27 established out of a common fund, where, as here, circumstances merit it, "[t]hat percentage amount can
28 then be adjusted upward or downward to account for any unusual circumstances involved in [the] case."

7

1  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  Given the results achieved and the difficulties attendant in litigating this case, an upward adjustment is warranted.

In *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047–50 (9th Cir. 2002), the Ninth Circuit laid out the factors to be considered in adjusting a fee award from the "benchmark."  These are: (i) the size of the fund (and thus the resulting size of the percentage fee award); (ii) the quality of the results obtained by Class Counsel; (iii) the risk taken on by Class Counsel in accepting and pursuing the case with no guarantee of victory or being paid for their time and effort; (iv) incidental or non-monetary benefits conferred by the settlement; (v) the effort expended by Class Counsel; (vi) Class Counsel's reasonable expectations based on the circumstances of the case and fee awards in other cases; and, to a certain extent, the percentage fee award originally contracted for between Plaintiffs and Class Counsel. *Id.*  A consideration of the *Vizcaino* factors shows that Class Counsel's request for 35% the total value of the settlement is exceedingly reasonable.

### 1. The risks assumed by Class Counsel favor the fee award sought.

Class Counsel's assumed a very real risk in taking on this case.  Plaintiffs, through their counsel, took on a national corporation with far more resources than Class Counsel.  Class Counsel took the case on a contingency basis, and invested time, effort, and money with no guarantee of any recovery.  In cases where the "recovery is far from certain," as here, an award of more than 25% of the common fund as attorneys' fees is appropriate.  *See In re Wash. Public Power Supply Sys Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994); *Vizcaino*, 290 F.3d at 1048.

Class Counsel proceeded knowing there was a chance that Defendant would prevail and that even if Plaintiffs prevailed, there was a chance that the case would take years to bring to trial and would not be resolved without an appeal.  The risk of no recovery in complex class actions of this type is very real.  There are numerous cases where Class Counsel in contingent-fee cases such as this one, after devoting thousands of hours and advancing significant sums in out-of-pocket expenditures, received no compensation whatsoever.  *See, e.g.*, *Armstrong v. Whirlpool Corp.*, 2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007) (denying class certification of racial harassment claims); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The risk of maintaining class action status throughout the trial"

was an important favor in approving the class action settlement.). From the outset Defendant has adamantly denied any liability and continues to do so today.

### 2. Class Counsel obtained an excellent result for the class.

The results obtained by Class Counsel are an excellent result for this case. The total value of this Settlement is $500,000.00, with $447,500.00 allocated to settle Plaintiffs' certified class claim brought under California Labor Code section 226. Accordingly, Class Members who worked during the entire class period (March 27, 2014 to April 14, 2016) will recover at least $1,513.05  This is especially reasonable considering California Labor Code section 226 limits statutory penalties to $4,000.00. Cal. Lab. Code, § 226(e)(1).

The fairness of this fee award is further supported by the high quality of Class Counsel's legal representation as described above and in the declaration. Class Counsel's highly-informed, diligent, and efficient prosecution of this matter positioned Plaintiffs to successfully settle this case, affording redress to the entire proposed settlement class, and avoided the inevitable expense and risk attendant with protracted litigation.

The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work. Here, as set forth above, Defendant was represented by experienced and skilled lawyers from a law firm with a deserved reputation for vigorous advocacy in the defense of complex employment class action cases. The ability of Class Counsel to obtain this Settlement in the face of such formidable legal opposition confirms the quality of Class Counsel's representation. Accordingly, this factor strongly supports the requested fee.

### 3. Class Counsel's award is relatively modest.

Here, Class Counsel seeks 35% of the value of the settlement fund of $500,000.00. Most Ninth Circuit cases consider the size of the settlement fund for purposes of evaluating fee requests, in relation to how large it renders the resulting fee award. *See, e.g., In re Wash. Public Power*, 19 F.3d at 1297 ("[T]he percentage of an award generally decreases as the amount of the fund increases"). The fee request is *less* than the Net Settlement Amount that will be available to be claimed by the Class. Accordingly, the fee request here is in line with Ninth Circuit precedent.

### 4. Class Counsel's obtained swift and efficient relief for the class.

While *Vizcaino* considered the protracted litigation in that case, it stressed: "We do not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief." *Vizcaino*, 290 F.3d at 1050, n.5.  In fact, the Court acknowledged that using time expended as a proxy for the effort expended on or success of a case "creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee," and that such an evaluation "does not reward early settlement." *Id.*  Here, Class Counsel achieved a substantial benefit for class members in a very timely fashion, providing class members with substantial and certain relief much sooner than if this matter had been extensively litigated.  There is no doubt that either side would have appealed the trial verdict.

Moreover, Class Counsel did not sacrifice due diligence in achieving an efficient resolution of this case.  As discussed above, Class Counsel reviewed thousands of relevant documents produced by Defendants.  In addition, prior to the Mandatory Settlement Conference, Class Counsel conducted interviews of Class Members concerning their claims.  Hence, Class Counsel's request for fees is reasonable here.

### 5. The skill and reputation of Class Counsel justifies the fee requested.

As shown in the accompanying declaration, Class Counsel are recognized leaders in employment class actions, and put the full use of their skill and experience to work in the service of Plaintiff and the class in this case. Bickford Decl., ¶ 14, *see also id.*, Ex. 4.  As a result, these factors favor the fee award sought by Class Counsel.  The R. Rex Parris Law Firm has dedicated itself to this case.  Class Counsel are nationally-recognized trial and class-action attorneys and employed their knowledge, skill, and experience in bringing to conclusion a very favorable result in a unique, hard-fought litigation.  *Id.*  The goal achieved is the extraordinary result of obtaining $500,000.00 for the Class.  Class counsel respectfully requests an award of attorneys' fees equal to 35% of that amount.

### B. Class Counsel's lodestar well exceeds the fee request.

This Circuit regards both the percentage and lodestar methods as acceptable ways to calculate fees for class counsel in class action settlements.  *See Vizcaino*, 290 F.3d at 1047–51; *Fischel v.*

*Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006-08 (9th Cir. 2002). "Under the lodestar method, the court multiplies a reasonable number of hours by a reasonable hourly rate." *Fischel*, 307 F.3d at 1006.

Class Counsel has provided a chart concerning the time worked on the case with a description of the work they performed and the amount of time spent on each task. Bickford Decl., Ex. 2. Here, Class Counsel's lodestar is currently at $306,500.00, which is 1.75 times the fee request without applying any multiplier. *Id.* Class Counsel obtained this settlement efficiently, affording redress to the Class Members swiftly, without forcing them to wait through protracted, and risky, litigation. Class Counsel was able to settle this case for a substantial amount under the circumstances, especially considering the difficulty of the case and Defendant's defenses. Class Counsel includes experienced class action attorneys. Bickford Decl., ¶ 14, *see also id.*, Ex. 4. They used their full abilities to achieve the successful result here. As shown above, the award requested here is fully in line with awards employed in much larger cases, where the fees requested are many times the fees requested here.

## VI. COSTS TO BE REIMBURSED TO CLASS COUNSEL

The total costs Class Counsel has incurred by the time of final approval will be approximately $80,000.00. Bickford Decl., Ex. 5. The costs incurred include the costs for filing the complaint, the cost to take and defend 38 depositions and to obtain certified copies of the deposition transcript, as well as costs relating to Class Counsel traveling to court appearances. These expenses are reasonable and necessary in the prosecution of this class action. Accordingly, Class Counsel requests that the Court preliminarily approve $80,000.00 to Class Counsel for litigation costs and expenses.

## VII. THE PROPOSED CLASS NOTICE IS ADEQUATE

California statutory and case law vests Courts with broad discretion in fashioning appropriate class notice. *See* Fed. R. Civ. P. 23(c)(2) and 23(e). The proposed Class Notice, attached as Exhibit "A" to the Settlement Agreement, provides information on: the nature of the action, the definition of the class certified, the class claims, that a class member may enter an appearance through an attorney, that the court will exclude from the class any member who requests exclusion, the time and manner for requesting exclusion, and the binding effect of the settlement. Accordingly, it satisfies all due process requirements and complies with the standards of fairness, completeness, and neutrality.

### VII. APPOINTMENT OF SIMPLURIS, INC. AS THE SETTLEMENT ADMINISTRATOR

Class Counsel selected Simpluris, Inc. ("Simpluris"), an experienced, reputable third-party administrator, as the Settlement Administrator to administer the proposed settlement. Simpluris will print and distribute the Class Notice to the Class Members by First Class mail; establish a mailing address and toll-free telephone number to receive Class Members' inquiries about the proposed settlement; will receive, review, and process all objections to the proposed settlement; will receive and process any written disputes and supporting documentation submitted by the Class Members as to their number of pay periods; will handle inquiries from Class Members regarding the proposed settlement; will calculate each Class Members' individual share of the Net Settlement Fund; will mail the settlement checks to the Class Members; and will perform any other usual and customary duties for administering a class action settlement. The Settlement Administrator's fees and expenses shall be paid out of the Settlement Fund, not to exceed $5,677.00. Accordingly, the Court should appoint Simpluris as the Settlement Administrator and direct Simpluris to mail the Class Notice to the Class Members in the manner and based on the proposed deadlines below.

### IX. PROPOSED DEADLINES FOR THE NOTICE PROCESS

Plaintiffs also seek approval at this preliminary approval stage of the proposed deadlines for the notice process as reflected in the Proposed Order. The notice process entails mailing the Class Notice to all 197 Class Members. Within ten business days after preliminary approval of this Settlement Agreement by the Court, Defendant will provide the Settlement Administrator the following most up to date information about each Class Member in an electronic format:

1. name;
2. last known home address and telephone number;
3. Social Security Number;
4. dates of employment as an non-exempt employee during the Class Period (excluding any periods of time that the Settlement Class Member was on an unpaid leave of absence); and
5. number of pay periods each Settlement Class Member was employed as a non-exempt employee during the Class Period.

Within ten business days of receiving this information, the Settlement Administrator will send to the Class Members, by first-class mail, at their last known address, the Class Notice and Opt-Out Form.  Class Members will then have 30 days from the date of the mailing to object to the proposed Settlement, and 45 days to opt-out.  Each Class Member's unique Claim Notice will include their estimated share of the Settlement prior to tax deductions.

## X.     THE SERVICE ENHANCEMENT AWARD IS FAIR AND REASONABLE

Class Representatives Clemens and Simensen request that the Court approve the request for a service enhancement award in the total amount of $1,250 each.  It is within the Court's discretion to award to the Class Representative for his efforts and work.  *Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving $50,000 participation award to a single class representative). The criteria courts may consider in determining whether to make an incentive award include:  1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.  *Id*.

Service or incentive payments to named plaintiffs are frequently awarded to recognize their time and efforts, and the risks they undertake on behalf of a class.  Courts routinely award service payments, which are intended to advance public policy by encouraging individuals to come forward and perform their civic duty in protecting the rights of the class, as well as to compensate class representatives for their time, effort and inconvenience.  *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.").  Incentive awards are particularly appropriate where the "class representative[ ] remain[s] fully involved and expended considerable time and energy during the course of the litigation." *Razilov v. Nationwide Mut. Ins. Co.,* No. 01-CV-1466-BR, 2006 WL 3312024, at *4 (D. Or. Nov. 13, 2006).  Plaintiffs spearheaded this lawsuit.  They committed time to the litigation by reviewing pleadings, communicating with class counsel during the prosecution of this case, and sitting for deposition, warranting an enhancement award.  *See* Clemens Decl.; Simensen Decl.

XI. **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed $500,000.00 Settlement; preliminarily approve Class Counsel's request for attorneys' fees in the amount of $175,000.00; preliminarily approve Class Counsel's request for reimbursement of litigation costs and expenses in the amount of $80,000.00; preliminarily approve a $1,250 service enhancement award to both Class Representatives Clemens and Simensen; preliminarily approve a $5,000.00 PAGA payment ($3.750.00 to the LWDA; $1,250.00 to the aggrieved employees); appoint Simpluris, Inc. as the Claims Administrator; and approve and direct the Claims Administrator to mail the Class Notice to the Class Members.

Date: May 17, 2016

**R. REX PARRIS LAW FIRM**

By:  /s/ *John M. Bickford*
John M. Bickford

Attorneys for Plaintiff, the Putative Class, and the Aggrieved Employees