United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TERESA CLEMENS, JORDAN SIMENSEN, and ADRIA DESPRES, individuals, for themselves and all members of the putative class and on behalf of aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"),

Plaintiffs,

v.

HAIR CLUB FOR MEN, LLC, a Delaware corporation, and DOES 1 through 100, inclusive,

Defendants.

No. C 15-01431 WHA

**ORDER RE PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND NOTICE TO THE CLASS**

**INTRODUCTION**

In this wage-and-hour class action, plaintiffs move for preliminary approval of a class settlement agreement. For the reasons stated below, the motion is **GRANTED**, reserving on final approval and on any incentive award, attorney's fees, and costs later.

**STATEMENT**

The background of this action has been set forth in a prior order and needs not be discussed in detail herein (Dkt. No. 60). In brief, plaintiffs Teresa Clemens, Jordan Simensen, and Adria Despres, bring claims against their former employer, defendant Hair Club for Men, LLC, alleging various claims arising out of Hair Club's meal-period and rest-break practices and for penalties for alleged inaccuracies on wage statements under Section 226 of the California Labor Code. An order certified a class only as to plaintiffs' wage-statement claims

and appointed Clemens and Simensen (but not Despres) as lead plaintiffs. The class includes 197 employees and former employees of Hair Club.

Throughout the case, both before and after the certification of the class, the parties engaged in extensive classwide discovery, including thousands of pages of written discovery, significant research, interviews of class members, and thirty-eight depositions (fifteen taken by plaintiffs, twenty-three by defendant, all lasting at least an hour and averaging more than three hours). Following class certification, the parties attended a four-and-one-half-hour settlement conference before Magistrate Judge Joseph C. Spero at which they negotiated the instant classwide settlement agreement.

Plaintiffs now move for preliminary approval of the settlement agreement. This order follows a brief from plaintiffs, a statement of non-opposition from defendant, and oral argument.

**ANALYSIS**

"A settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotations omitted).

1. **PROPOSED SETTLEMENT.**

Under the proposed settlement, the key terms would be as follows:

**Settlement Fund**: Hair Club would pay a total of $500,000 to settle claims in this action, although the amount would "be proportionally reduced based on any Settlement Class members who opt out."

- *Plaintiffs' Individual Claims*: Hair Club would pay $47,500 to settle the individual plaintiffs' non-certified claims, to be apportioned among them based on the duration of their employment with Hair Club.

- *Incentive Award*: Clemens and Simensen plan to request an incentive award of $1,250 each, for a total of $2,500.

- *Attorney's Fees and Costs*: Class counsel plan to request an award of attorney's fees of $175,000 and costs of $80,000. Any

    unapproved portion of the request for fees and costs would be added to the net settlement fund and distributed to the class accordingly.

- *PAGA Allocation*: $5,000 would be paid to settle claims for potential penalties under the Private Attorneys General Act. In accordance with PAGA, 75% of this amount ($3,750) would be paid to the California Labor and Workforce Development Agency and 25% ($1,250) to the class members as part of the *pro rata* distribution.

- *Administration Costs*: The cost of administering class notice and distribution would be paid from the settlement fund. That amount would not exceed $5,677.

- *Allocation to the Class Members*: Following the above deductions, each class member would receive a *pro rata* share of the remaining funds (estimated at $185,573) with each individual's share determined based on of the number of pay periods worked by that class member during the class period as a proportion of the total number of pay periods worked by all class members during the class period.

- *No Reversion*: The initial settlement fund would be proportionally reduced based on the number of class members that opt out (that is, opt-outs will not enhance the amount received by the individual class members). Once the class is determined, however, there would be no reversion of the settlement fund. Any checks that are uncashed for 180 days will escheat to the State of California.

**2. COST/BENEFIT TO THE ABSENT CLASS MEMBERS.**

Assuming all of the above deductions are finally approved in the amount specified, the average allocation to each class member, after all deductions, would be $942, with a maximum

1  individual share of $1,513 (for employees that worked during every covered pay period).  The
2  actual allocation would vary depending on each class member's *pro rata* share.

3  Plaintiffs' theory of liability is that Hair Club issued wage statements that did not
4  properly list employees' hourly overtime rates or the number of hours worked at that rate, in
5  violation of Section 226(a)(9) of the California Labor Code.  Section 226(a)(9) requires
6  employers to furnish wage statements that show "all applicable hourly rates in effect during the
7  pay period and the corresponding number of hours worked at each hourly rate by the employee
8  . . . ."  Plaintiffs seek classwide recovery of statutory damages.

9  Section 226(e)(2)(B) provides that an injury occurs where a datum required under
10  Section 226(a) is omitted from a wage statement "and the employee cannot promptly and easily
11  determine from the wage statement" the required information.  Section 226(e)(2)(C) defines
12  "promptly and easily determine" to mean "a reasonable person would be able to readily
13  ascertain the information without reference to documents or information."

14  Here, Hair Club's wage statements listed the total number of hours worked during the
15  pay period and the base rate paid for those hours and *separately* listed the number of overtime
16  hours worked alongside the premium paid for those hours.  In other words, the wage statement
17  did not directly indicate the total rate paid for overtime hours worked; however, that rate could
18  be calculated by adding the premium to the base pay.

19  In light of the foregoing, the class faces a substantial risk that a jury would find that a
20  reasonable person could have promptly and easily determined the hourly rates applicable during
21  the pay period and the total number of hours worked through simple arithmetic.  Such a finding
22  would result in a classwide recovery of *zero*.  Moreover, Section 226(e)(1) caps an individual's
23  recovery of statutory damages at $4,000, so there is limited upside to pursuing the claims on the
24  merits, particularly when offset by litigation costs and attorney's fees.

25  Informed by extensive discovery and a thorough settlement conference before Judge
26  Spero, our plaintiffs concluded that the class faces an appreciable risk that it would recover
27  nothing if it proceeds to trial and that the class faces a low ceiling of total recovery.  That risk
28  sufficiently balances the benefit of a substantial cash payout of an average of $942 for the class,

at least enough to warrant preliminary approval and an opportunity for comment from the class members.

**3.   SCOPE OF THE RELEASE.**

The proposed scope of the release is as follows (Settlement Agreement ¶ 4.1):

> Upon final approval by the Court, each Settlement Class Member will release Defendant Hair Club for Men, LLC, and its affiliates, parent companies, subsidiaries, shareholders, officers, partners, directors, members, servants, employees, agents, attorneys, insurers, predecessors, representatives, accountants, past, present, and future, successors and assigns, and each and all of their respective officers, partners, directors, members, servants, agents, shareholders, employees, representative accountants, insurers, and attorneys, past, present, and future, and all persons acting under, by, through, or in concert with any of them, of and from any and all claims, rights, demands, charges, complaints, causes of action, obligations or liability of any and every kind arising under California Labor Code Section 226.  As a result, each Settlement Class Member will no longer be able to claim they are an aggrieved employee for purposes of bringing a representative PAGA claim based upon California Labor Code Section 226.

In short, the settlement agreement only releases the certified claims for inaccurate wage statements and derivative PAGA claims for the same violations.  The agreement does *not* release the class members' claims that were not certified for classwide adjudication.

The agreement also provides that the individual plaintiffs, solely on their own behalf and not on behalf of any other class members, executed a broader release of all claims against Hair Club and settled those claims for a substantial sum not to be counted against their *pro rata* share of the allocation for the certified wage-statement claims (*id.* ¶ 3.1).

The agreement further provides that the individual plaintiffs (but not the absent class members) "waive any rights to future employment" with Hair Club (*id.* ¶ 6.1).

This order holds the proposed scope of the release for the absent class members is appropriately limited to the claims held appropriate for class treatment, with the addition of related claims for penalties under PAGA (which do not require class certification).

**4.   INCENTIVE PAYMENT, ATTORNEY'S FEES, AND COSTS.**

The settlement agreement provides that Hair Club will not object to an application for attorney's fees not to exceed $175,000 and $80,000 in costs to be paid from the settlement fund.  Please note that the Court may wind up awarding less than these amounts.  The agreement notes that any unapproved portion of the request for fees and costs shall be added to

5

the net settlement fund and distributed to the class accordingly. The agreement further provides that a denial or modification of the requested award of fees and costs "shall not be a basis for rendering the settlement null, void, or unenforceable" (*id.* ¶ 1.5).

The propriety of the substantial proposed incentive payments (which are *in addition to* the lead plaintiffs' recovery as class members and their non-certified individual claims) and the large sums sought for fees and expenses will be decided later. Plaintiffs must file a separate motion for those awards at the final approval stage on the schedule detailed below.

### 5. NOTICE AND SETTLEMENT ADMINISTRATION.

The parties have agreed to a proposed form of notice, which would be sent to the 197 class members via first-class mail, and skip traces will be performed on any notices returned as undeliverable. The notice procedure and the distribution of class funds is to be administered by Simpluris, Inc., and shall not exceed $5,677. Each class member will receive a statement of his or her estimated *pro rata* share of the settlement as part of the notice. There will be no claim forms. Checks will be automatically mailed to class members upon final approval of the settlement, and Simpluris will prepare a Form 1099 for each class member to assist the class members with the payment of taxes on their respective settlement distributions. The parties propose a 45 day opt-out period but a 30-day deadline to object to the settlement.

The parties' proposed form of notice is hereby **APPROVED**, except that when available, notice shall also be disseminated via email, and notice shall be published by newspaper. Further, the deadline to object to the settlement shall be the same as the opt-out deadline. Simpluris, Inc., is **APPROVED** as settlement administrator.

### CONCLUSION

Subject to final approval of the settlement and to the extent stated above, plaintiffs' motion for preliminary approval of the settlement agreement is **GRANTED**. The proposed form of notice, to be administered by Simpluris, Inc., is also **APPROVED**, subject to the additional requirement that notice also be made by email and newspaper publication and that the deadline to submit written objections to the settlement shall be coterminous with the opt-out deadline. Please note that jurisdiction over all matters relating to the interpretation, administration,

implementation, effectuation, and enforcement would be retained for only three years from the date of final approval.

The following dates are hereby set.  Class notice shall be disseminated by **JULY 11**.  Class counsel should move for (1) final approval of the settlement, (2) attorney's fees and costs, and (3) any incentive award for Teresa Clemens and Jordan Simensen by **AUGUST 11**.  Class members must postmark and mail to the claims administrator any written objections to the settlement by **AUGUST 25**.  Class members must also postmark and mail any written requests to opt out of the class by **AUGUST 25**.  Class counsel will then file a reply brief in support of the final approval motion and responding to any objections by **SEPTEMBER 8**.  The final approval hearing will be **SEPTEMBER 22 AT 8:00 A.M.**

**IT IS SO ORDERED.**

Dated:   June 23, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE