1  R. Rex Parris (SBN 96567)
       rrparris@rrexparris.com
2  Kitty K. Szeto (SBN 258136)
       kszeto@rrexparris.com
3  John M. Bickford (SBN 280929)
       jbickford@rrexparris.com
4  Eric N. Wilson (SBN 291815)
       ewilson@rrexparris.com
5  **R. REX PARRIS LAW FIRM**
   43364 10th Street West
6  Lancaster, California 93534
   Telephone:   (661) 949-2595
7  Facsimile:    (661) 949-7524

8  Attorneys for Plaintiffs, the Certified Class,
   and the Aggrieved Employees

9

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12

13  TERESA CLEMENS, JORDAN SIMENSEN,          )   Case No. 3:15-cv-01431-WHA
    and ADRIA DESPRES, individuals, for       )
14  themselves and all members of the certified )   **CLASS ACTION**
    class, and on behalf of aggrieved employees )
15  pursuant to the Private Attorneys General Act )   **DECLARATION OF JOHN M.**
    ("PAGA")                                   )   **BICKFORD IN SUPPORT OF**
16                                             )   **PLAINTIFFS' MOTION FOR FINAL**
                                               )   **APPROVAL**
17              Plaintiffs,                    )
                                               )   Date:        September 22, 2016
18         v.                                  )   Time:        8:00 a.m.
                                               )   Courtroom:   8
19                                             )   Judge:       William H. Alsup
    HAIR CLUB FOR MEN, LLC, a Delaware         )
20  corporation; and DOES 1 through 100,       )
    inclusive,                                 )
21                                             )
                                               )
22              Defendants.                    )
                                               )
23  _____)

24

25

26

27

28

_____

## DECLARATION OF JOHN M. BICKFORD

I, John M. Bickford, declare as follows:

1.        I am an attorney duly licensed to practice before all courts of the State of California and an associate at the R. Rex Parris Law Firm, attorneys of record for Plaintiffs Teresa Clemens, Jordan Simensen, and Adria Despres ("Plaintiffs").  I am providing this declaration in support of Plaintiffs' Motion for Final Approval.

2.        Attached hereto as **Exhibit "1"** is a true and correct copy of the fully executed Class Action Settlement Agreement and Release of Claims ("Settlement Agreement").

3.        Attached to the Settlement Agreement as **Exhibit "A"** is a true and correct copy of the proposed Notice of Proposed Class Action Settlement.  Attached to the Settlement Agreement as **Exhibit "B"** is a true and correct copy of the proposed Opt-Out Form.

4.        I have been actively engaged in this litigation from its inception.  The R. Rex Parris Law Firm has fully and actively participated in every aspect of the litigation process including, but not limited to, attending telephonic client meetings; propounding written discovery; conducting legal research; conducting case investigation; scrutinizing and analyzing documents produced in this case; preparing for and taking 38 depositions; successfully moving for class certification; participating in case strategy and analysis; speaking with class members and obtaining declarations from them; drafting, reviewing, and revising pleadings and Mandatory Settlement Conference Statement; responding to written discovery; reviewing over 2,400 pages of documents; participating in court appearances; preparing the preliminary approval papers and supporting documents; and preparing for trial.  Before filing this lawsuit, Class Counsel investigated and researched the facts and circumstances underlying the pertinent issues and applicable law.  This required thorough discussions and interviews between Class Counsel and Plaintiffs and research into the various legal issues involved in the case, namely, the current state of the law as it applied to various defenses.  Class Counsel also engaged in extensive factual investigation into the organization and operations of Defendant's business in California.  After conducting their initial investigation, Class Counsel determined that Plaintiffs' claims were well suited for class action adjudication owing to what appeared to be a common course of conduct affecting a similarly situated group of employees.  Class Counsel has conducted formal and

informal investigation into the facts of this case, including propounding written discovery, conducting an extensive review of the documents and data produced by Defendant, and speaking with various current and former employees.  In particular, Class Counsel spoke with class members, reviewed and analyzed over 2,400 pages of documents produced in this case, as well as policy documentation and other pertinent information.  Class Counsel scrutinized and analyzed the documents to determine Defendant's degree of liability and amounts due in damages.

5.     We conducted significant investigation and discovery into the facts of this case, including extensive interviews of the Class Representatives and Class Members; analyzed Defendant's written policies applicable to members of the Settlement Class; and analyzed all of the documents Defendant produced.

6.     At many times during the course of this litigation, members of our firm and I interacted and met on the case to strategize about the case and were actively involved in preparing the case for certification, mediation negotiations, and trial.  Depending upon the activity taking place on any given day, there were times that we communicated on a daily basis.

7.     Since its inception, the R. Rex Parris Law Firm spent hundreds of hours litigating this case.  Attached hereto as **Exhibit "2"** is a Time & Task Chart setting forth in detail the breakdown of time for the requisite tasks.

8.     During the course of the litigation, the parties have conducted substantial formal discovery.  We analyzed documents and time records either produced by Defendant or obtained by Class Counsel through other sources.  These documents provided counsel with a critical understanding of the nature of the work performed by Class Members, Defendant's policies and procedures, and were used in analyzing liability and damage issues in connection with all phases of the litigation, and ultimately with the mediation process.

9.     In connection with this matter, we have devoted substantial time and resources to developing the case over the last year.

10.     As set forth more fully in the accompanying motion, Class Counsel seeks attorneys' fees in an amount of 35% of the $500,000.00 total settlement value ($175,000.00).  This percentage award is commensurate with: (1) the risk class counsel took in commencing this action; (2) the time, effort and

expense dedicated to the case; (3) the skill and determination they have shown; (4) the results they have achieved throughout the litigation; (5) the value of the settlement they have achieved for class members; and (6) the other cases counsel have turned down in order to devote their time and efforts to this matter.

11.     While not necessarily required to be demonstrated because the contingent fee is proper for such a settlement, Class Counsel have also incurred so many hours of work in connection with this case that the fee request is also justified under a simple loadstar analysis.  The final total hours worked by the R. Rex Parris Law Firm equals 1,028.71 hours.  I have reviewed the R. Rex Parris Law Firm's records, the work performed by me and others at our firm and the attached chart, and hereby attest that the hours of 1,028.71 attributed to the R. Rex Parris Law Firm are an accurate representation of the actual time we spent working on the case over the course of this litigation.

12.     On July 2, 2013, the Honorable Sheila K. Oberto of the Eastern District of California in Fresno, in a published opinion, granted our firm's request for attorneys' fee request in the amount of 33% of the gross settlement in a similar type of wage-and-hour case entitled *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 452 (E.D. Cal. 2013).  District Judge Oberto in 2013 found the following rates to be reasonable based upon the level of experience by our firm's partners and associates, which we have used to calculate our lodestar on this case.  A copy of Judge Oberto's order is attached hereto as **Exhibit "3"** for the Court's consideration.

| Professional | Years of Experience | Reasonable Hourly Rate |
|---|---|---|
| Senior Partner | 21 | $720 |
| Junior Partner/Senior Associate | 8 | $560 |
| Senior Associate | 5 | $400 |
| Junior Associate | 2 | $280 |
| Legal Assistants | N/A | $100 |

13.     As stated above, the detailed summary breakdowns of all this work is set forth in the Time & Task Chart attached hereto.  The loadstar of fees is based upon the total hours worked and utilizes the hourly rates approved by the Eastern District in 2013, as well as an hourly rate of $500 for

3

an attorney with 7 years of experience (Kitty Szeto), $300 for an attorney with 4 years of experience (John M. Bickford), $250 for an attorney with 2 to 3 years of experience (Naomi Pontious and Eric Wilson), and $200 for Paralegal work, consistent within the rates approved by Judge Oberto.  Our firm's lodestar for the 1,028.71 hours worked at the hourly rates approved by, and consistent with the Eastern District, totals **$338,622.50**.

14.     The R. Rex Parris Law Firm is actively involved in both class action and complex litigation matters on an ongoing basis and has certified numerous wage-and-hour class actions in the Superior Courts of Los Angeles County, San Francisco County, Orange County, and Kern County Superior Courts, as well as the United States District Court for the Central and Northern Districts of California.  Our firm also has experience in appellate practice and has settled numerous class actions worth hundreds of millions of dollars on behalf of tens of thousands of California employees.  The R. Rex Parris Law Firm has been court-appointed class counsel in multiple cases in California state and federal courts.  Our firm resume, a true and correct copy of which is attached hereto as **Exhibit "4,"** accurately describes the firm's wage-and-hour class action experience.

15.     The Settlement also provides that Class Representatives Clemens and Simensen each request final approval by the Court for a service award in the amount of $1,250.00 for their time and effort serving as the Class Representatives.  They both spent a substantial amount of time and effort in producing relevant documents and past employment records and providing the facts and evidence to prove the allegations in the complaint.  They were available to Class Counsel as needed.  The information and aid that they provided to Class Counsel was invaluable and ensured the successful resolution of this case.  Furthermore, Plaintiffs have taken a substantial risk by electing to have their name as part of the public record in this lawsuit.  Any time they attempt to seek new employment or are under investigation by a prospective employer, any search for lawsuits brought by them will be disclosed and they will have to deal with the possible stigma of bringing a class action lawsuit against their former employer in a close-knit industry.  As such, the enhancement award they seek is fully deserved and well justified.

16.     As of August 9, 2016, the R. Rex Parris Law Firm has incurred at least $80,226.85 in costs and litigation expenses up to the date of the filing of this declaration as reflected in **Exhibit "5."**

This amount includes costs for filing fees and costs to serve all pleadings and motions, costs to take and defend 38 depositions, as well as costs relating to Class Counsel's travel to and from all court appearances in San Francisco.  As such, the R. Rex Parris Law Firm seeks to recover costs up to $80,000.00.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my personal knowledge.  Executed this 10th day of August 2016, at Lancaster, California.

_____
John M. Bickford

5

EXHIBIT "1"

1   R. REX PARRIS LAW FIRM
    R. Rex Parris, State Bar No. 96567
2   rrparris@rrexparris.com
    Alexander R. Wheeler, State Bar No. 239541
3   awheeler@rrexparris.com
    Kitty K. Szeto, State Bar No. 258136
4   kszeto@rrexparris.com
    John M. Bickford, State Bar No. 280929
5   jbickford@rrexparris.com
    43364 10th Street West
6   Lancaster, California 93534
    Telephone: (661) 949-2595
7   Facsimile: (661) 949-7524

8   Attorneys for Plaintiffs and the Class

9   SEYFARTH SHAW LLP
    Andrew M. McNaught, State Bar No. 209093
10  amcnaught@seyfarth.com
    Justin T. Curley, State Bar No. 233287
11  jcurley@seyfarth.com
    560 Mission Street, Suite 3100
12  San Francisco, California 94105
    Telephone:     (415) 397-2823
13  Facsimile:     (415) 397-8549

14  Attorneys for Defendant
    HAIR CLUB FOR MEN, LLC

15

16

17                    UNITED STATES DISTRICT COURT

18                    NORTHERN DISTRICT OF CALIFORNIA

19

| TERESA CLEMENS, JORDAN SIMENSEN, and ADRIA DESPRES, individuals, for themselves and all members of the putative class, and on behalf of aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"), | Case No. 3:15-cv-01431-WHA |
|---|---|
| Plaintiffs, | **CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS** |
| v. | |
| HAIR CLUB FOR MEN, LLC, a Delaware corporation; and DOES 1 through 100, inclusive, | |
| Defendants. | |

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS**

1       This Settlement Agreement is made and entered into by and between Hair Club for Men, LLC

2   ("Defendant") and individual named plaintiffs Teresa Clemens, Adria Despres and Jordan Simensen

3   ("Plaintiffs"), on their own behalf and on behalf of the certified class (as described in the Recitals

4   hereafter) and each of its members (collectively "Settlement Class Members") in *Teresa Clemens, et al.*

5   *v. Hair Club for Men, LLC*, Case No. 3:15-cv-01431-WHA, pending in the U.S. District Court for the

6   Northern District of California (the "Litigation"), with respect to the settlement of (a) all of Plaintiffs'

7   individual claims pled in the Complaint filed in the Litigation, (b) Plaintiffs' certified class claim

8   brought under California Labor Code section 226, and (c) Plaintiffs' representative claim brought under

9   California's Private Attorneys' General Act, Labor Code section 2698, *et seq.* ("PAGA"), which was

10   derivative of their claim brought under California Labor Code section 226.  This Settlement Agreement

11   is subject to the terms and conditions hereof and the approval of the Court.

12   **RECITALS**

13       On March 27, 2015, Plaintiffs filed the initial Complaint in the Litigation in the United States

14   District Court for the Northern District of California.  The Complaint seeks classwide recovery for

15   Defendant's alleged failure to (1) pay overtime wages; (2) provide meal periods; (3) provide rest breaks;

16   (4) pay minimum wages; (5) pay all wages due at termination; (6) pay regular wages; (7) provide

17   accurate wage statements; and (8) maintain accurate and complete payroll records.  The Complaint also

18   alleges violations of California Business & Professions Code section 17200, *et seq.* and seeks civil

19   penalties under PAGA.  The matter is presided over by the Hon. William H. Alsup, United States

20   District Judge.

21       On February 5, 2016, Plaintiffs moved for class certification of all their claims except their

22   representative PAGA claim.  On April 14, 2016, the Court certified a class consisting of: All current and

23   former hourly-paid or non-exempt employees employed by Hair Club within the State of California at

24   any time during the period from March 27, 2014 to April 14, 2016 ("Class Members").  For purposes of

25   this Settlement Agreement, the "Settlement Class" consists of all Class Members, except those who opt

26   out of the class.  The Court granted class certification only as to Plaintiffs' wage statement claim under

27   Labor Code section 226, and denied certification as to Plaintiffs' remaining class claims.  The Court

28

1

1  appointed Plaintiffs Teresa Clemens and Jordan Simensen as class representatives ("Class

2  Representatives"), and the R. Rex Parris Law Firm as Class Counsel ("Class Counsel").

3      The certified class that is eligible to participate in this settlement consists of approximately 197

4  individuals. The Parties and their respective counsel participated in a mandatory settlement conference

5  with the Hon. Joseph C. Spero on April 27, 2016. The Parties were able to reach an agreement, subject

6  to approval by the Court. At all times, the negotiations leading to this Settlement Agreement have been

7  adversarial, non-collusive, and at arm's length.

8      Defendant denies any liability or wrongdoing of any kind associated with the claims alleged in

9  the Complaint. Defendant contends, among other things, that it has complied at all times with all

10 applicable California laws and asserts that all members of the Class were properly compensated.

11 Neither this Settlement Agreement nor any other item pertaining to the settlement contemplated herein,

12 shall be offered in any other case or proceeding as evidence of any admission by Defendant of any

13 liability on any claims for damages or other relief. Any stipulation or admission by Defendant contained

14 herein is made for settlement purposes only.

15     Plaintiffs believe that they have filed a meritorious action. Defendant contends that it has

16 complied with all provisions of the California Labor Code, including section 226, and that its policies

17 and practices are in compliance with California law. For these reasons, Defendant denies that Plaintiffs,

18 or any Class members, are entitled to any damages or that Defendant failed to comply with the

19 California Labor Code. Furthermore, Defendant contends that it did not engage in any unfair business

20 practices. Defendant contends that the members of the Class received accurate and itemized wage

21 statements. Nevertheless, in the interest of avoiding the costs and disruption of ongoing litigation and

22 resolving the claims asserted in the Litigation, Defendant believes the settlement negotiated between the

23 Parties and set forth in this Settlement Agreement is fair, reasonable, and adequate.

24     With respect to Plaintiffs' individual claims, it is the desire of the Parties to fully, finally, and

25 forever settle, compromise, and discharge any and all claims, rights, demands, charges, complaints,

26 causes of action, obligations or liability of any and every kind that were or could have been asserted in

27 the Complaint, to the extent that such claims arise out of the alleged facts, circumstances, and

28 occurrences underlying the allegations as set forth in Plaintiffs' Complaint. With respect to Plaintiffs'

2

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS**

1   certified class claim, the Parties wish to fully, finally, and forever settle, compromise, and discharge

2   Plaintiffs' certified wage statement claim brought under California Labor Code section 226.  With

3   respect to Plaintiffs' representative PAGA claim, the Parties wish to fully, finally, and forever settle,

4   compromise, and discharge the portion of Plaintiffs' representative PAGA claim that was derivative of

5   Plaintiffs' claim brought under California Labor Code section 226.

6        The specific terms of the Releases given by the Plaintiffs and by the Class Members are set forth

7   in Paragraphs 3.1 and 4.1 hereafter and are not to be construed or interpreted by any language in the

8   Recitals portion of this Settlement Agreement.

9   **1.**    **TERMS OF SETTLEMENT**

10        **1.1.**   **Establishment of the Settlement Fund.**  This Settlement is being made on a non-

11   reversionary basis.  Defendant shall pay a total of Five Hundred Thousand Dollars ($500,000.00) (the

12   "Settlement Fund").  Payments by Defendant pursuant to this Settlement Agreement shall settle all

13   payments of Plaintiffs' individual claims, Plaintiffs' certified wage statement claim brought under

14   California Labor Code section 226, the portion of Plaintiffs' representative PAGA claim that was

15   derivative of Plaintiffs' claim brought under California Labor Code section 226, administration and

16   notice costs, and Class Counsel attorneys' fees and costs and enhancement awards to the Class

17   Representatives, as approved by the Court.  The payments are not being made for any other purpose and

18   will not be construed as compensation for purposes of determining eligibility for any health and welfare

19   benefits or unemployment compensation.  In addition, all individuals receiving a payment based on this

20   Settlement shall not be entitled to any additional or increased health, welfare or retirement benefits as a

21   result of their participation in the Settlement.

22        **1.2.**   **Calculation of Net Settlement Fund.**  The Net Settlement Fund ("NSF") will constitute

23   the total sum from which the Plaintiffs and Settlement Class Members will be paid.  It shall be

24   comprised of the Settlement Fund, less (a) the apportionment for settlement of Plaintiffs' individual

25   claims, (b) the payment of a PAGA penalty to the LWDA for Plaintiffs' derivative PAGA claim under

26   California Labor Code section 226, (c) Court-approved Class Counsel attorneys' fees and costs, (d) costs

27   of administration and notice relating to this settlement, and (e) enhancement awards to the Class

28   Representatives Clemens and Simensen.  The NSF will be used to calculate the settlement share that

1  each Settlement Class Member will receive, as described in Paragraph 1.10 below, if this Settlement

2  becomes Final, as defined in Paragraph 1.3 below.

3      **1.3.**   **Effective Date.** The settlement embodied in this Settlement Agreement shall become

4  effective when the Settlement is considered as Final. "Final" means (i) the Settlement has been finally

5  approved by the Court and if any appeal is filed, any appropriate appellate court has rendered a final

6  judgment affirming the Court's final approval without material modification, and the applicable date for

7  seeking further appellate review has passed; or (ii) the applicable date for seeking appellate review of

8  the Court's final approval of the Settlement has passed without a timely appeal or request for review

9  having been made, whichever is later. If the Court fails to approve the Settlement, or if any appellate

10  court fails to approve the Settlement: (1) the Settlement Agreement shall have no force and effect and

11  the Parties shall be restored to their respective positions as of April 26, 2016 and no Party shall be bound

12  by any of its terms; (2) Defendant shall have no obligation to make any payments to the Settlement

13  Class Members or Plaintiffs' Counsel; (3) any preliminary approval order, final approval order or

14  judgment, shall be vacated; and (4) the Settlement Agreement and all negotiations, statements and

15  proceedings and data relating thereto shall be deemed confidential and not subject to disclosure for any

16  purpose in any proceeding.

17      **1.4.**   **Apportionment for Settlement of Plaintiffs' Individual Claims.** As consideration for

18  settlement of all of Plaintiffs' individual claims alleged in the Complaint, or that could have been

19  asserted in the Complaint, the total amount of $47,500 will be paid to the three named Plaintiffs from the

20  Settlement Fund, to be divided among the three named Plaintiffs as follows: Teresa Clemens: $2,850;

21  Adria Despres: $19,950; and Jordan Simensen: $24,700. This apportionment is based on Plaintiffs'

22  respective dates of employment with Defendant.

23      **1.5.**   **Attorneys' Fees and Costs.**

24         a     Class Counsel shall apply to the Court for an award of attorneys' fees and costs

25  and expenses incurred in connection with the prosecution of this matter, and all of the work remaining to

26  be performed by Class Counsel in documenting the Settlement, securing Court approval of the

27  Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining

28  dismissal of the action. In consideration for settling this matter and in exchange for the release of claims

4

by the Settlement Class Members, and subject to final approval by the Court, Defendant will not object to an award of attorneys' fees in an amount not to exceed 35% of the Settlement Fund, nor will Defendant object to a request by Class Counsel for reimbursement of reasonable costs and expenses not to exceed $80,000.  Amounts awarded by the Court for attorneys' fees and costs shall be paid from the Settlement Fund.

        b        Should the Court approve a lesser percentage or amount of fees and costs, the unapproved portion shall be added to the Net Settlement Fund and distributed proportionately to the Settlement Class Members.  In the event that the Court does not approve the award of Attorneys' Fees and Costs requested by Class Counsel, or the Court awards Attorneys' Fees and Costs in an amount less than that requested by Class Counsel, such award shall not be a basis for rendering the settlement null, void, or unenforceable.  Class Counsel retains their right to appeal any decision by the Court regarding the Court's award of Attorneys' Fees and Costs.

**1.6.   Enhancement Awards.**  Subject to approval by the Court, Defendant will not object to Class Representatives Clemens and Simensen receiving an enhancement award not to exceed $1,250 each, for a total of $2,500, in consideration for serving as Class Representatives.  The enhancement awards are in addition to the claim share to which Plaintiffs are entitled along with other Settlement Class Members, and Plaintiffs' apportionment for settlement of their individual claims.

**1.7.   Costs of Administration.**  Subject to Court approval, and agreement by Defendant (which shall not be unreasonably withheld), Class Counsel shall select an experienced claims administrator to act as the Settlement Administrator in this action.  This administration duty shall include without limitation, mailing a Court-approved Notice of Proposed Class Action Settlement and Opt-Out Form, performing necessary skip traces on Notices returned as undeliverable, calculating Settlement Class Members' shares of the Net Settlement Fund, preparing and mailing of settlement checks, preparing any appropriate tax forms in connection with the settlement payments and remitting those forms to the appropriate governmental agencies.  All class administration fees will be paid out of the Settlement Fund.

**1.8.   PAGA Penalty Payment to the LWDA.**  The Parties allocate $5,000 to the Private Attorneys General Act civil penalty claim under Labor Code section 2698, *et seq.*, for civil penalty

1    claims based Plaintiffs' claim brought under California Labor Code section 226.  Accordingly, a

2    payment in the amount of $3,750 (75%) will be paid by the Settlement Administrator to the LWDA out

3    of the Settlement Fund.

4           **1.9.    No Claim Form Required.**  Settlement Class Members shall share in the Net Settlement

5    Fund as set forth in Paragraph 1.10.  Settlement Class Members shall not be required to complete a

6    claim form.  Settlement Class Members shall receive a Court-approved Notice describing the terms of

7    the settlement, and which will set forth the Parties' best estimate of the amount to be awarded to each

8    individual class member assuming the Court were to approve the apportionment for Plaintiffs'

9    individual claims, the penalty payment to the LWDA, and the attorneys' fees, costs and enhancement

10   awards requested herein.

11          **1.10.   Calculation of Settlement Class Members' Shares of the Net Settlement Fund.**  Each

12   Settlement Class Member's share of the Net Settlement Fund shall be calculated by multiplying the Net

13   Settlement Fund by a fraction, the numerator of which is the total of a Settlement Class Member's

14   number of pay periods during the class period (March 27, 2014 to April 14, 2016), and the denominator

15   of which is the total of all Settlement Class Members' pay periods during the class period.  Pay periods

16   shall be calculated from Defendant's records.  The Settlement Fund will be proportionally reduced based

17   on any Settlement Class Members who opt out.

18          **1.11.   Objections to Settlement.**  The Notice of Proposed Class Action Settlement to be sent to

19   all Settlement Class Members will advise each of their right to object to all or any part of the Settlement

20   Agreement.  Any Settlement Class Member who wishes to present an objection must submit it in writing

21   to the Settlement Administrator postmarked within 30 calendar days from the date that the Notice of

22   Proposed Class Action Settlement is mailed to the Settlement Class Member.  The Objection must

23   contain the full name, current home (or mailing) address, and last four digits of the Social Security

24   number of the objector, and must state the grounds for the objection.  If an objector wishes to be heard at

25   the time of the hearing on final approval, they must notify the Court and all counsel in writing no less

26   than 30 days before the hearing of the intention to appear.

27          **1.12.   Challenges to Calculations.**  A Settlement Class Member may dispute the amount of his

28   or her settlement payment, and the data used to calculate the settlement payment, by timely sending a

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

1    written notice to the Settlement Administrator informing the Settlement Administrator of the nature of

2    the dispute and providing any records or documentation supporting the Settlement Class Member's

3    position.  In response to such a dispute, Defendant will first verify the information contained in the

4    Settlement Class Member's personnel file and Defendant's payroll records.  Unless the Settlement Class

5    Member can establish a different period of employment based on documentary evidence, the total

6    number of pay periods established by Defendant's records will control.  Class Counsel and Defendant's

7    Counsel will then make a good faith effort to resolve the dispute informally.  If counsel cannot agree, the

8    dispute shall be resolved by the Settlement Administrator, who shall examine the records provided by

9    the Defendant and the Settlement Class Member, and shall be the final arbiter of disputes relating to a

10   Settlement Class Member's pay periods.  The Settlement Administrator's determination regarding any

11   such dispute shall be final.  A dispute regarding the settlement payment or the underlying data used to

12   calculate the settlement payment shall be considered timely only if raised by the Settlement Class

13   Member within thirty (30) days of Notice of Proposed Class Action Settlement being mailed.

14        **1.13.   Funding of Administration Costs and Settlement.** Within 10 business days following

15   preliminary approval by the Court of the settlement and approval of the Notice of Proposed Class Action

16   Settlement, Defendant shall transfer funds sufficient to cover the costs of notice and administration to

17   the Settlement Administrator.  If the settlement does not receive final approval by the Court, then

18   Defendant will split the administration costs with Plaintiffs.  Within 10 business days after the

19   settlement is Final, which, as noted above, is the last day to appeal if no appeal is filed, or if an appeal is

20   filed, on the date of the exhaustion of any appeal, Defendant shall transfer payment for the Settlement

21   Fund balance (the Settlement Fund less advances paid for settlement administration and notice).

22        **1.14.   Payment Procedures.** As soon as practical after Defendant's deposit of the balance of

23   the Settlement Fund into the account created by the Settlement Administrator, the Settlement

24   Administrator shall resolve any disputes as to the settlement payment owed to each Settlement Class

25   Member (as provided in Paragraph 1.12 above) and shall pay the apportionment to Plaintiffs for their

26   individual claims, the PAGA payment to the LWDA, all Settlement Class Members' claims, Court-

27   approved Class Counsel attorneys' fees and costs, and enhancement awards.  Payment of the

28   apportionment to Plaintiffs' for their individual claims, the PAGA payment to the LWDA, Court-

7

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS**

1  approved attorneys' fees and costs, and enhancement awards need not await the distribution to the

2  Settlement Class Members.

3      **1.15.    Tax Treatment of Settlement Payments.**  The Parties shall comply with all legal

4  requirements regarding the payments made to Plaintiffs and Settlement Class Members.  Each recipient

5  of any monies paid in accordance with this Settlement Agreement is responsible for any taxes associated

6  with the monies received by each recipient.

7          a        The Settlement Administrator will prepare a Form 1099 for each Settlement

8  Class Member.  The Settlement Administrator will be responsible for preparing these forms correctly.

9  Settlement Class Members will be responsible for correctly characterizing the monies that they receive

10  pursuant to the Form 1099 and for payment of any taxes owing on said amount.

11          b        The Settlement Administrator will prepare a Form 1099 and a Form W-2 for the

12  three named Plaintiffs.  Plaintiffs' respective payments for settlement of their individual claims will be

13  reported as follows: 50% of their individual apportionment on a Form 1099, reflecting non-wage

14  income, and the other 50% on a Form W-2, reflecting wage income.

15          c        The Parties acknowledge and agree that neither Defendant nor their attorneys

16  have made any representations regarding the tax consequences, or not, of the settlement payments made

17  under this Agreement.  Plaintiffs and Settlement Class Members agree to pay all federal, state or local

18  taxes, if any, which are required by law to be paid with respect to the settlement payments.  The Parties

19  further agree that Defendant shall have no legal obligation to pay, on behalf of Plaintiffs and Settlement

20  Class Members, any taxes, deficiencies, levies, assessments, fines, penalties, interests or costs, which

21  may be required to be paid with respect to the settlement payments.

22      **1.16.    Tax Treatment of Class Representatives' Enhancement Awards.**  The Class

23  Representatives will receive an IRS Form 1099 for their enhancement awards prepared by the

24  Settlement Administrator, and will be responsible for correctly characterizing this additional

25  compensation for tax purposes and for payment of any taxes owing on said amount.

26      **1.17.    Undistributed Funds.**  In the event that any settlement checks are uncashed for 180

27  days, any remaining funds shall escheat to the State of California pursuant to state law.

28

8

**2.      NOTICE TO THE SETTLEMENT CLASS AND OPT-OUT PROCEDURE**

**2.1.      Compilation of Class List.** The Parties agree that within ten (10) business days after preliminary approval of this Settlement Agreement by the Court, Defendant will provide the Settlement Administrator the following most up to date information about each Settlement Class Member in an electronic format: (1) name; (2) last known home address and telephone number; (3) Social Security Number; (4) dates of employment as an non-exempt employee during the Class Period (excluding any periods of time that the Settlement Class Member was on an unpaid leave of absence); and (5) number of pay periods each Settlement Class Member was employed as a non-exempt employee during the Class Period.  The Settlement Administrator will perform address updates and verifications as necessary prior to the first mailing.  This information shall be referred to as the Class Data List.

**2.2.      Dissemination of Notice of Proposed Class Action Settlement.** Within ten (10) business days of its receipt of the Class Data List, the Settlement Administrator will send to the Settlement Class Members, by first-class mail, at their last known address, the court-approved Notice of Proposed Class Action Settlement in the form attached hereto as Exhibit "A", which will provide a calculation of the Settlement Class Member's estimated payment (assuming the requests for attorney's fees, costs and enhancement awards are awarded in full), and Opt-Out Form, attached hereto as Exhibit "B."

**2.3.      Opt-Out Procedure.** The Notice of Proposed Class Action Settlement will instruct Settlement Class Members on how to exclude themselves from the Class if they so desire.  The Notice will state that Settlement Class Members who wish to exclude themselves will need to sign the enclosed Opt-Out Form, and postmark the Form for mailing to the Settlement Administrator by the deadline indicated in the Notice, which will be forty-five (45) days after the initial mailing of the Class Notice.

**2.4.      Report by Settlement Administrator.** Within fourteen (14) days following the expiration of the forty-five (45) day deadline to return the Opt-Out Form, the Settlement Administrator will provide a written report to all Parties' counsel noting the number of Class Notices sent, the number which were returned as undeliverable (after performing skip traces), and the number of valid opt-outs by Settlement Class Members.  Prior to the due date for this report, the Settlement Administrator will

9

1   reasonably respond to requests from any party's counsel for an update on the current status regarding

2   any opt-outs.

3   **3.    RELEASE BY THE THREE NAMED PLAINTIFFS**

4        **3.1.**    Upon final approval by the Court, each named Plaintiff will release Defendant Hair Club

5   for Men, LLC, and its affiliates, parent companies, subsidiaries, shareholders, officers, partners,

6   directors, members, servants, employees, agents, attorneys, insurers, predecessors, representatives,

7   accountants, past, present, and future, successors and assigns, and each and all of their respective

8   officers, partners, directors, members, servants, agents, shareholders, employees, representatives,

9   accountants, insurers, and attorneys, past, present, and future, and all persons acting under, by, through,

10  or in concert with any of them, of and from any and all claims, rights, demands, charges, complaints,

11  causes of action, obligations or liability of any and every kind that were asserted in the Complaint, or

12  that could have been asserted in the Complaint, to the extent that such claims arise out of the alleged

13  facts, circumstances, and occurrences underlying the allegations as set forth in the Complaint.

14  **4.    RELEASE BY THE SETTLEMENT CLASS**

15       **4.1.**    Upon final approval by the Court, each Settlement Class Member will release Defendant

16  Hair Club for Men, LLC, and its affiliates, parent companies, subsidiaries, shareholders, officers,

17  partners, directors, members, servants, employees, agents, attorneys, insurers, predecessors,

18  representatives, accountants, past, present, and future, successors and assigns, and each and all of their

19  respective officers, partners, directors, members, servants, agents, shareholders, employees,

20  representatives, accountants, insurers, and attorneys, past, present, and future, and all persons acting

21  under, by, through, or in concert with any of them, of and from any and all claims, rights, demands,

22  charges, complaints, causes of action, obligations or liability of any and every kind arising under

23  California Labor Code section 226.  As a result, each Settlement Class Member will no longer be able to

24  claim they are an aggrieved employee for purposes of bringing a representative PAGA claim based upon

25  California Labor Code section 226.

26  **5.    INJUNCTION BARRING PURSUIT OF RELEASED CLAIMS**

27       **5.1.**    As part of the preliminary approval of the Settlement, the Settlement Class Members

28  shall be enjoined from filing, initiating or continuing to prosecute any actions, claims, complaints, or

1  proceedings in court, with the California Division of Labor Standards Enforcement ("DLSE"), with the

2  LWDA, or with any other entity regarding the released claims. This Settlement is conditioned upon the

3  releases by Plaintiffs and the Settlement Class Members as described in Paragraphs 3.1 and 4.1 above,

4  and upon covenants by Plaintiffs and all Settlement Class Members that they will not participate in any

5  actions, lawsuits, proceedings, complaints or charges brought individually, by the DLSE, the LWDA, or

6  by any other agency, persons or entity in any court or before any administrative body related to the

7  released claims, nor will Plaintiffs or the Settlement Class Members contest or interfere with efforts by

8  Defendant to oppose any attempt to bring such released claims against Defendant.

9  **6.    NO FUTURE EMPLOYMENT**

10     **6.1.**    Plaintiffs hereby waive any rights to future employment with Defendant. Plaintiffs agree

11  that Defendant is not obligated to offer employment to them, regardless of the circumstances, at any

12  time in the future. Plaintiffs agree that this is a negotiated clause of this Settlement Agreement and not

13  evidence of claimed retaliation.

14  **7.    DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL**

15     **7.1.**    The Parties shall promptly seek the Court's approval of this Settlement. Promptly upon

16  execution of this Settlement Agreement, the Class Representatives and Class Counsel shall apply to the

17  Court for the entry of a preliminary order which would accomplish the following:

18          a       Schedule a final fairness hearing on the question of whether the settlement,

19  including payment of Class Counsel attorneys' fees and costs, and the Class Representatives'

20  enhancement awards, should be finally approved as fair, reasonable, and adequate as to the Settlement

21  Class Members;

22          b       Approve, as to form and content, the proposed Notice of Proposed Class Action

23  Settlement;

24          c       Approve, as to form and content, the Opt-Out Form;

25          d       Direct the mailing of the Notice of Proposed Class Action Settlement by first

26  class mail to the Settlement Class Members;

27          e       Preliminarily approve the settlement subject only to the objections of Settlement

28  Class Members and final review by the Court;

11

f        Preliminarily approve the Settlement Administrator selected by Class Counsel as the Settlement Administrator and approving payment of the reasonable charges of the Settlement Administrator;

g        Preliminarily approve Class Counsel's request for attorneys' fees and litigation expenses and costs subject to final review of the Court; and

h        Preliminarily approve Class Counsel's request that the Class Representatives Clemens and Simensen receive enhancement awards in the amount of $1,250 each.

8.    **DUTIES OF THE PARTIES FOLLOWING FINAL APPROVAL**

8.1.    Following final approval of the Settlement provided for in this Settlement Agreement, Class Counsel will submit a proposed final order and Judgment:

a        Approving the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

b        Approving Class Counsel's application for an award of attorneys' fees and reimbursement of costs;

c        Approving the enhancement awards to the Class Representatives;

d        Barring Plaintiffs from prosecuting against Defendant, and any related company, affiliate, entity or business, any individual or class claims that were asserted or could have been asserted in the Complaint in this action as well as any claims arising out of the alleged facts, circumstances, and occurrences underlying the allegations as set forth in the Complaint, upon satisfaction of all payments and obligations hereunder;

e        Barring all Settlement Class Members from prosecuting against Defendant, and any related company, affiliate, entity or business, any individual or class claims brought under California Labor Code section 226, and derivative wage statement claims brought under PAGA, upon satisfaction of all payments and obligations hereunder; and

f        Dismissing this Action on the merits and with prejudice.

9.    **PARTIES' AUTHORITY**

9.1.    The signatories hereto hereby represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties hereto to the terms and conditions hereof.

12

1  **10.   MUTUAL FULL COOPERATION**

2      **10.1.**   The Parties agree to fully cooperate with each other to accomplish the terms of this

3  Settlement Agreement, including but not limited to, execution of such documents and to take such other

4  action as may reasonably be necessary to implement the terms of this Settlement Agreement.  The

5  Parties shall use their best efforts, including all efforts contemplated by this Settlement Agreement and

6  any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this

7  Settlement Agreement and the terms set forth herein.  As soon as practicable after execution of this

8  Settlement Agreement, Class Counsel shall, with the assistance and cooperation of Defendant and its

9  counsel, take all necessary steps to secure the Court's final approval of this Settlement Agreement.

10  **11.   NO PRIOR ASSIGNMENTS**

11      **11.1.**   The Parties hereto represent, covenant, and warrant that they have not directly or

12  indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person

13  or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and

14  discharged except as set forth herein.

15  **12.   NO ADMISSION OF LIABILITY**

16      **12.1.**   Defendant has denied and continues to deny liability for the claims asserted.  Neither this

17  Settlement Agreement and any exhibit thereto, nor any other item pertaining to the settlement

18  contemplated herein, shall be offered in any other case or proceeding as evidence of any admission by

19  Defendant of any liability on any claims for damages or other relief.  Any stipulation or admission by

20  Defendant contained herein is made for settlement purposes only.  In the event this settlement is not

21  finally approved, the Parties shall be restored to their respective positions as of April 26, 2016.  Nothing

22  contained herein, nor the consummation of this Settlement Agreement, is to be construed or deemed an

23  admission of liability, culpability, negligence, or wrongdoing on the part of Defendant.  Defendant

24  specifically denies any liability.  Each of the Parties hereto has entered into this Settlement Agreement

25  with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

26  **13.   CONSTRUCTION**

27      **13.1.**   The Parties hereto agree that the terms and conditions of this Settlement Agreement are

28  the result of informed, intensive arms-length negotiations between the Parties, with the assistance and

supervision of the Hon. Joseph C. Spero. The Parties further agree that this Settlement Agreement shall not be construed in favor of, or against, any party by reason of the extent to which any party or his, or its counsel participated in the drafting of this Settlement Agreement.

**14.     CAPTIONS AND INTERPRETATIONS**

**14.1.**   Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision hereof. Each term of this Settlement Agreement is contractual and not merely a recital.

**15.     MODIFICATION**

**15.1.**   This Settlement Agreement may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court. This Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

**16.     INTEGRATION CLAUSE**

**16.1.**   This Settlement Agreement contains the entire agreement between the Parties relating to the settlement of this Litigation and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged herein. No rights hereunder may be waived except in writing.

**17.     BINDING ON ASSIGNS**

**17.1.**   This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors and assigns.

**18.     CLASS COUNSEL SIGNATORIES**

**18.1.**   It is agreed that because of the large number of Settlement Class Members, it is impossible or impractical to have each Settlement Class Member execute this Settlement Agreement. As such, Class Counsel is signing on behalf of all unnamed Settlement Class Members. In addition, the Notice of Proposed Class Action Settlement, Exhibit "A," will advise all Settlement Class Members of the binding nature of the Release of the Settlement Class, as stated in Paragraph 4.1, and such shall have

14

the same force and effect as if this Settlement Agreement were executed by each Settlement Class Member.

## 19.    CONFIDENTIALITY

19.1.    The negotiations, terms and existence of this Agreement and the continued discussions regarding the final settlement documents will remain strictly confidential and shall not be discussed with anyone other than the parties of record, counsel of record, their retained consultants, the Settlement Administrator and the Hon. Joseph C. Spero, if necessary.  Any confidentiality associated with the terms of this settlement shall expire upon the filing of a motion for preliminary approval of the proposed settlement, except: (i) the negotiations and discussions preceding submission of the settlement to the Court for approval, and any negotiations and discussions between the time of preliminary approval and final approval, shall remain strictly confidential (unless otherwise ordered by the Court); and (ii) Defendant may disclose the settlement in any government filings that it is required to make pursuant to any regulatory rules or requirements, and to their legal, tax, or accounting advisors, insurance companies, or as required by law.  Upon distribution of all Settlement Funds, the Parties shall destroy all confidential documents relating to the Litigation and this Settlement within 21 business days, and Class Counsel shall sign a declaration confirming that Class Counsel and any experts or consultants retained by Class Counsel have destroyed all confidential documents (both electronic and hard copies).  Plaintiffs further agree not to contact anyone or solicit themselves, or cause themselves to be contacted or solicited, with regard to information obtained by Plaintiffs through this Litigation, confidential information obtained by Plaintiffs during their employment, and any matter relating to the subject of this Litigation, for the purposes of assisting any person or entity in a claim, cause of action, suit, arbitration or mediation against Defendant, except as required by law.  Plaintiffs also agree not to assist any person or any entity through the use of any information obtained by Plaintiffs, confidential information obtained by Plaintiffs during their employment with Defendant, and any matter relating to the subject of this Litigation.

15

**20.   PRESS/MEDIA CONTACT**

    **20.1.**   Neither Defendant nor Plaintiffs shall make any public statements, including to any form of media, concerning the settlement, and both sides shall decline to respond to media inquiries concerning the settlement.

**21.   COUNTERPARTS**

    **21.1.**   This Settlement Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties.

**22.   GOVERNING LAW**

    **22.1.**   The Parties agree that California law governs the interpretation and application of this Settlement Agreement.

Dated: ___May 17___, 2016

*Teresa L Clemens*
_____
Teresa Clemens
Plaintiff and Class Representative

Dated: _____, 2016

_____
Adria Despres
Plaintiff

Dated: _____, 2016

_____
Jordan Simensen
Plaintiff and Class Representative

Dated: _____, 2016

HAIR CLUB FOR MEN, LLC

By:_____
Leidys Dominguez Marzo
Associate General Counsel

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

1    **20.    PRESS/MEDIA CONTACT**

2    **20.1.**   Neither Defendant nor Plaintiffs shall make any public statements, including to any form

3    of media, concerning the settlement, and both sides shall decline to respond to media inquiries

4    concerning the settlement.

5    **21.    COUNTERPARTS**

6    **21.1.**   This Settlement Agreement may be executed in counterparts, and when each party has

7    signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and,

8    when taken together with other signed counterparts, shall constitute one Settlement Agreement, which

9    shall be binding upon and effective as to all Parties.

10   **22.    GOVERNING LAW**

11   **22.1.**   The Parties agree that California law governs the interpretation and application of this

12   Settlement Agreement.

13

14   Dated: _____, 2016

15

16                                               _____
                                                 Teresa Clemens
17   Dated: May 17th, 2016                        Plaintiff and Class Representative

18                                               _____
                                                 Adria Despres
19                                               Plaintiff

20   Dated: _____, 2016

21

22                                               _____
                                                 Jordan Simensen
23                                               Plaintiff and Class Representative

24   Dated: _____, 2016                     HAIR CLUB FOR MEN, LLC

25                                               By:_____
26                                                  Leidys Dominguez Marzo
                                                    Associate General Counsel
27

28

                                    16
**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS**

**20.     PRESS/MEDIA CONTACT**

    **20.1.**   Neither Defendant nor Plaintiffs shall make any public statements, including to any form of media, concerning the settlement, and both sides shall decline to respond to media inquiries concerning the settlement.

**21.     COUNTERPARTS**

    **21.1.**   This Settlement Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties.

**22.     GOVERNING LAW**

    **22.1.**   The Parties agree that California law governs the interpretation and application of this Settlement Agreement.

Dated: _____, 2016

                                                          _____
                                                          Teresa Clemens
                                                          Plaintiff and Class Representative

Dated: _____, 2016

                                                          _____
                                                          Adria Despres
                                                          Plaintiff

Dated: 5/13, 2016

                                                          _____
                                                          Jordan Simensen
                                                          Plaintiff and Class Representative

Dated: _____, 2016         HAIR CLUB FOR MEN, LLC


                                                          By:_____
                                                          Leidys Dominguez Marzo
                                                          Associate General Counsel

**20.    PRESS/MEDIA CONTACT**

    **20.1.**   Neither Defendant nor Plaintiffs shall make any public statements, including to any form of media, concerning the settlement, and both sides shall decline to respond to media inquiries concerning the settlement.

**21.    COUNTERPARTS**

    **21.1.**   This Settlement Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties.

**22.    GOVERNING LAW**

    **22.1.**   The Parties agree that California law governs the interpretation and application of this Settlement Agreement.

Dated: _____, 2016

_____
Teresa Clemens
Plaintiff and Class Representative

Dated: _____, 2016

_____
Adria Despres
Plaintiff

Dated: _____, 2016

_____
Jordan Simensen
Plaintiff and Class Representative

Dated: May 17, 2016

HAIR CLUB FOR MEN, LLC

By: _____
Carlos Sariol
President and Chief Executive Officer

16

1

<u>APPROVED AS TO FORM AND CONTENT</u>

2

R. REX PARRIS LAW FIRM

3

By: _____

4

John M. Bickford

Attorneys for Plaintiffs and the Class

5

SEYFARTH SHAW LLP

6

7

By: _____

Andrew M. McNaught

8

Attorneys for Defendant Hair Club for

Men, LLC

9

10

27018865v.1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

EXHIBIT "A"

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**
*Clemens, et al. v. Hair Club for Men, LLC*, Case No. 3:15-cv-01431-WHA

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

## IF YOU WORKED FOR HAIR CLUB FOR MEN, LLC AT ANY TIME BETWEEN MARCH 27, 2014 TO APRIL 14, 2016, YOU MANY BE ENTITLED TO MONEY FROM THIS SETTLEMENT

*A court authorized this Notice.* <u>*You are not being sued.*</u> *This is not a solicitation from a lawyer.*

On [insert preliminary approval date], the Court in this action granted preliminary approval of a proposed settlement as set forth in the Class Action Settlement Agreement and Release of Claims ("Settlement Agreement") concerning the lawsuit noted above ("the Lawsuit"). You are receiving this Notice because you formerly worked for Defendant Hair Club for Men, LLC ("Hair Club") as an hourly-paid or non-exempt employee at some point between March 27, 2014 and April 14, 2016 ("Class Period") and you may be entitled to share in the funds to be made available for the proposed settlement of this class action.

You are not being sued. However, your rights may be affected by the legal proceedings in the Lawsuit. If the proposed settlement of this class action is granted final approval by the Court, you may have the right to be paid a share of the proposed settlement funds.

You do **NOT** have to do anything if you want to participate in this settlement. A check will be automatically mailed to you.

### PLEASE READ THIS ENTIRE NOTICE CAREFULLY.
### YOUR RIGHTS MAY BE AFFECTED
### BY THE PROPOSED SETTLEMENT DESCRIBED IN THIS NOTICE.

You have received this Notice because Hair Club's records indicate that you are a member of the Settlement Class. This notice is designed to inform you about **your 3 options in this Settlement**, all of which are dependent on the Court's final approval of the Settlement.

---

<u>**YOUR 3 OPTIONS**</u>

**1.** **Do Nothing:** You **WILL** receive money from the Settlement and you will release any claim you may have against Hair Club under California Labor Code section 226.

**2.** **Exclude Yourself From the Settlement:** You will **NOT** receive any money from this Settlement and you will not be bound by this Settlement; or

**3.** **Object to the Settlement:** You **WILL** release all claims you may have against Hair Club that are covered by this Settlement unless you timely submit an Opt-Out Form.

---

## 1.      What Is This Case About?

Teresa Clemens, Jordan Simensen, and Adria Despres ("Plaintiffs") were employed by Hair Club.  Among other things, they allege Hair Club provided its employees with wage statements that did not list the correct overtime rate or the correct numbers of hours worked at each corresponding hourly rate in violation of California Labor Code section 226.  Hair Club denies these allegations.  The parties have agreed to settle this dispute without any finding of wrongdoing by Hair Club.

The Lawsuit is being settled as a "class action."  In a class action, the plaintiff, also referred to as a class representative, sues on behalf of himself and other persons with similar claims ("Class Members").  Based on Hair Club's records, you were employed by Hair Club as an hourly-paid or non-exempt employee at some point between March 27, 2014 and April 14, 2016.  Therefore, you are a Class Member in this Lawsuit and you may receive money from the Settlement Agreement.

If the Court approves the Settlement Agreement at the Final Approval Hearing scheduled for **[date of final approval],** the Settlement Agreement will bind all members of the Class who have not excluded themselves from the Settlement Agreement.  If the Court does not approve the Settlement Agreement, the Settlement Agreement will have no effect or precedential value in any subsequent proceedings in the Lawsuit or in any other litigation.

## 2.      How Can I Receive Money From The Settlement?

You do not have to do anything to receive money from the Settlement Agreement.  A check will be automatically mailed to you if the Court grants final approval of the Settlement Agreement and if you do not exclude yourself from the Settlement Agreement.

## 3.      Will I Be Subject To Discipline or Retaliation If I Participate in the Settlement?

No.

## 4.      How Much is the Settlement?

Hair Club, LLC has agreed to pay $500,000.00 (the "Settlement Fund") to settle all claims arising out of the Lawsuit.  After attorneys' fees and costs, class notice and administration costs, class representative enhancement awards, settlement of Plaintiffs' individual non-class claims, and payment to the California Labor and Workforce Development Agency are deducted from the Settlement Fund, the remaining amount (the "Net Settlement Fund") will be automatically distributed to Class Members who do not exclude themselves from the Settlement Agreement.

## 5.      How Much Money Will I Receive?

The Net Settlement Fund of approximately $185,573.00 $195,000.00 will be paid out to Class Members who do not submit an Opt-Out Form.

If you do not submit an Opt-Out Form, your individual share of the Net Settlement Fund will be calculated based on the total number of pay periods you worked during the Class Period as reflected in Hair Club's records.  The amount to be paid per pay period worked will be calculated by multiplying the Net Settlement Fund by a fraction, the numerator of which is the total of a Settlement Class Member's number of pay periods during the class period (March 27, 2014 to April 14, 2016), and the denominator of which is the total of all Settlement Class Members' pay periods during the class period.  Pay periods shall be determined from Hair Club's records.  The Settlement Fund will be proportionally reduced based on any Settlement Class Members who opt out.

You will have 180 days to cash your settlement check.  In the event that your settlement check is uncashed after 180 days, your portion of the Net Settlement Fund will escheat to the State of California pursuant to state law.

Your estimated individual settlement amount is **$_____.**  This amount may change depending on rulings from the Court.

## 6.     When Will I Receive the Money?

If the Court grants final approval of the settlement on **[date of final approval]** and you did not submit an Opt-Out Form, the Claims Administrator will mail you a check for your Settlement Award no later than **[date]**.

## 7.     Can I Dispute My Share of the Settlement?

Yes.  To do so, you must mail in documentary evidence supporting the number of pay periods you worked during the Class Period to the Claims Administrator no later than [insert 45 calendar days after mailing].

## 8.     Can I Opt-Out of the Settlement?

Yes.  If you exclude yourself from the proposed settlement, you will **NOT** receive a settlement payment and will not be subject to the terms of the Settlement Agreement.  To exclude yourself, you must complete the enclosed Opt-Out Form and mail it back to the Claims Administrator postmarked no later than [insert 45 calendar days after mailing].  You will **NOT** receive any money from this settlement if you return the Opt-Out Form.

If you submit an untimely or incomplete Opt-Out Form, you will continue to be bound by the terms of this settlement.

## 9.     Can I Object to The Settlement?

Yes.  To do so, you must mail a signed, written statement of objection to the Claims Administrator at the address listed on the last page of this Notice with your full name, current home (or mailing) address, the last four digits of your Social Security number, and the grounds for the objection.

Your objection must be postmarked no later than **[insert 30 calendar days after mailing]** to the Claims Administrator at the address listed on the last page of this Notice.

If you fail to make your objection in the manner specified above, you shall be deemed to have waived any objections and you shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement, or any aspect of the proposed settlement, including, without limitation, the fairness, reasonableness or adequacy of the proposed settlement, the incentive award to the class representatives, or any award of attorneys' fees or reimbursement of costs and expenses.

If the Court rejects your objection, you will still be bound by the terms of the Settlement Agreement unless you submitted a valid and timely Opt-Out Form.

## 10.    What Happens If I Do Nothing?

You will receive money from this settlement and you will be bound by the Release described below.

## 11.       What Rights Am I Giving Up?

Upon final approval by the Court, each Settlement Class Member who has not timely submitted a valid Opt-Out Form will release Hair Club, and its affiliates, parent companies, subsidiaries, shareholders, officers, partners, directors, members, servants, employees, agents, attorneys, insurers, predecessors, representatives, accountants, past, present, and future, successors and assigns, and each and all of their respective officers, partners, directors, members, servants, agents, shareholders, employees, representatives, accountants, insurers, and attorneys, past, present, and future, and all persons acting under, by, through, or in concert with any of them, of and from any and all claims, rights, demands, charges, complaints, causes of action, obligations or liability of any and every kind arising under California Labor Code section 226.  As a result, each Settlement Class Member will no longer be able to claim they are an aggrieved employee for purposes of bringing a representative PAGA claim based upon California Labor Code section 226.

## 12.       Who Is The Class Representative?

The Court has appointed Plaintiffs Teresa Clemens and Jordan Simensen as the Class Representative to represent you in this settlement.  They will ask the Court to approve an enhancement award in an amount not to exceed a total of $1,250 each to be paid from the Settlement Fund to compensate them for their efforts in filing and assisting with the prosecution of the Lawsuit and in reaching this settlement on your behalf.

## 13.       How Will The Attorneys' Fees For The Class Be Paid?

You do not need to pay any portion of either Class Counsel's or Hair Club's attorneys' fees and costs.  All payment for Class Counsel's attorneys' fees and costs will be deducted from the Settlement Fund.  Class Counsel has actively litigated this matter since March 27, 2015.  It is customary for courts to award to class counsel attorneys' fees based upon a percentage of the total maximum settlement for the benefit of a class.  In this case, Class Counsel will request an award of 35% of the Settlement Fund in an amount not to exceed $175,000.00 for their work in prosecuting this Lawsuit and obtaining this Settlement on your behalf.  Class Counsel will also seek reimbursement of the costs and expenses they have incurred on behalf of the Class, estimated to be no more than $80,000.00, to be paid from the Settlement Fund.

Class Counsel will apply to the Court for approval of their attorneys' fees, costs, and expenses at the Final Approval Hearing scheduled for **[date]**.  The actual amount awarded will be determined by the Court to ensure that the amount of attorneys' fees, costs, and expenses is reasonable.

## 14.       When and Where is the Final Approval Hearing?

The Final Approval Hearing has been scheduled on **[date and time]**, before the Honorable William H. Alsup in Courtroom 8 (19th Floor) of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, at which time Judge Alsup will determine:  (1) whether the proposed settlement should be approved as fair, reasonable and adequate to the Class Members; (2) whether the application of Class Counsel for an award of attorneys' fees, costs, and expenses should be approved, and in what amount; (3) whether the application for an enhancement award for the Class Representatives should be approved, and in what amount; and (4) whether the proposed Final Approval Order and Judgment should be entered by the Court.  The Final Approval Hearing date and time may change without further notice given to you.  Please contact the Claims Administrator at the address and telephone indicated in Section 15 below to find out if there has been a change to the date and time of the Final Approval Hearing.

<u>**You Are Not Required To Attend The Final Approval Hearing.**</u>

You are welcome to attend the Final Fairness and Approval Hearing, at your own expense.  You may request permission to speak to the Judge at the Final Approval Hearing.  You may hire your own attorney at your own expense to

4

speak at the Final Approval Hearing, at your own expense.  If you want to speak at the Final Approval Hearing, you must ask the Judge for permission.  To do so, send a letter to the Court (at the address set forth above) with a copy to the Claims Administrator no later than **[date]**, requesting permission to speak at the Final Approval Hearing.  Such letter should be signed and should contain a brief statement of the position that you wish to put before the Judge at the Final Approval Hearing and the basis for that position.  The Judge may, or may not, grant the request.

If the Judge issues a proposed Final Approval Order, the parties will jointly seek the Court's approval and adoption of the Final Approval Order.

---

| **15.** | **Where Can I Get Additional Information?** |
| --- | --- |

This Notice provides only a summary of the matters relating to the proposed settlement.  You may contact Class Counsel as follows:

**R. Rex Parris**

**Kitty K. Szeto**

**John M. Bickford**

**Eric N. Wilson**

**R. REX PARRIS LAW FIRM**

**43364 10th Street West**

**Lancaster, California 93534**

**Telephone:     (661) 949-2595**

**Facsimile:     (661) 949-7524**

You may also contact the Claims Administrator as follows:

**ILYM Group, Inc.**

**P.O. Box _____**

**Santa Ana, California 92799**

**Telephone:     (888) 369-3780**

**Facsimile:     (714) 824-8591**

**PLEASE DO <u>NOT</u> CALL OR CONTACT THE COURT WITH QUESTIONS ABOUT THE PROPOSED SETTLEMENT OR THE SETTLEMENT PROCESS.**

26966446v.1

EXHIBIT "B"

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA
*Clemens, et al. v. Hair Club for Men, LLC*, Case No. 3:15-cv-01431-WHA

# OPT-OUT FORM

## If you **WANT** to keep the possibility of getting money or benefits that may come from settlement, **DO NOT** fill out this form.

## If you **DO NOT** want to be included in this class action, complete this form in its entirety, sign the form and mail it to:

*Clemens et al. v Hair Club for Men, LLC* **Administrator**
c/o **Address of Administrator**

**THIS DOCUMENT MUST BE POSTMARKED NO LATER THAN _____.**

**I hereby declare as follows:**

I confirm that I am/was employed as an hourly-paid or non-exempt employee by Hair Club for Men, LLC ("Hair Club") within the State of California at some point between March 27, 2014 to April 14, 2016. I understand it has been alleged that Hair Club provided to me wage statements that did not list the correct overtime rate or the correct numbers of hours worked at each corresponding hourly rate in violation of California Labor Code section 226. I understand that Hair Club denies these allegations.

By my signature below, I confirm that I have received, read, and understood the Notice of Certified Class Action Lawsuit ("Class Notice"); that I have decided to **exclude** myself from the Class; and that I have decided **not** to participate in the case. I understand that I will **NOT** receive any money or benefits if I complete and sign this form. I understand that it is illegal for Hair Club to persuade me to sign this form or to fire or retaliate against me if I do not sign it.

I wish to be **excluded** from the Class described in the Class Notice and I do **NOT** want to participate in any potential settlement or trial of this case.

_____
(Date)

_____
(Signature)

_____
(Type or Print Name)

_____
(Address)

_____
(Telephone Number)

_____
(City, State, Zip Code)

_____
(Social Security Number)

EXHIBIT "2"

| TASKS | R. REX PARRIS LAW FIRM |
|---|---|
| **Investigation** | |
| Research and Investigation of Defendant | |
| • Kitty Szeto – 0.2 hour | |
| • John Bickford – 4.10 hours | **4.30** |
| Research and Investigation of the Hair Restoration and Replacement Industry | |
| • John Bickford – 0.2 hour | **0.20** |
| Communicate with Plaintiffs Throughout the Case | |
| • Kitty Szeto – 3 hours | |
| • John Bickford – 9 hours | **12.00** |
| | |
| **Pleadings and Court Filings** | |
| Drafting and reviewing Complaint (March 27, 2015) | |
| • John Bickford  – 6.20 hours | **6.20** |
| Analyzing Judge's Standing Orders (March 31, 2015) | |
| • John Bickford – 0.50 hour | **0.50** |
| Drafting and reviewing Consent to Magistrate Judge Spero (April 13, 2015) | |
| • Kitty Szeto  – 0.67 hour | **0.67** |
| Drafting Stipulation and Proposed Order Selecting ADR Process (June 11, 2015) | |
| • Kitty Szeto  – 0.5 hour | **0.50** |
| Drafting Plaintiffs' ADR Certifications (June 11, 2015) | |
| • Kitty Szeto  – 0.5 hour | **0.50** |
| Drafting Initial Disclosures (June 24, 2015) | |
| • Kitty Szeto  – 1.9 hours | **1.90** |
| Drafting Plaintiffs' Certification of Interested Entities or Persons (July 8, 2015) | |
| • Kitty Szeto  – 0.5 hour | **0.50** |
| Drafting Joint Case Management Statement (July 9, 2015) | |
| • Kitty Szeto  – 10.6 hours | **10.60** |
| Drafting Stipulated Protective Order (July 14, 2015) | |
| • Kitty Szeto  – 0.5 hour | **0.50** |
| Drafting Supplemental Initial Disclosures (July 31, 2015) | |
| • Kitty Szeto  –  4.50 hours | **4.50** |
| Drafting Plaintiffs' Settlement Conference Statement (April 20, 2016) | |
| • John Bickford  – 1 hour | **1.00** |
| | |
| **Appearances** | |
| FRCP 26(f) Conference (June 10, 2015) | |
| • Kitty Szeto – 1.8  hours | **1.80** |
| Preparation for Initial Case Management Conference (July 15, 2015) | |
| • Kitty Szeto – 1 hour | **1.00** |

| | |
|---|---|
| Traveling to Initial Case Management Conference in San Francisco (July 16, 2015) | |
| **450 Golden Gate Avenue, San Francisco** | |
| • Kitty Szeto – 4.75 hours | **4.75** |
| Appearance at Initial Case Management Conference in San Francisco (July 16, 2015) | |
| **450 Golden Gate Avenue, San Francisco** | |
| • Kitty Szeto –  0.5 hour | **0.50** |
| Traveling from Initial Case Management Conference in San Francisco (July 16, 2015) | |
| **450 Golden Gate Avenue, San Francisco** | |
| • Kitty Szeto – 4.75 hours | **4.75** |
| Preparation for Class Certification Motion (April 6, 2016) | |
| • Eric Wilson – 41.90 hours | **41.90** |
| Traveling to Class Certification Motion (April 7, 2016) | |
| **450 Golden Gate Avenue, San Francisco** | |
| • John Bickford – 3.5 hours | |
| • Eric Wilson – 3.5 hours | **7.00** |
| Appearance at Class Certification Motion (April 7, 2016) | |
| **450 Golden Gate Avenue, San Francisco** | |
| • John Bickford – 0.75 hour | |
| • Eric Wilson – 0.75 hour | **1.50** |
| Traveling from Class Certification Motion (April 7, 2016) | |
| **450 Golden Gate Avenue, San Francisco** | |
| • John Bickford – 3.5 hours | |
| • Eric Wilson – 3.5 hours | **7.00** |
| Preparation for Settlement Conference (April 26, 2016) | |
| **450 Golden Gate Avenue, San Francisco** | |
| • Robert Parris – 1 hour | |
| • John Bickford – 1 hour | **2.00** |
| Traveling to Settlement Conference (April 26, 2016) | |
| **450 Golden Gate Avenue, San Francisco** | |
| • Robert Parris – 5 hours | |
| • John Bickford – 5 hours | **10.00** |
| Appearance at Settlement Conference (April 27, 2016) | |
| **450 Golden Gate Avenue, San Francisco** | |
| • Robert Parris – 4 hours | |
| • John Bickford – 4 hours | **8.00** |
| Traveling from Settlement Conference (April 27, 2016) | |
| **450 Golden Gate Avenue, San Francisco** | |
| • Robert Parris – 5 hours | |
| • John Bickford – 5 hours | **10.00** |
| | |
| **Law & Motion** | |
| Drafting Stipulation and Proposed Order Amending Class Certification Briefing Schedule and Date of Settlement Conference (October 6, 2015) | |
| • Kitty Szeto – 0.5 hour | **0.50** |

| | |
|---|---|
| Drafting Amended Stipulation and Proposed Order Amending Class Certification Briefing Schedule and Date of Settlement Conference (October 8, 2015)<br>• Kitty Szeto – 0.5 hour | **0.50** |
| Drafting Stipulation and Proposed Order to Amending Class Certification Briefing Schedule (January 5, 2016)<br>• Kitty Szeto – 2.10 hours<br>• John Bickford – 2.10 hours | **4.20** |
| Drafting Motion for Class Certification and Related Documents (February 5, 2016)<br>• Kitty Szeto – 5.50 hours<br>• John Bickford – 18.80 hours<br>• Eric Wilson – 50.20 hours<br>• Assistant – 8.75 hours | **83.25** |
| Drafting Notice of Errata of Appendix of Evidence in Support of Motion for Class Certification (February 10, 2016)<br>• Kitty Szeto – 1.50  hours | **1.50** |
| Analyzing Defendant's Motion to Strike Declaration of Cory Dann (March 4, 2016)<br>• John Bickford – 0.80 hour | **0.80** |
| Drafting Opposition to Defendant's Motion to Strike Declaration of Cory Dann and Related Documents (March 18, 2016)<br>• John Bickford – 32.70 hours | **32.70** |
| Drafting Ex Parte Application to Continue Plaintiffs' Deadline to File Reply in Support of Motion for Class Certification and Related Documents (March 22, 2016)<br>• Naomi Pontious – 7.50 hours<br>• Eric Wilson – 2.10 hours | **9.60** |
| Analyzing Defendant's Reply in Support of Motion to Strike Declaration of Cory Dann and Related Documents (March 25, 2016)<br>• John Bickford – 10.50 hours<br>• Eric Wilson – 2.20 hours | **12.70** |
| Drafting Reply in Support of Motion for Class Certification and Related Documents (March 29, 2016)<br>• Kitty Szeto  – 23.49 hours<br>• John Bickford – 70.40 hours<br>• Eric Wilson – 64.50 hours | **158.39** |
| Drafting Plaintiff's Request for Clarification of Court's  Order Granting in Part and Denying In Part Motion for Class Certification (April 18, 2016)<br>• John Bickford – 1 hour | **1.00** |
| Analyzing Court's Response to Request for Clarification of Court's  Order Granting in Part and Denying In Part Motion for Class Certification (April 18, 2016)<br>• John Bickford – 1.50 hours | **1.50** |
| Drafting Plaintiff's Request to Add Adria Despres as Class Representative (April 25, 2016)<br>• Eric Wilson – 3.50 hours | **3.50** |
| Drafting Plaintiff's Administrative Motion to Add Adria Despres as Class Representative (April 26, 2016)<br>• Eric Wilson – 1.50 hours | **1.50** |
| Drafting Motion for Preliminary Approval of Settlement and Related Documents<br>• Kitty Szeto – 1 hour<br>• John Bickford – 8 hours<br>• Assistant – 18 hours | **27.00** |
| | |
| **Discovery** | |
| Drafting Special Interrogatories and Demand  for Production of Documents (Set One) to Defendant (June 11, 2015)<br>• Kitty Szeto – 1.60 hours | **1.60** |

| | |
|---|---|
| Analyzing Defendant's Responses to Plaintiffs' Special Interrogatories (Set One) and Demand for Production of Documents (Set One) (July 16, 2015)<br>• Eric Wilson – 6.20 hours | **6.20** |
| Drafting Plaintiffs Adria Despres, Teresa Clemens and Jordan Simensen's  Responses to Defendant's Production of Documents (Set One) (July 27, 2015)<br>• Eric Wilson – 18.60 hours | **18.60** |
| Drafting Demand for  Production of Documents (Set Two), Special Interrogatories (Set Two) and Request for Admission (Set One) to Defendant (September 22, 2015)<br>• John Bickford – 1.40 hours | **1.40** |
| Drafting Demand for  Production of Documents (Set Three) to Defendant (November 11, 2015)<br>• Kitty Szeto – 2 hours | **2.00** |
| Analyzing Defendant's Responses to Plaintiffs' Demand for Production of Documents (Set Three) (December 14, 2015)<br>• John Bickford – 0.40 hour | **0.40** |
| Drafting Amended Demand for  Production of Documents (Set Three) to Defendant (April 20, 2016)<br>• John Bickford – 0.90 hour | **0.90** |
| Drafting Plaintiff Clemens Special Interrogatories (Set Three) to Defendant (April 20, 2016)<br>• John Bickford – 0.90 hour | **0.90** |
| | |
| **Deposition Notices** | |
| Drafting and serving Plaintiffs' Objections to Notices of Depositions of Teresa Clemens, Adria Depres and Jordan Simensen (July 31, 2015)<br>• Kitty Szeto – 1 hour | **1.00** |
| Drafting and serving Plaintiffs' Notice of Deposition to Andrew Cook (March 8, 2016)<br>• Kitty Szeto – 0.40 hour | **0.40** |
| | |
| **Taking and Defending Depositions** | **0.00** |
| Preparation for Depositions of Teresa Clemens, Adria Despres and Jordan Simensen<br>• John Bickford – 6 hours | **6.00** |
| Traveling to Depositions of Teresa Clemens, Adria Despres and Jordan Simensen (September 14, 2015)<br>**560 Mission Street, San Francisco**<br>• John Bickford – 2 hours | **2.00** |
| Defending Deposition of Teresa Clemens (September 15, 2015)<br>• John Bickford – 9 hours | **9.00** |
| Defending Deposition of Adria Despres (September 16, 2015)<br>• John Bickford – 9.25 hours | **9.25** |
| Defending Deposition of Jordan Simensen (September 17, 2015)<br>• John Bickford – 9.75 hours | **9.75** |
| Traveling from Depositions of Teresa Clemens, Adria Despres and Jordan Simensen (September 17, 2015)<br>**560 Mission Street, San Francisco, California**<br>• John Bickford – 2 hours | **2.00** |
| Preparation for Depositions of Michele Avis and Alice Chapman (November 3, 2015)<br>• Kitty Szeto – 17.30 hours | **17.30** |

| | |
|---|---|
| Traveling to Depositions of Michele Avis and Alice Chapman (November 4, 2015) | |
| **595 Market Street, San Francisco, California** | |
| • Kitty Szeto – 2 hours | **2.00** |
| Taking Deposition of Michele Avis (November 4, 2015) | |
| • Kitty Szeto – 6.75 hours | **6.75** |
| Taking Deposition of Alice Chapman (November 5, 2015) | |
| • Kitty Szeto – 4.50 hours | **4.50** |
| Traveling from Depositions of Michele Avis and Alice Chapman (November 5, 2015) | |
| **595 Market Street, San Francisco, California** | |
| • Kitty Szeto – 2 hours | **2.00** |
| Preparation for Deposition of Grant Wegner (November 8, 2015) | |
| • Kitty Szeto – 2 hours | **2.00** |
| Traveling to Deposition of Grant Wegner (November 9, 2015) | |
| **595 Market Street, San Francisco, California** | |
| • Kitty Szeto – 2 hours | **2.00** |
| Taking Deposition of Grant Wegner (November 9, 2015) | |
| • Kitty Szeto – 2.3 hours | **2.30** |
| Traveling from Deposition of Grant Wegner (November 9, 2015) | |
| **595 Market Street, San Francisco, California** | |
| • Kitty Szeto – 2 hours | **2.00** |
| Preparation for Deposition of Sharon Owens (February 14, 2016) | |
| • Kitty Szeto – 4 hours | **4.00** |
| Traveling to Deposition of Sharon Owens (February 15, 2016) | |
| **500 North Brand Boulevard, Glendale, California** | |
| • Kitty Szeto – 1 hour | **1.00** |
| Defending Deposition of Sharon Owens (February 15, 2016) | |
| • Kitty Szeto – 2.5 hours | **2.50** |
| Traveling from Deposition of Sharon Owens (February 15, 2016) | |
| **500 North Brand Boulevard, Glendale, California** | |
| • Kitty Szeto – 1 hour | **1.00** |
| Preparation for Depositions of Christiana Friend and Darcy Blasing (February 15, 2016) | |
| • Kitty Szeto – 3.6 hours | **3.60** |
| Traveling to Depositions of Christiana Friend and Darcy Blasing (February 16, 2016) | |
| **2525 Camino Del Rio South, San Diego, California** | |
| • Kitty Szeto – 3.5 hours | **3.50** |
| Defending Deposition of Christiana Friend (February 16, 2016) | |
| • Kitty Szeto – 1 hour | **1.00** |
| Defending Deposition of Darcy Blasing (February 16, 2016) | |
| • Kitty Szeto – 1.25 hours | **1.25** |
| Traveling from Depositions of Christiana Friend and Darcy Blasing (February 16, 2016) | |
| **2525 Camino Del Rio South, San Diego, California** | |
| • Kitty Szeto – 3.50 hours | **3.50** |

| | |
|---|---|
| Preparation for Deposition of Tiffani Coble (February 15, 2016) | |
| • John Bickford – 0.8 hours | 0.80 |
| Traveling to Deposition of Tiffani Coble (February 16, 2016) | |
| **1430 Truxtun Avenue, Bakersfield, California** | |
| • John Bickford – 1.5 hours | 1.50 |
| Defending Deposition of Tiffani Coble (February 16, 2016) | |
| • John Bickford – 1.5 hours | 1.50 |
| Traveling from Deposition of Tiffani Coble (February 16, 2016) | |
| **1430 Truxtun Avenue, Bakersfield, California** | |
| • John Bickford – 1.5 hours | 1.50 |
| Preparation for Deposition of Veronica Preciado (February 16, 2016) | |
| • Kitty Szeto – 4.3 hours | 4.30 |
| Traveling to Deposition of Veronica Preciado (February 17, 2016) | |
| **560 Mission Street, San Francisco, California** | |
| • Kitty Szeto – 2 hours | 2.00 |
| Defending Deposition of Veronica Preciado (February 17, 2016) | |
| • Kitty Szeto – 2.7 hours | 2.70 |
| Traveling from Deposition of Veronica Preciado (February 17, 2016) | |
| **560 Mission Street, San Francisco, California** | |
| • Kitty Szeto – 2 hours | 2.00 |
| Preparation for Deposition of Cory Dann (February 17, 2016) | |
| • John Bickford – 3 hours | 3.00 |
| Traveling to Deposition of Cory Dann (February 18, 2016) | |
| **620 Eighth Avenue, New York, New York** | |
| • John Bickford – 5 hours | 5.00 |
| Defending Deposition of Cory Dann (February 18, 2016) | |
| • John Bickford – 2.8 hours | 2.80 |
| Traveling from Deposition of Cory Dann (February 18, 2016) | |
| **620 Eighth Avenue, New York, New York** | |
| • John Bickford – 5 hours | 5.00 |
| Preparation for Depositions of Liliana Ramirez and Tayarisha Anderson (February 17, 2016) | |
| • Kitty Szeto – 3 hours | 3.00 |
| Traveling to Liliana Ramirez and Tayarisha Anderson (February 17, 2016) | |
| **560 Mission Street, San Francisco, California** | |
| • Kitty Szeto – 2 hours | 2.00 |
| Defending Deposition of Liliana Ramirez (February 18, 2016) | |
| • Kitty Szeto – 3.6 hours | 3.60 |
| Defending Deposition of Tayarisha Anderson (February 18, 2016) | |
| • Kitty Szeto – 1.8 hours | 1.80 |
| Traveling from Deposition of Liliana Ramirez and Tayarisha Anderson (February 18, 2016) | |
| **560 Mission Street, San Francisco, California** | |
| • Kitty Szeto – 2 hours | 2.00 |

| | |
|---|---|
| Preparation for Deposition of Helen Campos (February 18, 2016) | |
| • John Bickford – 1 hour | **1.00** |
| Traveling to Deposition of Helen Campos (February 19, 2016) | |
| **2029 Century Park East, Los Angeles, California** | |
| • John Bickford – 1.5 hours | **1.50** |
| Defending Deposition of Helen Campos (February 19, 2016) | |
| • John Bickford – 2.75 hours | **2.75** |
| Traveling from Deposition of Helen Campos (February 19, 2016) | |
| **2029 Century Park East, Los Angeles, California** | |
| • John Bickford – 1.5 hours | **1.50** |
| Preparation for Deposition of Tina Cates (February 18, 2016) | |
| • Kitty Szeto – 1.5 hours | **1.50** |
| Traveling to Deposition of Tina Cates (February 19, 2016) | |
| **400 Capitol Mall, Sacramento, California** | |
| • Kitty Szeto – 2 hours | **2.00** |
| Defending Deposition of Tina Cates (February 19, 2016) | |
| • Kitty Szeto – 3.6 hours | **3.60** |
| Traveling from Deposition of Tina Cates (February 19, 2016) | |
| **400 Capitol Mall, Sacramento, California** | |
| • Kitty Szeto – 2 hours | **2.00** |
| Preparation for Depositions of Shu Lan Cheng and Dora Andrade (February 21, 2016) | |
| • Kitty Szeto – 3.0 hours | **3.00** |
| Traveling to Depositions of Shu Lan Cheng and Dora Andrade (February 22, 2016) | |
| **2029 Century Park East, Los Angeles, California** | |
| • Kitty Szeto – 1.5 hours | **1.50** |
| Defending Deposition of Shu Lan Cheng (February 22, 2016) | |
| • Kitty Szeto – 2 hours | **2.00** |
| Defending Deposition of Dora Andrade (February 22, 2016) | |
| • Kitty Szeto – 2.4 hours | **2.40** |
| Traveling from Depositions of Shu Lan Cheng and Dora Andrade (February 22, 2016) | |
| **2029 Century Park East, Los Angeles, California** | |
| • Kitty Szeto – 1.5 hours | **1.50** |
| Preparation for Deposition of Kathleen Zabalza (March 13, 2016) | |
| • Eric Wilson – 6.5 hours | **6.50** |
| Traveling to Deposition of Kathleen Zabalza (March 14, 2016) | |
| **2150 River Plaza Drive, Sacramento, California** | |
| • Kitty Szeto – 2 hours | **2.00** |
| Taking Deposition of Kathleen Zabalza (March 14, 2016) | |
| • Eric Wilson – 1.75 hours | **1.75** |
| Traveling from Deposition of Kathleen Zabalza (March 14, 2016) | |
| **2150 River Plaza Drive, Sacramento, California** | |
| • Eric Wilson – 2 hours | **2.00** |

| | |
|---|---|
| Preparation for Depositions of Suzanne Brown and Christine Fleisher (March 13, 2016) | |
| • John Bickford – 3.0 hours | **3.00** |
| Taking Deposition of Suzanne Brown (March 14, 2016) | |
| **43364 10th Street West, Lancaster, California** | |
| • John Bickford – 2.75 hours | **2.75** |
| Taking Deposition of Christie Fleisher (March 14, 2016) | |
| **43364 10th Street West, Lancaster, California** | |
| • John Bickford – 1.8 hours | **1.80** |
| Preparation for Deposition of Andrew Cook (March 14, 2016) | |
| • Kitty Szeto – 7.45 hours | **7.45** |
| Taking Deposition of Andrew Cook (March 15, 2016) | |
| **43364 10th Street West, Lancaster, California** | |
| • Kitty Szeto – 4.3 hours | **4.30** |
| Preparation for Deposition of Monica Martinez (March 15, 2016) | |
| • Eric Wilson – 1 hour | **1.00** |
| Taking Deposition of Monica Martinez (March 16, 2016) | |
| **43364 10th Street West, Lancaster, California** | |
| • Eric Wilson – 2.3 hours | **2.30** |
| Preparation for Deposition of Deborah Cole (March 16, 2016) | |
| • Kitty Szeto – 7.45 hours | **7.45** |
| Traveling to Deposition of Deborah Cole (March 16, 2016) | |
| **1999 Harrison Street, Oakland, California** | |
| • Kitty Szeto – 2 hours | **2.00** |
| Taking Deposition of Deborah Cole (March 17, 2016) | |
| • Kitty Szeto – 2.8 hours | **2.80** |
| Traveling from Deposition of Deborah Cole (March 17, 2016) | |
| **1999 Harrison Street, Oakland, California** | |
| • Kitty Szeto – 2hours | **2.00** |
| Preparation for Deposition of Alexandrea Johnson (March 16, 2016) | |
| • Eric Wilson – 1 hour | **1.00** |
| Taking Deposition of Alexandrea Johnson (March 17, 2016) | |
| **43364 10th Street West, Lancaster, California** | |
| • Eric Wilson – 1.3 hours | **1.30** |
| Preparation for Deposition of Theresa Lancaster (March 17, 2016) | |
| • Kitty Szeto – 7.45 hours | **7.45** |
| Traveling to Depositions of Theresa Lancaster and Brittany Drake (March 17, 2016) | |
| **155 East Shaw Avenue, Fresno, California** | |
| • Kitty Szeto – 3.5 hours | **3.50** |
| Taking Deposition of Theresa Lancaster (March 18, 2016) | |
| • Kitty Szeto – 2.25 hours | **2.25** |
| Taking Deposition of Brittany Drake (March 18, 2016) | |
| • Kitty Szeto – 3.3 hours | **3.30** |

| | |
|---|---|
| Traveling from Depositions of Theresa Lancaster and Brittany Drake(March 18, 2016) | |
| **155 East Shaw Avenue, Fresno, California** | |
| • Kitty Szeto – 3.5 hours | **3.50** |
| Preparation for Deposition of Marjorie Manuel (March 17, 2016) | |
| • Eric Wilson – 1 hour | **1.00** |
| Traveling to Deposition of Marjorie Manuel (March 17, 2016) | |
| **1999 Harrison Street, Oakland, California** | |
| • Eric Wilson – 2 hours | **2.00** |
| Taking Deposition of Marjorie Manuel (March 18, 2016) | |
| • Eric Wilson – 3.2 hours | **3.20** |
| Traveling from Deposition of Marjorie Manuel (March 18, 2016) | |
| **1999 Harrison Street, Oakland, California** | |
| • Eric Wilson – 2 hours | **2.00** |
| Preparation for Deposition of Rocio Bernal-Yates (March 20, 2016) | |
| • Naomi Pontious – 6 hours | **6.00** |
| Traveling to Deposition of Rocio Bernal-Yates (March 21, 2016) | |
| **2150 River Plaza Drive, Sacramento, California** | |
| • Naomi Pontious – 2 hours | **2.00** |
| Taking Deposition of Rocio Bernal-Yates (March 21, 2016) | |
| • Naomi Pontious – 1.75 hours | **1.75** |
| Traveling from Deposition of Rocio Bernal-Yates (March 21, 2016) | |
| **2150 River Plaza Drive, Sacramento, California** | |
| • Naomi Pontious – 2 hours | **2.00** |
| Preparation for Deposition of Sonya Ekblad (March 20, 2016) | |
| • Eric Wilson – 1.4 hours | **1.40** |
| Taking Deposition of Sonya Ekblad (March 21, 2016) | |
| **400 South Hope Street, Los Angeles, California** | |
| • Eric Wilson – 2.2 hours | **2.20** |
| Preparation for Depositions of Debbie Nicholson and Ngoc Trinh (March 20, 2016) | |
| • Kitty Szeto – 2.7 hours | **2.70** |
| Traveling to Deposition of Debbie Nicholson  and Ngoc Trinh (March 20, 2016) | |
| **1300 Clay Street, Oakland, California** | |
| • Kitty Szeto – 2 hours | **2.00** |
| Taking Deposition of Debbie Nicholson (March 21, 2016) | |
| • Kitty Szeto – 3.2 hours | **3.20** |
| Taking Deposition of Ngoc Trinh  (March 21, 2016) | |
| • Kitty Szeto – 3.2 hours | **3.20** |
| Traveling from Deposition of Debbie Nicholson  and Ngoc Trinh (March 21, 2016) | |
| **1300 Clay Street, Oakland, California** | |
| • Kitty Szeto – 2 hours | **2.00** |
| Preparation for Depositions of Alicia Moser and Elizabeth Boles (March 21, 2016) | |
| • Kitty Szeto – 7.45 hours | **7.45** |

| | |
|---|---|
| Traveling to Depositions of Alicia Moser and Elizabeth Boles (March 21, 2016) | |
| **2151 River Plaza Drive, Sacramento, California** | |
| • Kitty Szeto – 2 hours | **2.00** |
| Taking Deposition of Alicia Moser (March 22, 2016) | |
| • Kitty Szeto – 1.5 hours | **1.50** |
| Taking Deposition of Elizabeth Boles (March 22, 2016) | |
| • Kitty Szeto – 2.9 hours | **2.90** |
| Traveling from Depositions of Alicia Moser and Elizabeth Boles (March 22, 2016) | |
| **2151 River Plaza Drive, Sacramento, California** | |
| • Kitty Szeto – 2 hours | **2.00** |
| Preparation for Deposition of Marie Fuentes (March 22, 2016) | |
| • Naomi Pontious – 1.5 hours | **1.50** |
| Traveling to Deposition of Marie Fuentes (March 22, 2016) | |
| **155 East Shaw Avenue, Fresno, California** | |
| • Naomi Pontious – 3.5 hours | **3.50** |
| Taking Deposition of Marie Fuentes (March 23, 2016) | |
| • Naomi Pontious – 3.8 hours | **3.80** |
| Traveling from Deposition of Marie Fuentes (March 23, 2016) | |
| **155 East Shaw Avenue, Fresno, California** | |
| • Naomi Pontious – 3.5 hours | **3.50** |
| Preparation for Depositions of Leeanne Petrics and Cynthia Thomas (March 22, 2016) | |
| • Kitty Szeto – 7.45 hours | **7.45** |
| Traveling to Deposition of Leeanne Petrics (March 23, 2016) | |
| **402 West Broadway, San Diego, California** | |
| • Kitty Szeto – 3.5 hours | **3.50** |
| Taking Deposition of Leeanne Petrics (March 23, 2016) | |
| • Kitty Szeto – 2.5 hours | **2.50** |
| Taking Deposition of Cynthia Thomas (March 23, 2016) | |
| • Kitty Szeto – 1.7 hours | **1.70** |
| Traveling from Depositions of Leeanne Petrics and Cynthia Thomas (March 23, 2016) | |
| **402 West Broadway, San Diego, California** | |
| • Kitty Szeto – 3.5 hours | **3.50** |
| Preparation for Deposition of Maria Garcia (March 22, 2016) | |
| • Eric Wilson – 2.5 hours | **2.50** |
| Taking Deposition of Maria Garcia (March 23, 2016) | |
| **43364 10th Street West, Lancaster, California** | |
| • Eric Wilson – 1.3 hours | **1.30** |
| | |
| **Letters** | |
| Drafting Meet and Confer Letter to Defendant re Defendant's Responses to Demand for Production of Documents (Set One) (August 31, 2015) | |
| • John Bickford – 0.30 hour | |
| • Eric Wilson – 12.4 hours | **12.70** |

| | |
|---|---|
| Drafting Letter to Defendant re Privileged Documents (September 15, 2015)<br>• John Bickford – 1.9 hours | **1.90** |
| Analyzing Defendant's Email Meet and Confer Letter re Defendant's Responses to Demand for Production of Documents (Set One) (October 7, 2015)<br>• John Bickford – 0.30 hour | **0.30** |
| Drafting Meet and Confer Letter to Defendant re Defendant's Responses to Demand for Production of Documents (Set One) (October 13, 2015)<br>• Eric Wilson – 2.0 hours | **2.00** |
| Drafting Meet and Confer Letter to Defendant re Defendant's Responses to Demand for Production of Documents (Set Three) (January 12, 2016)<br>• John  Bickford – 0.50 hour<br>• Eric Wilson – 3.30 hours | **3.80** |
| | |
| **Declarations** | **0.00** |
| Communicating with 15 declarants, preparation of 15 declarations and sending declarations for signature (January through February 2016)<br>• John Bickford – 7.20 hours<br>• Eric Wilson – 4.20 hours<br>• Assistant – 81.8 hours | **93.20** |
| | |
| **Review and Analysis of Documents** | |
| Review and Analysis of 4,300 Pages of Documents Produced by Defendants and Clients<br>• John Bickford – 0.8 hour<br>• Eric Wilson – 4.8 hours<br>• Assistant – 8.9 hours | **14.50** |
| Pulling Time Sheets and Payroll Records for Depositions<br>• John Bickford – 7.2 hours<br>• Eric Wilson – 4.2 hours<br>• Assistant – 45.80 hours | **57.20** |
| | |
| **Total Hours** | |
| Robert A. Parris (Partner With 23 Years of Experience) | **15.00** |
| Kitty Szeto (Associate With 7 Years of Experience) | **273.76** |
| John M. Bickford (Associate With 4 Years of Experience) | **282.35** |
| Naomi Pontious (Associate With 3 Years of Experience) | **31.55** |
| Eric Wilson (Associate With 2 Years of Experience) | **262.80** |
| Assistant (Assistant With 27 Years of Experience) | **163.25** |
| **Total Firmwide Hours** | **1,028.71** |
| **Total Lodestar** | |
| Robert A. Parris – 15 hours x $720 per hour | **$10,800.00** |
| Kitty Szeto – 273.76 hours x $500 per hour | **$136,880.00** |
| John M. Bickford – 282.35 hours x $300 per hour | **$84,705.00** |
| Naomi Pontious – 31.55 hours x $250 per hour | **$7,887.50** |
| Eric Wilson – 163.25 hours x $250 per hour | **$65,700.00** |
| Assistant – 163.25 hours x $200 per hour | **$32,650.00** |
| **Total Firmwide Lodestar** | **$338,622.50** |

EXHIBIT "3"

297 F.R.D. 431
United States District Court,
E.D. California.

Christina BARBOSA and Patricia Aguilera
Barrios, on behalf of themselves and all
similarly situated individuals, Plaintiffs,

v.

CARGILL MEAT SOLUTIONS
CORP., and Does 1–50, Defendants.

No. 1:11–cv–00275–SKO.   |   July 2, 2013.

**Synopsis**
**Background:** Hourly employees at meat packing plant, who had been required to use time during unpaid meal breaks for preparing, donning and doffing, cleaning and sanitizing required work gear and equipment, filed putative collective action against their employer alleging violations of California's Labor Code and Unfair Competition Law (UCL). Parties filed joint motion for final approval of settlement, and plaintiff moved for attorney fees, costs, and enhancement awards.

**Holdings:** The District Court, Sheila K. Oberto, United States Magistrate Judge, held that:

[1] class of 1,837 met numerosity requirement for certification, for settlement purposes;

[2] class met commonality requirement;

[3] claims were typical;

[4] named plaintiffs were adequate to represent class;

[5] common questions predominated;

[6] class action was superior method of resolving claims;

[7] proposed $1,290,000 settlement of claims of 1,837 hourly employees was fair, reasonable, and adequate;

[8] award of attorney fees of 33 percent of settlement was appropriate;

[9] award of costs to class counsel of $32,722.74, was appropriate; and

[10] award of $5,000 to each plaintiff as enhancement award was proper.

Motions granted.

**Attorneys and Law Firms**

**\*435** Alexander Russell Wheeler, Kitty Kit Yee Szeto, R. Rex Parris Law Firm, Lancaster, CA, Daniel Patrick Hunt, Attorney at Law, South Pasadena, CA, Philip A. Downey, The Downey Law Firm, LLC, Unionville, PA, for Plaintiffs.

Jason Eric Barsanti, Jeremy J. Glenn, PHV, Joseph E. Tilson, PHV, Meckler, Bulger, Tilson Marick and Pearson, LLP, Chicago, IL, Jesse Michael Caryl, Bent Caryl & Kroll, LLP, Los Angeles, CA, for Defendants.

**Opinion**

**ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**ORDER GRANTING MOTION FOR ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARDS**

SHEILA K. OBERTO, United States Magistrate Judge.

**I. INTRODUCTION**

On May 6, 2013, Plaintiffs Christina Barbosa ("Barbosa") and Patricia Aguilera Barrios ("Barrios," collectively "Plaintiffs") and Defendant Cargill Meat Solutions Corporation ("Defendant") filed a joint motion requesting final approval of a class action settlement. (Doc. 62.) Plaintiffs also filed a motion for an award of attorneys' fees and costs and enhancement awards for the named Plaintiffs as Class Representatives. (Doc. 63.) No objection to either motion was submitted by any member of the class ("Class Member"). A final fairness hearing was conducted by the Court on June 5, 2013. Alexander Wheeler, Esq., of R. Rex Parris Law Firm and Philip Downey, Esq., of the Downey Law Firm, LLC, appeared on behalf of Plaintiffs, Jeremy J. Glenn, Esq., and Joseph E. Tilson, Esq., of Meckler, Bulger, Tilson, Marick, & Pearson, LLP, appeared on behalf of Defendant. Dennis Wilson, Esq., former counsel for

Plaintiffs, also appeared. No Class Member **436** appeared at the hearing. Plaintiffs' counsel indicated that additional claims had been submitted by Class Members since the Class Administrator's declaration was filed; a supplemental declaration of the Class Administrator was filed on June 6, 2013. (Doc. 69.)

For the reasons set forth below, the Court GRANTS FINAL APPROVAL of the parties' class action settlement, (2) GRANTS an award of attorneys' fees and costs, and (3) GRANTS enhancement awards to Plaintiffs as Class Representatives.

## II. BACKGROUND

On February 16, 2011, Plaintiffs filed a putative collective class action complaint against Defendant seeking to recover against Defendant for violations of the California Labor Code as well as for engaging in unfair competition and violating California's Unfair Competition Law. Plaintiffs' operative pleading, the First Amended Complaint, was filed on February 22, 2011, and alleges claims for (1) violation of California's Unfair Competition Law, Business and Professions Code § 17200, et seq.; (2) violation of the California Labor Code §§ 510—failure to pay overtime; (3) violation of the California Labor Code §§ 201–203—unpaid wages and waiting time penalties; (4) violation of California Labor Code §§ 226.7, 512—failure to provide meal and rest periods; and (5) violation of the California Labor Code §§ 1174 et seq.—failure to maintain required records. (Doc. 7, First Amended Complaint ("FAC").)

The class consists of individuals who are currently and formerly employed by Defendant at its meat processing facilities in Fresno, California. (FAC, ¶ 12.) The complaint alleges that, pursuant to state and federal regulations and Defendant's own internal policies and procedures, Plaintiffs and Class Members are required to wear special personal protective equipment and gear for protection and sanitary reasons. All of Defendant's production employees are required to wear the special protective equipment when working. During their unpaid 30–minute lunch breaks, Plaintiffs and Class Members must search for an open hook on which to hang their equipment; they must then remove their equipment and hang it before proceeding off the processing floor. Prior to the conclusion of the 30–minute break, Plaintiffs and Class Members must return to their work stations several minutes before the line starts so that they have

sufficient time to re-don their protective equipment and have their work station prepared. Employees must also sanitize their hands during lunch and prior to resuming work. All of these activities are to be performed by the employees during their 30–minute unpaid meal breaks. (FAC ¶¶ 14–15.)

Defendant filed an answer to the FAC on March 22, 2011, and on November 14, 2011, a scheduling order was issued and discovery was opened. (Docs. 11, 26.) In late 2012, the parties participated in two full-day mediation sessions with Michael Loeb, Esq., an experienced JAMS mediator in San Francisco, California. (Doc. 62, 7:21–22.) As a result of mediation, the parties reached a class-wide settlement of the action (Doc. 62, 7:22–25), and on November 15, 2012, a Notice of Settlement was filed (Doc. 44).

On December 12, 2012, the parties filed a joint motion for preliminary approval of the class settlement. (Doc. 47.) On January 13, 2013, the Court granted preliminary approval of the settlement, authorized the notice process, and scheduled a hearing to consider final approval of the settlement. (Doc. 53.) On May 6, 2013, the parties filed a Joint Motion for Final Approval of Class Action Settlement and Plaintiffs filed a motion for attorneys' fees and costs and a motion for an enhancement award for the named Plaintiffs. (Doc. 63.) No opposition was filed. A hearing was held on June 5, 2013, and Plaintiffs indicated that additional claims had been received and the settlement administrator would file an updated declaration. On June 6, 2013, Kristin L. Dahl filed a supplemental declaration regarding the claims administration process. (Doc. 69.)

## III. THE PARTIES' SETTLEMENT

On November 15, 2012, the parties filed a Notice of Settlement; the terms of the parties' "Stipulation of Class Settlement and Release Between Plaintiffs and Defendant" **437** ("Settlement Agreement") is summarized below. (See Doc. 47–1, Exhibit A.)

### A. The Composition of the Settlement Class

The Settlement Agreement provides for the certification, for settlement purposes only, of a class comprised of all current and former hourly production and support employees of Defendant's meat packing facility in Fresno, California, between February 2, 2009, and the date of preliminary approval of the Settlement Agreement (January 16, 2013)

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.

who do not timely opt out of the Settlement. (Doc. 47–1, ¶ 7(r).)

## B. The Material Terms of the Settlement Agreement

### 1. The Class Settlement Amount

Plaintiffs and Defendant have agreed to settle the underlying class claims in exchange for a Gross Settlement Amount in the sum of $1,290,000 (the "Settlement Amount"). The Gross Settlement Amount includes (1) a $10,000 service fee award fund set aside for the two Representative Plaintiffs; (2) the payment of attorneys' fees to Class Counsel not to exceed one-third of the Gross Settlement Amount; (3) Class Counsel's costs and expenses in the amount of $16,196.21 for the R. Rex Parris Law Firm and $9,420.09 for the Downey Law Firm; (4) $25,500 for the Claims Administrator's estimated costs; and (5) an amount set aside for the payment of any agreed and allowed late claims or unanticipated expenses, which shall not exceed $10,000. The remainder of the Settlement Amount, after deduction of these payments constitutes the "Net Settlement Amount" and will be used to pay the Class Members. (Doc. 47–1, ¶ 7(k).) To the extent the $10,000 set aside for payment of any agreed and allowed late claims or unanticipated expenses is not exhausted, any unexhausted amount will be donated to the designated *cy pres* beneficiary, The United Way of Fresno County.

### 2. Settlement Awards

The parties agreed that the Claims Administrator would use personnel and payroll records provided by Defendant to determine the amount that each Class Member is eligible to receive upon submission of a valid and timely Claim form. Based on the number of weeks each Class Member actually worked for Defendant during the eligibility period, the Claims Administrator will calculate an award for each individual. Each Class Member's number of settlement shares will be divided by the total settlement shares and that ratio will be multiplied by the Net Settlement Amount to determine the amount of the monetary award that each Class Member will receive. The parties may seek review of the Claims Administrator's calculations. One-third of each Settlement Award shall be treated as back wages subject to W–2 reporting and normal payroll taxes and withholding will be deducted by the Claims Administrator pursuant to state and federal law. The remaining two-thirds of each Settlement Award shall be treated by all parties as non-wage penalties and liquidated damages, and will be reported on an IRS Form

1099 and shall not be subject to FICA and FUTA withholding taxes. (Doc. 47–1, ¶ 14.)

## C. The Scope of the Release in the Settlement Agreement

The parties' Settlement Agreement sets forth the following release by the Class Members and the Representative Plaintiffs:

19. *Release by Eligible Class Members.* It is hereby agreed, by and between the Representative Plaintiffs, Settlement Class Members and Defendant, through their respective counsel of record, and subject to approval of the Court, in consideration of the benefits inuring to the Parties thereto, and without admission of any liability or wrongdoing whatsoever by Defendant, that upon entry of the Order and Final Judgment:

a. Representative Plaintiffs shall be deemed to have released and forever discharged the Released Parties from any and all Released Claims, as defined above in paragraph 7(o), [1] whether known or unknown. **\*438** In addition, Representative Plaintiffs hereby release and forever discharge the Released Parties from any and all existing claims, liabilities, debts, compensation, damages, losses, costs, expenses, and attorneys' fees, of any and every kind, nature or character, known or unknown, suspected or unsuspected, actual or potential, absolute or contingent, pending or anticipated, which arise out of, are based upon, are by reason of, relate to, or in any way involve Representative Plaintiffs' employment with [Defendant], including the termination thereof, including, but not limited to, those arising under any federal, state, provincial or local law, regulation or ordinance, contract, quasi-contract, the common law, public policy, or any constitution, such as, without limitation, the California Fair Employment and Housing Act, Government Code sections 12940 *et seq.,* Family Medical Leave Act, California Family Rights Act, Title VII of the Civil Rights Act of 1964, Americans With Disabilities Act, Older Workers Benefit Protection Act, Age Discrimination in Employment Act, Consolidated Omnibus Budget Reconciliation Act of 1985, Employee Retirement Income Security Act of 1974, Civil Code section 51 *et seq.,* Wage Orders of the Industrial Welfare Commission, Fair Labor Standards Act and California Labor Code, including Labor Code Section 132a, arising, accruing, or occurring at any time up to and including the date on which they execute this Agreement. Representative Plaintiffs acknowledge and agree that this Settlement Agreement includes their release of claims for

*disputed* wages pursuant to Labor Code Section 206.5. Representative Plaintiffs do *not* provide the release in exchange for payment of any undisputed wages owing to them.

1    Paragraph 7(*o*) defines "Released Claims" to mean "any and all claims asserted on behalf of hourly production employees in the First Amended Complaint, whether known or unknown, against the Released Parties by or on behalf of such Settlement Class Members or successors or assigns of any of them (whether directly, indirectly, representatively, derivatively or in any other capacity), accruing any time prior to the entry of the Preliminary Approval Order and arising under the California Labor Code including but not limited to §§ 201–203, 204, 210, 218–218.6, 226, 226.3, 226.7, 510, 558, 1174, 1174.5, 1194, 1199, *et seq.;* the California Business and Professions Code §§ 17200 *et seq.,* California Code of Regulations, Title 8, § 11080, subs. 3, 4, 7, 9–13, 20 (California Industrial Welfare Commission Wage Orders No. 4–1998, 4–2000, 4–2001, 8–1998, 8–2000, and 8–2001), and all claims for penalties that could have been brought based on the violations alleged in the Complaint; violations of Business & Professions Code § 17200, *et seq.* based on the foregoing alleged violations; and all claims for attorneys' fees and/or costs. Released Claims also means any claims based on the same set of facts underlying the claims asserted in this Class Action including, but not limited to, claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Settlement Class Members who do not respond to the Notice (*i.e.,* neither opt out of the class nor file a claim form) are bound by the terms of the Settlement Agreement, with the exception that Settlement Class Members who do not respond to the Notice (*i.e.,* neither opt out of the class nor file a claim form) do not release any claims under the FLSA." (Doc. 47–1, ¶ 7(*o*).)

REPRESENTATIVE PLAINTIFFS ADDITIONALLY EXPRESSLY WAIVE ANY AND ALL RIGHTS THEY HAVE UNDER SECTION 1542 OF THE CIVIL CODE OF THE STATE OF CALIFORNIA, WHICH PROVIDES:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF

KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

NOTWITHSTANDING THE PROVISION OF SECTION 1542, AND FOR THE PURPOSE OF IMPLEMENTING A COMPLETE RELEASE AND DISCHARGE, REPRESENTATIVE PLAINTIFFS EXPRESSLY ACKNOWLEDGE THAT THIS SETTLEMENT AGREEMENT IS INTENDED TO INCLUDE IN ITS EFFECT, WITHOUT LIMITATION, CLAIMS AND CAUSES OF ACTION WHICH THEY DO NOT KNOW OF OR SUSPECT TO EXIST IN THEIR FAVOR AT THE TIME OF EXECUTION HEREOF AND THAT THIS AGREEMENT CONTEMPLATES THE EXTINGUISHMENT OF ALL SUCH CLAIMS AND CAUSES OF ACTION.

**\*439** b. Each Settlement Class Member shall be bound by all terms of the Settlement Agreement and the Order Finally Approving Settlement Agreement and Final Judgment and shall be deemed to have jointly and severally discharged the Released Parties from any and all Released Claims, whether known or unknown, accruing any time prior to the date of preliminary approval of the Settlement Agreement, unless he or she timely opts out of the Settlement Agreement, with the exception that Settlement Class Members who do not respond to the Notice (*i.e.,* neither opt out of the class nor file a claim form) do not release any claims under the FLSA.

WITH RESPECT TO THE RELEASED CLAIMS, AS DEFINED IN PARAGRAPH 7(O), ELIGIBLE CLASS MEMBERS AND THE REPRESENTATIVE PLAINTIFFS, BARBOSA AND AGUILERA BARRIOS, ADDITIONALLY EXPRESSLY WAIVE ANY AND ALL RIGHTS THEY HAVE UNDER SECTION 1542 OF THE CIVIL CODE OF THE STATE OF CALIFORNIA, WHICH PROVIDES:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR." NOTWITHSTANDING THE

PROVISION OF SECTION 1542, AND FOR THE PURPOSE OF IMPLEMENTING A COMPLETE RELEASE AND DISCHARGE, ELIGIBLE CLASS MEMBERS EXPRESSLY ACKNOWLEDGE THAT THIS SETTLEMENT AGREEMENT IS INTENDED TO INCLUDE IN ITS EFFECT CLAIMS RELEASED, AS DEFINED IN PARAGRAPH 7(O), WHICH THEY DO NOT KNOW OF OR SUSPECT TO EXIST IN THEIR FAVOR AT THE TIME OF EXECUTION HEREOF AND THAT THIS AGREEMENT CONTEMPLATES EXTINGUISHING ALL OF SUCH CLAIMS.

c. *Release Language on Settlement Checks.* Defendant shall be entitled to include the following release language on the back of each settlement check:

My signature or negotiation of this check constitutes a full and complete release of Cargill Meat Solutions Corp., its parent, affiliated and related entities, their predecessors, and their officers and employees, by me for any and all claims I agreed to settle ("Released Claims") by submitting a claim form to participate in the settlement of *Barbosa, et al. v. Cargill Meat Solutions Corp.,* pending in the United States District Court for the Eastern District of California, Case No. 1:11–cv–00275–SKO, up to and including the date of preliminary Court approval of the settlement, as well as my acknowledgment that I accept this check as payment in full for all claims alleged on my behalf in that lawsuit.

(Doc. 47–1, ¶ 19.)

**D. Notice to the Class Members**
The procedures for giving notice to the Class Members, as set forth in the parties' Settlement Agreement (*see* Doc. 47–1, ¶ 24) and ordered in the Court's Preliminary Approval Order (Doc. 53), have been carried out by the Settlement Administrator, Dahl Administration, LLC ("Dahl"). (Doc. 63–3, Dahl Decl., ¶¶ 4–9.)

On January 30, 2013, Defendant provided Dahl the names of 1,837 hourly employees of Cargill Meat Solutions Corporation who worked at its meat-packing facility in Fresno, California, between February 2, 2009, and January 16, 2013. (Doc. 63–3, Dahl Decl., ¶ 4.) Dahl processed the Class List through the National Change of Address database, which provides updated addresses for individuals who have moved within the last four years and who filed a change of address card with the U.S. Postal Service. (Doc. 63–3, Dahl Decl., ¶ 6.)

Dahl prepared Notice and Claim for Packets for each Class Member containing the Court-approved Notice in English and Spanish, a customized Claim form in English and Spanish with the Class Member's eligible workweeks and estimated settlement award amount, and a postage pre-paid reply envelope. **\*440** (Doc. 63–3, Dahl Decl., ¶ 7.) The Notice summarized the Settlement Agreement's principal terms, provided Class Members with an estimate of how much they would be paid if the Settlement Agreement received final approval, and advised Class Members how to submit claims for payment, opt out of the Settlement, or object to the Settlement. (*See* Doc. 63–3, Exhibit A.) The Notice was approved by the Court in the January 16, 2013, Preliminary Approval Order. (Doc. 53, ¶¶ 5–7.)

On February 13, 2013, Notice and Claim Form packets were mailed via first class mail to 1,837 Class Members. (Doc. 63–3, Dahl Decl., ¶ 8.) As of April 15, 2013, Dahl received 158 undeliverable Notices, nine of which were returned with forwarding addresses and they were promptly re-mailed. (Doc. 63–3, Dahl Decl., ¶ 10.) The remaining 149 Notices were sent to a professional address location service for address tracking. (Doc. 63–3, Dahl Decl., ¶ 10.) After trace results were received, 100 Notice and Claim Form packets were re-mailed to updated addresses, and 49 Notice and Claim Form packets could not be re-mailed because no new address was found. (Doc. 63–3, Dahl Decl., ¶ 10.) Seven Notice and Claim Form packets were returned as undeliverable after the filing deadline or were returned from a traced address and were not re-mailed. (Doc. 63–3, Dahl Decl., ¶ 10.)

Dahl established a toll-free settlement helpline to assist Class Members with questions about the Notice and Claim Form packet and settlement. (Doc. 63–3, Dahl Decl., ¶ 11.) The helpline provided support in English and Spanish, and as of April 29, 2013, Dahl had received 72 calls from Class Members. (Doc. 63–3, Dahl Decl., ¶ 11.)

**E. Response of the Class**
As of April 26, 2013, Dahl received 1,060 Claim Forms, representing a 57.70% filing rate. Of these, 1,051 were valid and timely. As of April 29, 2013, one valid, timely request for exclusion had been filed, and no late requests for exclusion were filed. (Doc. 63–3, Dahl Decl., ¶ 12.) Dahl received no objections to the settlement. (Doc. 63–3, Dahl Decl., ¶ 13.)

On June 6, 2013, Kristin Dahl filed a supplemental declaration to describe the receipt and processing of late Claims Forms. (Doc. 69, Dahl Decl.) As of June 5, 2013, Dahl had received a total of 1,065 Claim Forms, representing a 57.97% filing rate. (Doc. 69, Dahl Decl., ¶ 5.) Of these, 1053 were valid and timely, but twelve claims were received after the April 15, 2013, filing deadline. (Doc. 69, Dahl Decl., ¶ 5.) The parties agreed to accept all twelve late Claim Forms. (Doc. 69, Dahl Decl., ¶ 5.)

Based upon the Net Settlement Amount, estimated to be $785,347.26, payments to the 1,053 Class Members who filed valid and timely Claim Forms will total $633,814.40 or 80.70% of the Net Settlement Amount. (Doc. 69, Dahl Decl., ¶ 6.) The maximum claim payment to Class Members who worked the entire eligibility period is $922.29, and the average claim payment is $601.91. (Doc. 69, Dahl Decl., ¶ 6.) Payments to the 12 Class Members who filed late Claim Forms total $5,199.57 or 0.66% of the Net Settlement Amount, and the average claim payment for the Late Claimants is estimated to be $433.29. (Doc. 69, Dahl Decl., ¶ 7.)

### F. Notice Pursuant to 28 U.S.C. § 1715

Pursuant to 28 U.S.C. § 1715(b), "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal office, a notice of the proposed settlement."

Kristin Dahl provided a declaration with respect to the notice activities Dahl performed under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1715(a) and (b). (Doc. 62–2.) Ms. Dahl states that on February 5, 2013, Dahl mailed notice of the proposed settlement of this action via Certified Mail to the Attorneys General for California, Louisiana, Minnesota, Pennsylvania, Texas, and Wisconsin, and to the appropriate federal official, the Attorney General of the United States. (Doc. 62–2, ¶ 4.)

### *441 IV. DISCUSSION

### A. Final Approval of the Class–Action Settlement is Granted

### 1. The Rule 23(a) Class–Certification Requirements Are Satisfied

Federal Rule of Civil Procedure 23(e) requires court approval of class action settlements. "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir.2003). In confirming the propriety of class certification, courts assess the following prerequisites pursuant to Rule 23(a): "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir.1992) (citing Fed.R.Civ.P. 23(a)).

### a. Numerosity

**[1]** Numerosity requires that the class be so numerous that the joinder of individual class members would be impracticable. Fed.R.Civ.P. 23(a)(1). Across the Settlement Class, 1,837 Class Members were ultimately identified. The number of Class Members in this case indicates that the numerosity factor has been satisfied. See, e.g., Jordan v. L.A. Cnty., 669 F.2d 1311, 1319 (9th Cir.1982) (indicating that class sizes of 39, 64, and 74 are sufficient to satisfy the numerosity requirement), vacated on other grounds, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982).

### b. Commonality

**[2]** Rule 23(a) also requires "questions of law or fact common to the class." Commonality exists when there is either a common legal issue stemming from divergent factual predicates or a common nucleus of facts resulting in divergent legal theories. Hanlon v. Chrysler Corp. ("Chrysler Corp."), 150 F.3d 1011, 1019 (9th Cir.1998). In other words, commonality is generally satisfied where, as in this case, "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir.2001), abrogated on other grounds by Johnson v. California, 543 U.S. 499, 504–05, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005). As clarified in Wal–Mart Stores, Inc. v. Dukes ("Dukes"), a plaintiff must demonstrate that the class members "have suffered the same injury" and

that their claims "depend upon a common contention ... of such a nature that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (internal citation omitted).

The Class Members' claims arising from Defendant's alleged uniform employment policies asserted here differ from those found insufficient to establish commonality in *Dukes,* 131 S.Ct. at 2554. In *Dukes,* the purported commonality was a lack of common control over a business practice. *Id.* at 2554–55. The Supreme Court determined that the "only corporate policy that the plaintiffs' evidence convincingly establishes is Wal–Mart's 'policy' of allowing discretion by local supervisors over employment matters." *Id.* at 2554. The Court noted that, "[o]n its face, of course that is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy against having uniform employment practices." *Id.* The Court concluded that there was no specific employment practice that tied all of the putative class members together and that "[m]erely showing that Wal–Mart's policy of discretion has produced an overall sex-based disparity does not suffice." *Id.* at 2556.

[3] Here, there is no evidence before the Court that the pay practices alleged to violate the California Labor Code were applied inconsistently, such that the complained-of employment practices do not "touch and concern all members of the class." *Id.* at 2557 n. 10 (internal citations omitted). Additionally, the parties have agreed for purposes of settlement only that commonality is satisfied here, where all of the Class Members were **\*442** employed at the same Fresno, California, processing plant, by the same employer, and had similar job responsibilities. (Doc. 62, 18:3–6.) Moreover, the Class Members were subjected to the same employment policies and practices and were subject to the same allegedly improper compensation and break practices. (Doc. 62, 18:6–8.) Finally, the Class Members have the same general type of donning and doffing claims for regular and overtime compensation and they assert the same claims for violations of the California Labor Code provisions regarding meal and rest periods and wages, and other common state law claims. (Doc. 62, 18:8–11.) The commonality factor is sufficiently satisfied.

### c. Typicality

[4] Typicality exists when "the claims or defenses of the representative are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "Typicality ... is said ... to be satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong,* 275 F.3d at 868. Under the Rule's "permissive standards," representative claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Chrysler Corp.,* 150 F.3d at 1020.

[5] Plaintiffs' claims are "co-extensive" with the other Class Members, as Plaintiffs and the absent Class Members were all Defendant's employees, working under the same pay practices and the same company-wide employment policies. Plaintiffs and the Class Members seek relief for unpaid regular and overtime wages for Defendant's alleged failure to pay them for time spent preparing, donning and doffing, cleaning and sanitizing required work gear and equipment, among other things. The Court finds that the typicality requirement is satisfied.

### d. Adequacy of Representation

[6] The final Rule 23(a) prerequisite, adequacy of representation, is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The satisfaction of constitutional due process concerns requires that absent class members be afforded adequate representation prior to an entry of judgment, which binds them. *Chrysler Corp.,* 150 F.3d at 1020. Determining the adequacy of representation requires consideration of two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*

[7] The adequacy-of-representation requirement is met here because Plaintiffs have the same interests as the absent Class Members, *e.g.,* obtaining payment for wages unlawfully withheld. Further, there is no apparent conflict of interest between the named Plaintiffs' claims and those of the other

Class Members'—particularly because the named Plaintiffs have no separate and individual claims apart from the Class.

Moreover, here there are no allocation dilemmas among the Settlement Class similar to those observed as issues in *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). In *Amchem,* the settlement agreement eliminated all present and future claims against asbestos manufacturers, and the class counsel was attempting to represent both groups of plaintiffs, i.e., those who had present claims and those who had future claims. The conflict between the two groups of plaintiffs was that "the present plaintiffs had a clear interest in a settlement that maximized current funds, while future plaintiffs had a strong interest in preserving funds for their future needs and protecting the total fund against inflation." *Chrysler Corp.,* 150 F.3d at 1020–21 (discussing *Amchem,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). Here, the case does not involve sub-classes or classes with diverging interests with respect to allocation of the settlement funds in the same manner as *Amchem.* The Court does not perceive any conflicts of interest between Plaintiffs, Class Counsel, and other Class Members.

In considering the adequacy requirement, the Court also evaluates whether Plaintiffs **\*443** and Class Counsel will pursue the Class' claims with vigor. The Ninth Circuit has held that, "[a]lthough there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." *Chrysler Corp.,* 150 F.3d at 1021. There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent counsel who have litigated numerous class action cases. (Doc. 63–2, Downey Decl., ¶ 3; Doc. 52, Wheeler Decl., Exhibit A.) Further, this is not a case where the Class Members will receive no monetary distribution while the Class Counsel are rewarded amply. *Chrysler Corp.,* 150 F.3d at 1021.

### e. Conclusion

As initially determined in the Court's preliminary approval order (Doc. 53) and as set forth above, the Rule 23(a) requirements for class certification have been satisfied. [2]

---

[2]   Plaintiff submitted a supplemental statement addressing the U.S. Supreme Court's recent decision in *Comcast*

*Corp. v. Behrend,* ——U.S. ——, 133 S.Ct. 1426, 185 L.Ed.2d 515 (Mar. 27, 2013). Plaintiffs assert that *Behrend* is distinguishable from a wage-and-hour class action case such as this, and is not applicable to the certification of the settlement class at issue here. Specifically, Plaintiffs assert that this case is susceptible to awarding damages on a classwide basis and unlike in *Behrend,* there is no damages model that improperly measures a broader pool of damages that conflict with a more narrowly defined class. (Doc. 65, 8–10.) The Court finds that Plaintiffs have adequately distinguished *Behrend,* and its holding does not preclude certification of a settlement class under the circumstances of this case.

### 2. The Rule 23(b)(3) Requirements are Satisfied

In addition to meeting the requirements of Rule 23(a), to be certified, a class must also meet at least one of the requirements of Rule 23(b). The parties contend that, because all Class Members challenge the same alleged practices and seek recovery under the same laws, "an argument reasonably exists that common questions of liability predominate and for purposes of settlement the parties do agree that this standard has been met." (Doc. 62, 20:3–6.) Pursuant to Rule 23(b)(3), a class action may be maintained if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Certification under Rule 23(b)(3) is appropriate whenever the interests of the parties can be served best by settling their differences in a single action. Courts refer to the requirements of Rule 23(b)(3) as its "predominance" and "superiority" requirements. *Amchem,* 521 U.S. at 615, 117 S.Ct. 2231.

### a. Predominance

[8]     As the Rule 23(a)(3) analysis already considers the issue of commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues. *Chrysler Corp.,* 150 F.3d at 1022. In other words, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623, 117 S.Ct. 2231. The "main concern in the predominance inquiry ... [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.,* 571 F.3d 953, 959 (9th Cir.2009). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common remedies will help achieve judicial economy." **\*444** *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1189 (9th Cir.2001) (citation omitted), amended, 273 F.3d 1266 (9th Cir.2001).

[9]     The parties' Settlement Agreement sufficiently demonstrates that "[a] common nucleus of facts and potential legal remedies dominates this litigation." *Chrysler Corp.,* 150 F.3d at 1022. If Class Members were to sue individually, members of the same proposed settlement class would bring essentially the same claims against Defendant. The central issues raised by the complaint concern policies and practices of Defendant which apply broadly to all the employees in the proposed settlement class. Similar to *Wright v. Linkus Enterp., Inc.,* 259 F.R.D. 468 (E.D.Cal.2009), this case derives from policies that allegedly required Class Members to work, for example, without compensation for meal and rest periods. The alleged company-wide and uniform employment policies comprise a common nucleus of facts for employees in the settlement class. *Kamar v. Radio Shack Corp.,* 254 F.R.D. 387, 399 (C.D.Cal.2008) (class certification is usually appropriate where "liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established"); *see also Perez v. Safety–Kleen Sys., Inc.,* 253 F.R.D. 508, 520 (N.D.Cal.2008) (common issues predominate meal break claims and claims for failure to provide itemized wage statements because these were class-wide policies, and litigation of these claims involve class-wide proof rather than individualized inquiry). Moreover, the alleged violations of state law entitle the Class Members to the same legal remedies.

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Chrysler Corp.,* 150 F.3d at 1022 (citations omitted). Thus, despite minor factual differences among Class Members, such as the number of hours or weeks worked, common issues predominate.

### b. Superiority

[10]     [11]     In addition to the predominance requirement, Rule 23(b)(3) provides a non-exhaustive list of matters relevant to the Court's determination that class action treatment is superior to other methods of adjudication. Rule 23(b)(3)(A)-(D). The first factor considers the interest of each member in "individually controlling the prosecution or defense of separate actions." Rule 23(b)(3)(A). This factor weighs against class certification where each class member has suffered sizeable damages or has an emotional stake in the litigation. *See, e.g., In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.,* 693 F.2d 847, 856 (9th Cir.1982), *abrogated on other grounds in Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227 (9th Cir.1996). In this case, where monetary damages that each Class Member suffered individually are relatively modest, certifying a class action is favored. *Id.*

The second factor to consider is "the extent and nature of any litigation concerning the controversy already begun by or against members of the class." Fed.R.Civ.P. 23(b)(3)(B). The Court does not have any information that litigation concerning this controversy is currently being pursued by or against the class members; thus, this factor is neutral. [3]

[3]     Another class action litigation concerning Cargill Meat Solutions Corporation was litigated in this district: *Salcido/Barbosa, et al. v. Cargill, et al.,* Case Nos. 1:07–cv–01347–LJO–GSA and 1:08–cv–00605–LJO–GSA. That class, however, spanned a different time period— September 14, 2004, through January 27, 2009, and has resolved in a settlement.

The third Rule 23(b)(3) factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum" (Fed.R.Civ.P. 23(b)(3)(C)), and the fourth factor is "the likely difficulties in managing a class action" (Fed.R.Civ.P. 23(b)(3)(D)). The fourth factor "encompasses the whole range of practical problems that may render the class format inappropriate for a particular suit." *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 164, 94 S.Ct.

2140, 40 L.Ed.2d 732 (1974). In the context of settlement, however, the third and fourth factors are rendered moot and are irrelevant. *See Amchem,* 521 U.S. at 620, 117 S.Ct. 2231 (where a district court is confronted with a settlement-only class certification, the court **\*445** need not inquire whether the case, if tried, would present manageability problems because the point is that there will be no trial).

"Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be the superior method for managing litigation if no realistic alternative exists." *Valentino,* 97 F.3d at 1234. The potential recovery by any individual plaintiff is relatively small and thus individual members of the class would likely be unwilling or unable to institute separate suits. Further, the filing of individual suits by 1,837 separate plaintiffs would create an unnecessary burden on judicial resources.

In sum, the Rule 23(b)(3) predominance and superiority requirements are satisfied.

### c. Conclusion

For the reasons set forth above, the Settlement Class meets the class-certification requirements of Rules 23(a) and 23(b)(3).

### 3. The Proposed Settlement is Fair, Reasonable, and Adequate

**[12]** **[13]** Settlements are afforded a presumption of fairness if (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. 4 William B. Rubenstein, Alba Conte, & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. West 2013). Here, the parties' settlement was reached through the efforts of experienced counsel following two full-day mediation sessions conducted by a mediator who has experience handling wage and hour class action disputes. Further, there was sufficient discovery conducted by experienced Class Counsel, and there were no objections and only one request for exclusion to the settlement. The settlement is thus entitled to a presumption of fairness.

**[14]** **[15]** **[16]** A settlement may be approved only after a hearing and on finding that it is fair, reasonable, and adequate. Fed.R.Civ.P. 23(e) (1)(c). Such approval is required to ensure

that any settlement reached is consistent with the plaintiff's fiduciary obligations to the class. *See Ficalora v. Lockheed Cal. Co.,* 751 F.2d 995, 996 (9th Cir.1985). The court also serves as guardian for the absent class members who will be bound by the settlement, and therefore must independently determine the fairness of any settlement. *Id.* However, the court's role in intruding upon what is otherwise a private consensual agreement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. *FDIC v. Alshuler (In re Imperial Corp. of Am.),* 92 F.3d 1503, 1506 n. 5 (9th Cir.1996). Therefore, the settlement hearing is not meant to be conducted as a trial or rehearsal for trial on the merits. *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir.1982).

**[17]** In determining whether a proposed settlement is "fair, reasonable, and adequate" pursuant to Rule 23(e), courts may consider factors including (1) the strength of the case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the settlement amount; (5) the extent of discovery completed and the stage of the proceedings; (6) whether the class has been fairly and adequately represented during the settlement negotiations; and (7) the reaction of the class to the proposed settlement. *See Churchill Village, LLC v. Gen. Elec.,* 361 F.3d 566, 575–76 (9th Cir.2004) (citing *Chrysler Corp.,* 150 F.3d at 1026).

### a. The Strength of Plaintiffs' Case

**[18]** The initial fairness factor addresses Plaintiffs' likelihood of success on the merits and the range of possible recovery. *See Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 964–65 (9th Cir.2009). In determining the probability of the plaintiff's success on the merits, there is no "particular formula by which that outcome must be tested." *Id.* at 965. Instead, the court's assessment is based on "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice,* 688 F.2d at 625 (citation and quotation marks omitted). **\*446** The court is not required to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of the outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* Rather, the court may presume

that, through negotiation, the parties, their counsel, and the mediator arrived at a reasonable range of settlement by considering Plaintiffs' likelihood of recovery. *See Rodriguez, 563 F.3d at 965* ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution ...").

The parties acknowledge in their joint motion for approval of the settlement that Defendant presented substantive evidence that its policies and practices during the limitations period applicable to this case complied with state and federal law with regard to payment of wages for all the time worked and that it provided compliant meal and rest periods under California law. (Doc. 62, 12:21–24.) This appears to have been factored into consideration of Plaintiffs' likelihood of recovery when the parties negotiated a settlement. Plaintiffs also considered the costs and risks associated with class certification and trial. The high risk, expense, and nature of a lengthy class action trial supported settlement at this stage of the litigation.

Therefore, although Plaintiffs maintain their strong belief in the underlying merits of the case, Class Counsel have acknowledged the weaknesses in the documentary evidence to support various aspects of Plaintiffs' claims and have considered the uncertainties surrounding proving the claims in a lengthy and complex jury trial in negotiating the settlement amount. As a result, Plaintiffs' likelihood of success appears to have been properly accounted for in the settlement amount. Accordingly, this factor weighs in favor of approval.

### b. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

 [19]   The risk, expense, complexity, and likely duration of further litigation are factors that consider "the probable costs, in both time and money, of continued litigation." *In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 254 (D.Del.2002).* Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D.Cal.2004)* (citation omitted). Moreover, settlement is encouraged in class actions where possible. *See Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 950 (9th Cir.1976)* ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits which are now an

ever increasing burden to so many federal courts and which present serious problems of management and expense.").

In this case, there remained significant procedural hurdles for the putative class to confront, including certification of the class. Avoiding such unnecessary expenditures of resources and time benefit all the parties and the Court. Moreover, there were significant risks in continued litigation and no guarantee of recovery. The settlement, therefore, provides Class Members with another significant benefit that they would not receive if the case proceeded—certain and prompt relief. *See Oppenlander v. Standard Oil Co., 64 F.R.D. 597, 624 (D.Colo.1974)* ("It has been held proper to take the bird in hand instead of a prospective flock in the bush."). This factor weighs in favor of approval.

### c. The Risk of Maintaining Class Action Status Throughout the Trial

Because the Court is not aware of any risks to maintaining class-action status throughout trial, this factor is neutral. *See In re Veritas Software Corp. Sec. Litig., No. 03–0283, 2005 WL 3096079, at *5 (N.D.Cal. Nov. 15, 2005)* (*vacated in part on other grounds, 496 F.3d 962 (9th Cir.2007)*) (favoring neither approval nor disapproval of settlement where the court was "unaware of any risk involved in maintaining class action status"); *Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 489 (E.D.Cal.2010)* (finding that there were no facts that would defeat class treatment, the factor was considered  **\*447** "neutral" for purposes of final approval of class settlement).

### d. The Settlement Amount

"[S]ettlement is about compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Warfarin, 212 F.R.D. at 257–58.* Class Counsel negotiated a Gross Settlement Amount of $1,290,000. The estimated Net Settlement available to the class is $785,347.26, and the 1,053 Class Members with valid claims will be paid a total of $633,814.40. (Doc. 69, Suppl. Dahl Decl., ¶ 6.) The maximum claim payment for Class Members who worked the entire eligibility period is $922.29, and the average claim payment is $601.91. (Doc. 69, Suppl. Dahl Decl., ¶ 6.) There were also 12 Class Members who submitted late claims, which were accepted by the parties, and $5,199.57 will be paid to those Class Members in the aggregate; $433.29 is the

estimated average claim payment for these 12 late claims. (Doc. 69, Suppl. Dahl Decl., ¶ 7.)

Although a larger award was theoretically possible, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir.1998) (internal citations and quotation marks omitted). Moreover, the response of the Class has been positive. No objections have been filed and only one class member opted-out of the settlement. (Doc. 62–1, Dahl Decl., ¶ 12.) In light of the claims at issue in this case and the size of the proposed settlement class, the Settlement Amount appears fair and reasonable and this factor weighs in favor of final approval.

#### e. The Extent of Discovery Completed and the Stage of the Proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV,* 221 F.R.D. at 528. What is required is that "sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently." *Herbert B. Newberg, Newberg on Class Actions* § 11.41 (4th ed. 2013). Here, Plaintiffs' counsel expended significant time investigating the facts of the case, taking detailed in-person interviews of Class Members. (Doc. 63–1, Wheeler Decl., ¶¶ 7–10.) The R. Rex Parris Law Firm propounded written discovery on behalf of Plaintiffs and performed legal research during the time that discovery was open in this matter. Class Counsel analyzed Defendant's meal and rest break records, which included review of 2,143 pages of documents produced by Defendant and other records obtained outside discovery by Class Counsel. (Doc. 63–1, Wheeler Decl., ¶ 7; Doc. 47–5, Downey Decl., ¶ 4.) Class Counsel also took and defended four depositions. (Doc. 63–1, Wheeler Decl., ¶ 2.) Court finds that sufficient discovery has been conducted, and this factor weighs in favor of approval.

#### f. Whether the Class has been Fairly and Adequately Represented During the Settlement Negotiations

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. *See DIRECTV, Inc.,* 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted

with the facts of the underlying litigation") (internal quotation marks and citations omitted). This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir.1995).

Here, the experience and view of Class Counsel weighs in favor of approving the Settlement. Class Counsel understood the complex risks and benefits of any settlement and concluded that the proposed Settlement was a reasonable recovery that confers a substantial benefit on the Class Members. (Doc. 47–5, Downey Decl., ¶ 8.) Moreover, Class Counsel is experienced in this area of law (Doc. 63–2, Downey Decl., ¶ 3; Doc. 67–1, Supplemental Wheeler Decl., ¶¶ 2–6), and the Settlement was reached after two mediation sessions conducted by an experienced wage-and-hour mediator (Doc. 47–5, Downey Decl., ¶ 6). This factor weighs in favor of approval.

#### *448 g. The Reaction of the Class to the Proposed Settlement

[20] Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. *DIRECTV, Inc.,* 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *see also Boyd v. Bechtel Corp.,* 485 F.Supp. 610, 624 (N.D.Cal.1979) (finding that objections from only 16 percent of the class was persuasive that the settlement was adequate).

Here, Class Notices were mailed to 1,837 Class Members and only 1 Class Member has opted out. (Doc. 62–1, Dahl Decl., ¶¶ 12–13.) Further, no objection to the Settlement Agreement was received, and no Class Member appeared at the final approval hearing to state any objection. The response of the class was positive, and this weighs in favor of finding that the settlement is favorable to the Class Members.

#### 4. Conclusion

In sum, as set forth above, the relevant factors weigh in favor of approving the parties' Settlement Agreement. It represents

a substantial recovery that avoids the risks associated with protracted litigation in a document-intensive wage-and-hour case. The parties' Settlement Agreement is found to be fair and reasonable and is hereby APPROVED.

### B. Plaintiffs' Request for Attorneys' Fees is Approved

Class counsel seeks attorneys' fees in the amount of one-third ($430,000) of the Gross Settlement Fund established by the Settlement Agreement ($1,290,000). (Doc. 63.)

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed.R.Civ.P. 23(h). Courts have recognized the "common fund" or "common benefit" doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs to be paid out of the fund. See Chrysler Corp., 150 F.3d at 1029. "[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Staton, 327 F.3d at 972 (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980)). Awarding a percentage of the common fund is particularly appropriate "when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." Id. (quoting Van Gemert, 444 U.S. at 478–79, 100 S.Ct. 745) (internal quotation marks omitted).

[21] Here, the Settlement Agreement applies a formula pursuant to which each Class Member will receive a mathematically ascertainable payment; application of the percentage of the common fund doctrine is appropriate. The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage. Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir.2000). The exact percentage awarded, however, varies depending on the facts of the case, and "in most common fund cases, the award exceeds that benchmark" percentage. Knight v. Red Door Salons, Inc., No. 08–01520 SC, 2009 WL 248367, at *3 (N.D.Cal. Feb. 2, 2009); see also In re Activision Sec. Litig., 723 F.Supp. 1373, 1377 (N.D.Cal.1989) ("nearly all common fund awards range around 30%").

[22] Federal courts utilize the percentage-of-the-fund approach, and use the lodestar as a "cross-check" on reasonableness of the percentage. As such, calculation of the lodestar amount may be used as a cross-check to assess the reasonableness of the percentage award. See Garcia, 2012 WL 5364575, at *8; Bond v. Ferguson Enterprises, Inc., No. 1:09–CV–1662 OWW MJS, No. CV 06–04149 MMM (Shx), 2011 WL 2648879 (E.D.Cal. June 30, 2011); Fernandez v. Victoria *449 Secret Stores, No. CV 06–04149 MMM (Shx), 2008 WL 8150856 (C.D.Cal. July 21, 2008); Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050–51 (9th Cir.2002).

### 1. The Percentage Requested is Fair and Reasonable

[23] In assessing whether the percentage requested is fair and reasonable, courts generally consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases. Vizcaino, 290 F.3d at 1047; Six Mexican Workers v. Az. Citrus Growers, 904 F.2d 1301 (9th Cir.1990).

#### a. The Results Achieved

The individual claims in this case concern Defendant's alleged practice of requiring hourly production and support employees at the Fresno, California, meat-packing facility to work certain amounts of time without compensation and Defendant's alleged failure to provide employees with the meal and rest periods to which they are entitled under California law. These types of claims would not generally produce substantial individual damage awards. As such, the recovery of $1,290,000 is a favorable result. Overall, the Court finds that the results achieved are good, which is highlighted by the fact that there was no objection to the settlement amount or to the attorneys' fees requested. See DIRECTV, 221 F.R.D. at 529.

#### b. The Risks Involved

There were significant risks involved in this litigation. Plaintiffs assert that Defendant vehemently contested liability, and claimed throughout the litigation that it had proper procedures in place to pay workers for the time spent donning and doffing protective clothing and equipment. (Doc. 63, 12:22–24.) As there were no records of off-the-clock work, the case did not lend itself to easy proof of liability or damages. (Doc. 63, 12:24–26.) Also, many Class Members were transient, and most workers spoke Spanish as their sole

language, which required additional time and effort by Class Counsel to communicate with them. (Doc. 63, 12:27–13:1.) Further, the action was taken on a contingency fee basis and, as such, Class Counsel invested time, effort, and money with no guarantee of recovery. Like this case, where recovery is uncertain, an award of one-third of the common fund as attorneys' fees has been found to be appropriate. *See In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 463 (9th Cir.2000); *In re Heritage Bond Litig.,* No. 02–ML–1475 DT, 2005 WL 1594403, at *19, n. 14 (C.D.Cal. June 10, 2005) (discussing Ninth Circuit cases awarded attorney fees of one-third of the total recovery).

### c. Skill Required and Quality of the Work Performed

The case required specialist skills to litigate the legal theories relating to wage and hour law and labor law at issue in the case. Class Counsel are experienced class litigators, including in the area of employment class litigation. Plaintiffs also note that "Defendant was represented by experienced and skilled lawyers from a law firm with a deserved reputation for vigorous advocacy in the defense of complex employment class action cases." (Doc. 63, 14:8–10.) Plaintiffs assert that Class Counsel's ability to obtain the Settlement with such "formidable legal opposition" confirms the quality of Class Counsel's representation of Plaintiffs. (Doc. 63, 14:11–13.) The quality of opposing counsel is important in evaluating the quality of Class Counsel's work. *See, e.g., In re Equity Funding Corp. Sec. Litig.,* 438 F.Supp. 1303, 1337 (C.D.Cal.1977). Moreover, this case was actively litigated and significant time was spent on discovery. See generally *Navarro v. Servisair,* No. C 08–02716 MHP, 2010 WL 1729538, at *3 (N.D.Cal. Apr. 27, 2010) (finding proposed award of 30 percent of settlement fund unjustifiably departed from benchmark due in part to speed with which parties reached a settlement). Overall, the specialized skill of Class Counsel in this area of the law was generally an asset to the Class Members and the quality of work performed was good. This factor cuts in favor of approving the fee request.

### *450 d. The Contingent Nature of the Representation

Class Counsel litigated the case on a contingency fee basis, which necessarily presented considerable risk. *See In re Sumitomo Copper Litig.,* 74 F.Supp.2d 393, 396–98 (S.D.N.Y.1999) ("No one expects a lawyer whose compensation is contingent on the success of his services

to charge, when successful, as little as he would charge a client who in advance of the litigation has agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee dependent solely on the reasonable amount of time expended."). Class Counsel contend that they assumed a very real risk in taking this case on a contingency basis, investing time, effort, and money in the action with no guarantee of recovery. (Doc. 63, 12:2–20.)

In considering both the contingent nature of the work performed by Class Counsel as well as the risk involved in the costs advanced, these factors support the fee award requested. *See Graham v. DaimlerChrysler Corp.,* 34 Cal.4th 553, 580, 21 Cal.Rptr.3d 331, 101 P.3d 140 (2004) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.") (internal citations omitted).

### e. Awards Made in Similar Cases

Finally, the percentage award requested in this case is commensurate with percentage-of-the-benefit awards made in other wage-and-hour actions in this district:

(1) *Garcia v. Gordon Trucking, Inc.,* No. 1:10–CV–0324 AWI SKO, 2012 WL 5364575 (E.D.Cal. Oct. 31, 2012) (court approving attorneys' fees in the amount of 33 percent of the common fund);

(2) *Bond v. Ferguson Enterprises, Inc.,* No. 1:09–cv–01662–OWW–MJS, Docket No. 59, 2011 WL 2648879 (E.D.Cal. June 30, 2011) (court approved attorneys' fees in the amount of 30 percent of the common fund);

(3) *Vasquez v. Coast Valley Roofing,* 266 F.R.D. 482 (E.D.Cal.2010) (wage-and-hour action putative class-action settlement where court approved award of attorneys' fees in the amount of 33.3 percent of the common fund);

(4) *Benitez v. Wilbur,* No. 1:08–cv–01122 LJO GSA, Doc. No. 52 (E.D.Cal., Dec. 15, 2009) (awarding 33.3 percent of the benefit to the class in attorneys' fees);

(5) *Chavez v. Petrissans,* Case No. 1:08–cv–00122 LJO GSA, Doc. No. 89 (E.D.Cal. Dec. 15, 2009) (court

approved awards of attorneys' fees of 33.3 percent of the common fund);

(6) *Romero v. Producers Dairy Foods, Inc.,* No. 1:05–cv–0484–DLB, 2007 WL 3492841, at \*4 (E.D.Cal. Nov. 14, 2007) (class-action settlement where court approved attorneys' fees in the amount of 33 percent of common fund);

(7) *Vasquez v. Jim Aartman, Inc.,* No. 1:02–cv–05624–AWI–LJO, Doc. No. 130 (class-action settlement where court approved attorneys' fees in the amount of 30 percent of the settlement amount);

(8) *Baganha v. Cal. Milk Transport,* No. 1:01–cv–05729–AWI–LJO, Doc. No. 147 (class-action settlement where court approved attorneys' fees in the amount of 31.25 percent of settlement amount); and

(9) *Randall Willis et al. v. Cal. Western Transport and Earl Baron et al. v. Cal Western Transport* (consolidated cases), No. 1:00–cv–05695–AWI–LJO (court approved attorneys' fees in the amount of 33.3 percent of the settlement amount).

The Settlement Agreement's provision of $430,000 in attorneys' fees (33 percent of the total settlement amount), is fair and reasonable in light of the awards of attorneys' fees in similar wage-and-hour cases in this district.

### f. Conclusion

Although Class Counsel's requested fees exceed the 25 percent benchmark under federal law, the Court finds sufficient reasons to **\*451** exceed that marker considering the risk of the litigation, the contingent nature of the work, the favorable reaction of the class, and the fee awards in other wage-and-hour cases. As such, the requested 33 percent of the class recovery represents a reasonable fee award and is approved. *See Ozga v. U.S. Remodelers, Inc.,* No. C 09–05112 JSW, 2010 WL 3186971, at \*3 (N.D.Cal. Aug. 9, 2010) (departure from benchmark warranted due to excellent results, reaction of the class, the risks faced due to the uncertainty of California law in similar wage-and-hour cases).

### 2. Lodestar Cross–Check

Courts frequently cross-check a percentage fee request with the lodestar analysis. *See, e.g., Vizcaino,* 290 F.3d at 1050

(finding that "the lodestar may provide a useful perspective on the reasonableness of a given percentage award"); *Bond,* 2011 WL 2648879, at \*11 (finding that "[c]alculation of the lodestar amount may be used as a cross-check to assess the reasonableness of the percentage award").

**[24]** "In conducting a lodestar cross-check, the court must first determine the dollar value of the proposed percentage-based fee award." *In re Portal Software, Inc. Sec. Litig.* ("*Portal Software*"), No. C–03–5138–VRW, 2007 WL 4171201, at \*14 (N.D.Cal. Nov. 26, 2007). The requested award here is $430,000.00, which represents a requested fee of 33 percent of the $1,290,000 Settlement Amount. The next step is to cross-check the proposed percentage fee against the lodestar. *Id.* "Three figures are salient in a lodestar calculation: (1) counsel's reasonable hours, (2) counsel's reasonable hourly rate and (3) a multiplier thought to compensate for various factors (including unusual skill or experience of counsel, or the ex ante risk of nonrecovery in the litigation)." *In re HPL Tech., Inc. Sec. Litig.,* 366 F.Supp.2d 912, 919 (N.D.Cal.2005). The multiplier is calculated from the ratio of the proposed percentage fee to the computed lodestar fee and is assessed for reasonableness. *Portal Software,* 2007 WL 4171201, at \*14. Where the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours. *See In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 306 (3d Cir.2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting."); *In re Immune Response Sec. Litig.,* 497 F.Supp.2d 1166, 1176 (S.D.Cal.2007) ("Although counsel have not provided a detailed cataloging of hours spent, the Court finds the information provided to be sufficient for purposes of lodestar cross-check.")

### a. Asserted Lodestar

The R. Rex Parris Law Firm attests that it expended 491.5 hours of work by various professionals within the firm, including both attorneys and support staff. (Doc. 63–1, Wheeler Decl., ¶ 14.) The R. Rex Parris Law Firm requests a "blended rate" of $500 per hour, regardless of who within the firm performed the work. (Doc. 63–1, Wheeler Decl., ¶ 14.) The R. Rex Parris Law Firm asserts that its lodestar totals $245,750 (491.5 x $500). The Downey Law Firm, LLC, calculates its lodestar as follows:

| Professional | Hourly Rate | Hours Worked | Total Billed |
| --- | --- | --- | --- |

| | | | |
|---|---|---|---|
| Philip Downey | $550 | 301.6 | $165,880 |
| Dan Hunt | $400 | 38 | $ 15,215 |
| Legal Assistants | $ 50 | 139.60 | $ 7,130 |
| | **Totals:** | **479.2** | **$188,225** |

Together, the asserted lodestar totals $433,975 ($245,750 + $188,225).

### b. Hours Reasonably Expended

The Court finds the 970.7 (479.2 + 491.5) hours expended on the litigation to be reasonable in light of the legal issues and the **\*452** amount of discovery conducted, the number of Defendant's employees included in the Settlement Class, the mediation preparation required, and motion practice with respect to the Settlement Agreement. The total number of hours expended in this action is commensurate with similar wage and hour class actions in this district. *See Garcia,* 2012 WL 5364575, at *8 (approving 3,070.23 hours expended in reaching a settlement for 1,869 class members after "extensive" law and motion work, including dispositive motions); *Bond,* 2011 WL 2648879, at *12–*13 (reducing the number of hours requested from 1,929.94 by a 30 percent "haircut" (to 1,350.96) for a settlement of 553 class members after finding that the initial amount sought was not justified). While the law and motion work in this action was not as extensive as in *Garcia,* the amount of hours billed is significantly less than the amount approved in *Garcia* and instead matches the amount ultimately approved in *Bond,* which included discovery involving significantly fewer class members than in this action. The Court thus finds no reason to reduce the number of hours set forth in counsel's lodestar calculations.

### c. Reasonable Hourly Rates

Class Counsel have submitted documentation of the hourly rates billed in this matter. Attorneys at the Downey Law Firm, LLC, located in Unionville, Pennsylvania, billed at rates ranging from $400 to $550 per hour. The Downey Law Firm, LLC also billed $50 per hour for the work of "office staff." (Doc. 63–2, Downey Decl., ¶ 8.) The R. Rex Parris Law Firm seeks a "blended rate" of $500 per hour for work

performed by all attorneys and staff. (Doc. 67) In support of this "blended rate," a declaration was submitted by Alexander R. Wheeler stating that the billing rates for the attorneys from R. Rex Parris Law Firm who performed work on this case range from $350 to $900 per hour, and the paralegal and litigation assistants bill at a rate of $100 per hour. (Doc. 67–1, Supplemental Wheeler Decl., ¶¶ 2–10.)

As recent cases have indicated, prevailing hourly rates in the Fresno division of the Eastern District of California are in the $400 range, with rates of up to $650 to $675 approved for partners and senior associates with significant years of experience. *See Garcia,* 2012 WL 5364575, at *9, *Bond,* 2011 WL 2648879, at *11–13. In *Bond,* the court noted that "[b]ecause the lodestar is being used here as a cross-check, the court may use a 'rough calculation of the lodestar.' " *Bond,* 2011 WL 2648879, at *12 (citing *Fernandez,* 2008 WL 8150856, at *9). The court in *Bond* determined that it was "appropriate to roughly haircut the lodestar" by 10 percent to bring the requested hourly rates within those prevalent within the Eastern District. Thus, for example, a requested hourly rate of $750 for a partner with more than 20 years of experience was adjusted to $675 per hour. A requested hourly rate of $290 for an associate with two years of experience was adjusted to $261 per hour. Additionally, the court found that the appropriate rate for legal assistants was $100 per hour. Similarly, in *Garcia,* while the court did not reduce the requested hourly rates, the maximum rate approved was $650 per hour, and many of the rates ranged from $125 to $400 per hour. *See Garcia,* 2012 WL 5364575, at *9.

Here, in relation to work performed by individuals at the R. Rex Parris firm, the hourly rate of $500 is a "blended rate." A blended rate, however, does not assist the Court in reaching an accurate lodestar calculation. Rather, the Court relies on the rates attested to by Mr. Wheeler in relation to the particular professional who performed work on the case. The hourly rates set forth in Mr. Wheeler's supplemental declaration are similar to those requested in *Bond* and, as such, are subject to a 20–percent "haircut" to account for the rates in the relevant community. Further, also based upon the rate approved in

Bond, $100 per hour for legal assistants is reasonable. The adjustments are set forth as follows:

| Professional | Years of Experience | Hourly Rate | Hourly Rate Adjustment | Hours Worked | Total Billed |
|---|---|---|---|---|---|
| Rob Parris | 21 | $900 | $720 | 31.5 | $ 22,680 |
| Alexander R. Wheeler | 8 | $700 | $560 | 224.60 | $125,776 |
| Kitty Szeto | 5 | $500 | $400 | 116.20 | $ 46,480 |
| John M. Bickford | 2 | $350 | $280 | 60 | $ 16,800 |
| Legal Assistants | N/A | $100 | $100 | 59.2 | $ 5,920 |
| | | | | Total: | $217,656 |

**\*453** (Doc. 67–1, Supplemental Wheeler Decl.)
The adjusted hourly rates for work of the attorneys range from $280 to $720 per hour and account for the respective attorney's experience and position within the R. Rex Parris Law Firm. This comports generally with the range of rates awarded in Bond and Garcia.

As it pertains to the Downey Law Firm, LLC, the requested hourly rates are commensurate with the rates awarded in Bond and Garcia, and do not warrant a reduction. The adjusted lodestar is $217,656 (R. Rex Parris Law Firm) and $188,225 (Downey Law Firm) for a total of $405,881.[4]

[4]   Former counsel for Plaintiffs submitted declarations in support of the motion for attorneys' fees indicating that Mr. Dennis P. Wilson performed 86.90 hours of work on the case prior to being substituted as counsel by the R. Rex Parris Law Firm. His billing rate is $450 per hour. Mr. Anthony Luti expended 53.40 hours on the case at a rate of $400 per hour. While the declarations offered by counsel have been considered, they were not referenced or discussed in the motion for attorneys' fees. The Court presumes these declarations were submitted as support for Class Counsel's request for a 33 percent-of-the-benefit award; because these declarations were not addressed in the motion for attorneys' fees, they were not expressly factored above as part of the lodestar cross-check. (See Doc. 61.)

### d. Lodestar Multiplier

[25]   The amount of $430,000 requested by Class Counsel is greater than the lodestar of $405,881. However, adjustments to increase or decrease the lodestar amount are sometimes appropriate and justify the use of a "lodestar multiplier." Clark v. City of L.A., 803 F.2d 987, 991 (9th Cir.1986); see also Fischel v. Equitable Life Assur. Society of U.S., 307 F.3d 997, 1008 (9th Cir.2002). "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." Fischel, 307 F.3d at 1008 (citing In re Washington Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1299 (9th Cir.1994)). Generally, a district court has discretion to apply a multiplier to the attorney's fees calculation to compensate for the risk of nonpayment. Fischel, 307 F.3d at 1008; see also In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig. v. Exxon Corp., 109 F.3d 602, 609 (9th Cir.1997); Bond, 2011 WL 2648879, at *13.

[26]   The "lodestar multiplier" is calculated by dividing the percentage fee award by the lodestar calculation. Fischel, 307 F.3d at 1008. Here, a multiplier of 1.06 is calculated by dividing $430,000 by $405,881. To determine whether the lodestar multiplier is reasonable, the following factors may be considered: (1) the amount involved and the results obtained, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and

ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.* at 1007, n. 7 (citing *Kerr* **\*454** *v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975)); *see also Bond,* 2011 WL 2648879, at \*13.

Here, Class Counsel undertook considerable financial risks in this litigation by accepting this case on a contingency basis. There was no guarantee they would recoup their fees or the substantial costs advanced. The contingent nature of the representation has also resulted in Class Counsel litigating this matter for approximately two years without any compensation. Counsel also achieved a good result and generated a significant benefit for the class. Based on the claims rate, 1,053 Class Members will receive a total of $633,814.40 in the aggregate, with an average award of $601.91 each. Twelve Class Members who submitted late claims will be paid a total of $5,199.57, the average payment to each is estimated to be $433.29. (Doc. 69, Dahl Decl., ¶¶ 6–7.) Finally, the percentage award requested in this case is commensurate with the percent-of-the-benefit awards made in other wage and hour actions in this district. *See, e.g., Benitez,* 1:08–cv–1122 LJO GSA (E.D.Cal. Dec. 15, 2009) (33.3%).

Based upon the overall success, the substantial legal risks associated with Plaintiffs' claims and the financial risks borne by Class Counsel, Plaintiff's request for an award of $430,000, necessitating a 1.06 multiplier of the lodestar, is reasonable. *See, e.g., Vizcaino,* 290 F.3d at 1051 (finding no abuse of discretion in awarding a multiplier of 3.65). Based on the absence of opposition from any Class Member, and Class Counsel's well-documented hours worked in this action, the Court approves the attorneys' fees in the total amount of $430,000.

## C. Costs

[27]   The Court also finds that Plaintiffs' request for costs is reasonable. Class Counsel seek a total of $32,722.74 in costs. The declarations of Class Counsel detail the costs incurred, which include travel, mediation fees, photocopying, private investigator to locate missing Class Members, and delivery and mail charges. (Doc 63–2, Downey Decl., ¶ 9.) These types of costs are routinely reimbursed. *See, e.g., Vasquez,* 266 F.R.D. at 493. While the costs are higher than was estimated at the time of settlement ($22,616.30 estimate) (*see* Doc. 47–1, ¶ 7(k)), no opposition to the motion for an award of costs was filed by any Class Member or by Defendant. Moreover,

the Court has reviewed the additional costs and finds they are reasonable.

## D. The Proposed Payment to the Claims Administrator is Reasonable

[28]   The $21,930 that Plaintiffs request be approved as payment to the Claims Administrator appears fair and reasonable. The fee requested here comports with other Claims Administration fees in similar class-action settlements, particularly in light of the number of Notice Packets that the Claims Administrator was required to process. *See, e.g., Garcia v. Gordon Trucking,* No. 1:10–CV–0324–AWI–SKO, 2012 WL 5364575, at \*3 (E.D.Cal. Oct. 31, 2012) (approving $25,000 administrator fee awarded in wage and hour case involving 1,868 potential class members); *Harris v. Vector Marketing Corp.,* No. C–08–5198 EMC, 2012 WL 381202, at \*6 (N.D.Cal. Feb. 6, 2012) (awarding $250,000 in administration costs where claims administrator sent out 68,487 notices); *Vasquez,* 266 F.R.D. at 484 (approving $25,000 administrator fee awarded in wage and hour case involving 177 potential class members). Moreover, the administration fee is less than was estimated at the time of settlement ($25,500 estimate). (*See* Doc. 47–1, ¶ 7(k).) The Court finds the requested Claims Administration fee is reasonable, and it shall be awarded.

## E. Enhancement Award to Class Representatives is Reasonable

[29]   Pursuant to the Settlement Agreement, the Class Representatives seek enhancement awards in the amount of $5,000 each. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Garcia,* 2012 WL 5364575, at \*11 (quoting *Ingram v. The Coca–Cola Co.,* 200 F.R.D. 685, 694 (N.D.Ga.2001)). In *Garcia* the court approved enhancement awards of $15,000 each for the class representatives for **\*455** their work in assisting Class Counsel in investigation of the case, preparation of the complaint, producing evidentiary documents, providing deposition testimony, responding to discovery requests, and assisting with the settlement. *Id.*

Here, the class representatives filed declarations setting forth their efforts in assisting Class Counsel, which included bringing the claim to the attention of class counsel, searching their files and producing documents related to their employment, explained the employment practices of

Defendant, and gave several extensive interviews concerning their experiences. (Doc. 63:21:20–22:7; Doc. 63–4, Barbosa Decl., ¶¶ 4–8; Doc. 63–5, Barrios Decl., ¶¶ 6–11.) The Court finds, therefore, that the incentive awards in the amount of $5,000 requested for each of the two class representatives are reasonable.

## V. CONCLUSION AND ORDER

Based on consideration of the memorandums, declarations, and exhibits filed in support of the present motions, IT IS HEREBY ORDERED that:

1. The Joint Motion for Final Approval of the Class Action Settlement is GRANTED, subject to the following findings and orders:

   a. The Court finds that the Settlement is fair, adequate and reasonable as to all potential Class Members, when balanced against the probable outcome of further litigation. At the time the Settlement was negotiated, counsel for the parties were reasonably able to evaluate their respective positions. This Settlement will avoid substantial additional costs to all parties, as well as the delay and risks that would be presented by further prosecution of the action.

   b. Unless defined herein, all defined terms in this Order shall have the respective meanings as the same terms in the Stipulation of Class Settlement and Release Between Plaintiffs and Defendant ("Settlement Agreement") (Doc. 48);

   c. Pursuant to Federal Rule of Civil Procedure 23, and for settlement purposes only, the Court certifies the proposed Settlement Class, consisting of all current and former hourly production and support employees of Defendant's meat packing facility in Fresno, California, between February 2, 2009, and January 16, 2013, who did not timely opt-out of this Settlement;

   d. For settlement purpose only, Settlement Class Counsel are:

      i. Alexander R. Wheeler, Esq. and Kitty Szeto, Esq. of the R. Rex Parris Law Firm, 43364 10th Street West, Lancaster, California 93534; and

      ii. Philip A. Downey, Esq., The Downey Law Firm, LLC, P.O. Box 1021, Unionville, Pennsylvania, 19375.

   e. Dahl Administration, LLC is APPROVED as the Settlement Claims Administrator;

   f. The Court APPROVES Plaintiffs' Motion for Final Approval of Attorneys' Fees, Costs, and Enhancement Award and finds that the amounts requested by Plaintiffs' Counsel are fair and reasonable. Settlement Class Counsel as identified above shall receive as their fee $430,000 and shall receive reimbursement of $32,722.74 in expenses in prosecuting this litigation. These amounts shall be paid to Settlement Class Counsel in accordance with the Settlement Agreement;

   g. The remainder of the Gross Settlement Amount that Defendant deposited with the Claims Administrator shall be distributed in accordance with the provisions set forth in the parties' Settlement Agreement;

   h. The Court APPROVES the service awards of $5,000 to Christina Barbosa and $5,000 to Patricia Aguilera Barrios. The Court finds that this amount is fair and reasonable in light of Plaintiffs' contribution to the litigation, for the notoriety and risk of serving as representatives for the class, and for providing Defendant a general release of claims;

   i. The Court APPROVES payment of $21,930 to Dahl Administration, LLC, **\*456** the appointed Settlement Claims Administrator;

   j. In approving this Settlement and the Plaintiffs' fee and cost application, the Court notes there is no reversion to Defendant of any part of the Gross Settlement Fund. The Court APPROVES the selection of The United Way of Fresno County as the *cy pres* beneficiary. The Claims Administrator shall donate to this beneficiary according to the conditions set out in the Settlement Agreement. Any portions of the Net Settlement Amount that is not claimed by Class Members shall be paid to *cy pres* recipient, The United Way of Fresno County;

   k. On January 16, 2013, in accordance with the Court's order granting preliminary approval of the Settlement, the Court-approved Class Notice, in both

the English and Spanish language, was provided via U.S. First-class mail to 1,837 Class Members. Class Notices returned as undeliverable with forwarding addresses were re-mailed to Class Members, while Class Notices that were returned as undeliverable without a forwarding address were further researched and address traces were performed. For updated addresses obtained by way of the address traces, Class Notices were promptly mailed to the new addresses. Consistent with the Settlement Agreement, no further processing was performed for those Class Notices that were returned as undeliverable. The Court finds that the plan for giving notice, in form, method, and content, as well as the execution of giving such notice by the Parties and Settlement Administrator, has fully complied with the requirements of Rule 23, due process, and this Court's Order granting preliminary approval. In response to the Class Notice, only one Class Member excluded herself from the Settlement, no Class Members objected to the Settlement terms, and no Class Members disputed the number of weeks worked or the approximate Settlement Award noted in the Class Notice;

*l.* As provided in the "RELEASED CLAIMS" Section of the Settlement Agreement, each member of the Settlement Class, except for the one individual who opted out of the Settlement, fully releases and discharges Defendant as set forth in the Settlement

Agreement (Doc. 48). Each such Settlement Class member shall not be entitled to pursue, accept, or recover damages for any Released Claims against the Released Parties arising between February 1, 2009, and January 16, 2013, other than what is provided for in the Settlement Agreement. Notwithstanding this Release of Claims, waivers of claims expressly under the FLSA shall only be binding on the Settlement Class members who opted-in;

2.  The Court retains jurisdiction over the parties to enforce the terms of the Order and Judgment, and shall have continuing jurisdiction over the construction, interpretation, implementation, and enforcement of the Settlement Agreement, the Preliminary Approval Order, this Order, and the distribution of all settlement payments;

3.  **Within 120 days from the date of this order,** Class Counsel shall file proof of payments made by the Settlement Administrator and a list of all persons who have cashed a Settlement Award Check; and

4.  After proof of payments has been filed, **and within 180 days from the date of this Order,** the parties shall file a proposed Final Judgment and Dismissal with Prejudice for entry by the Court.

IT IS SO ORDERED.

---

**End of Document**                                      © 2014 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT "4"

# R. REX PARRIS LAW FIRM – SELECTED CLASS ACTION EXPERIENCE

- ➢ ***Gutierrez vs. State Farm***, Los Angeles Superior Court Case No. BC 236552
  - Plaintiffs' counsel in class action seeking overtime compensation for insurance claims adjusters employed by defendant in the State of California.   Certification granted, and then summary adjudication as to liability granted in favor of the class.  Case settled in 2004 for **$135,000,000.00**, with Final Approval granted in Department 309 and no objections filed.

- ➢ ***Sekly vs. Allstate Insurance Company***, Los Angeles Superior Court Case No. BC240813
  - Plaintiffs' counsel in class action seeking overtime compensation for insurance claims adjusters employed by defendant in the State of California.   Certification granted, and then summary adjudication as to liability granted in favor of the class.  Case settled in 2005 for **$120,000,000.00**, with Final Approval granted in Department 309 and no objections filed.

- ➢ ***CNA Class Action Litigation***, Los Angeles Superior Court Case No. BC242487, Orange County Superior Court Case No. 01CC08868
  - Plaintiffs' counsel in class action misclassification case seeking overtime compensation for insurance claims adjusters employed by defendant in the State of California.   Case settled in 2005 for **$33,000,000.00**, with Final Approval granted and no objections filed.

- ➢ ***Parris v. Lowe's Home Improvement***, Los Angeles Superior Court Case No. BC260702
  - Plaintiffs' counsel in class action seeking payment of "off the clock" hours worked by all hourly employees of Lowe's in the State of California.  Class certification ordered by the Court of Appeal.  Case settled in 2009 for **$29,500,000.00**, with Final Approval granted and no objections filed.

- ➢ ***Chavoya v. Southern California Edison Company***, Los Angeles County Superior Court Case No. BC366032 and BC425358
  - Plaintiffs' counsel in class action seeking overtime compensation for employees that were reclassified in February 2006 that were not employed at Edison's San Onofre Nuclear Generator facility.  Class certification granted, in part, by the trial court.  Class was provisionally certified for settlement purposes.  Case settled in 2010 for **$29,000,000.00**, with Final Approval granted and no objections filed.

- ➢ ***Roberts vs. Coast National Insurance***, Orange County Superior Court Case No 01CC08478
  - Plaintiffs' counsel in class action seeking overtime compensation for insurance claims adjusters employed by defendant in the State of California.  Certification granted, and then the matter was tried in biding arbitration.  Case settled for in excess of **$18,000,000.00** during arbitration.

- ➢ ***Dotson vs. Royal Sun Alliance***, Orange County Superior Court Case No. 02CC01787
  - Plaintiffs' counsel in class action seeking overtime compensation for insurance claims adjusters employed by defendant in the State of California.  Case settled in 2005 for **$12,300,000.00** with Final Approval granted and no objections filed.

- ➢ ***Ingalls v. Hallmark***, Central District of California Case Nos. CV08-04342-VBF (Ex) C/W; CV08-05330-VBF (FFMx)
  - Plaintiffs' counsel in class action seeking payment of "off the clock" hours worked by all hourly employees of Hallmark in the State of California.  Class was provisionally certified.  Case settled in 2009 for **$5,625,000.00**, with Final Approval granted and no objections filed.

➢ ***Rodriguez v. Pacific Bell Telephone Company***, Los Angeles County Superior Court Case No. BC415309

- Plaintiffs' counsel in class action seeking overtime compensation for employees employed by defendant in the State of California that were reclassified in May 2009.  Class was provisionally certified.  Case settled in 2010 for **$5,500,000.00**, with Final Approval granted and no objections filed.

➢ ***Kim v. Jamison***, Los Angeles County Superior Court Case No. BC400414

- Plaintiffs' counsel in misclassification class action seeking overtime compensation for all salaried exempt employees (except for high-level management and Receptionists) employed by defendant in the State of California.  Class was provisionally certified.  Case settled in 2009 for **$2,797,861.24**, with Final Approval granted and no objections filed.

➢ Additionally, the R. Rex Parris Law Firm is presently lead plaintiff's counsel in numerous pending consumer and employment class action cases in California, Texas and the District of Columbia.  The R. Rex Parris Law Firm recently obtained a $370 million defamation verdict, Top Verdict in 2009, in *Marciano v. Fahs, et al.*, in the Los Angeles Superior Court Case No. BC375824.

EXHIBIT "5"

3:16 PM

05/13/16

Accrual Basis

**Client Cost Account**

# Class QuickReport

**All Transactions**

| Type | Date | Num | Name | Memo | Amount |
|------|------|-----|------|------|--------|
| **CLASS Clemens v. Hair 156576** | | | | | |
| Check | 04/13/2015 | 19676 | Team Legal, Inc. | KKS/ 133204-1 - Clemes | -91.25 |
| Check | 04/22/2015 | 19752 | Federal Express | KKS/ Clemens | -15.43 |
| Check | 04/22/2015 | 19752 | Federal Express | KKS/ Clemens | -16.69 |
| Check | 04/27/2015 | 19825 | 915323133 | KKS -JB/ US District - Clemens | -400.00 |
| Check | 07/23/2015 | 20485 | Federal Express | KKS/ Clemens | -16.78 |
| Check | 07/28/2015 | 20513 | Kitty Szeto | KKS/ Mileage - Clemens | -63.28 |
| Check | 08/18/2015 | 20689 | Thomson West | Clemens | -19.65 |
| Check | 08/28/2015 | 20751 | 915323133 | Pacer - Clemens | -0.60 |
| Check | 09/02/2015 | 20836 | 915323133 | KKS Parking - Clemens | -23.00 |
| Check | 09/02/2015 | 20836 | 915323133 | KKS Meal - Clemens | -17.45 |
| Check | 09/02/2015 | 20836 | 915323133 | KKS Transportation - Clemens | -200.00 |
| Check | 09/02/2015 | 20836 | 915323133 | KKS Flight - Clemens | -472.00 |
| Check | 10/07/2015 | 21048 | U.S. Legal Support, Inc. | 515696 - Clemens | -1,467.89 |
| Check | 10/07/2015 | 21048 | U.S. Legal Support, Inc. | 516360 - Clemens | -737.50 |
| Check | 10/08/2015 | 21074 | U.S. Legal Support, Inc. | 516993 - Clemens | -1,576.50 |
| Check | 10/14/2015 | 21142 | 915323133 | JB - Taxi - Clemens | -56.06 |
| Check | 10/26/2015 | 21181 | U.S. Legal Support, Inc. | 518784 - Clemens | -1,673.70 |
| Check | 11/04/2015 | 21446 | 915323133 | JB - Taxi - Clemens | -42.03 |
| Check | 11/04/2015 | 21446 | 915323133 | JB - Hotel - Clemens | -2,346.74 |
| Check | 11/04/2015 | 21446 | 915323133 | JB - Meal - Clemens | -37.95 |
| Check | 11/04/2015 | 21446 | 915323133 | JB - Meal - Clemens | -11.06 |
| Check | 11/04/2015 | 21446 | 915323133 | JB - Taxi Clemens | -12.05 |
| Check | 11/04/2015 | 21446 | 915323133 | JB - Taxi - Clemens | -18.54 |
| Check | 11/04/2015 | 21446 | 915323133 | JB - Meal - Clemens | -25.66 |
| Check | 11/04/2015 | 21446 | 915323133 | JB - Taxi - Clemens | -21.33 |
| Check | 11/04/2015 | 21446 | 915323133 | JB - Travel - Clemens | -14.00 |
| Check | 11/04/2015 | 21446 | 915323133 | JB - Meal - Clemens | -28.94 |
| Check | 11/04/2015 | 21446 | 915323133 | JB - Taxi - Clemens | -14.51 |
| Check | 11/20/2015 | 21420 | Thomson West | Clemens | -503.31 |
| Check | 12/04/2015 | 21654 | 915323133 | KKS Fuel - Clemens | -19.44 |
| Check | 12/04/2015 | 21654 | 915323133 | KKS Hotel - Clemens | -405.39 |
| Check | 12/04/2015 | 21654 | 915323133 | KKS Flight - Clemens | 0.03 |
| Check | 12/04/2015 | 21654 | 915323133 | KKS Meal - Clemens | -18.00 |
| Check | 12/04/2015 | 21654 | 915323133 | KKS Meal - Clemens | -3.25 |
| Check | 12/04/2015 | 21654 | 915323133 | KKS Taxi - Clemens | -30.37 |
| Check | 12/04/2015 | 21654 | 915323133 | KKS Meal - Clemens | -2.75 |
| Check | 12/04/2015 | 21654 | 915323133 | KKS Meal - Clemens | -3.25 |
| Check | 12/04/2015 | 21654 | 915323133 | KKS Pacer - Clemens | -6.20 |
| Check | 12/04/2015 | 21654 | 915323133 | KKS Meal - Clemens | -5.05 |
| Check | 12/04/2015 | 21654 | 915323133 | KKS Meal - Clemens | -2.75 |
| Check | 12/04/2015 | 21654 | 915323133 | KKS Flight - Clemens | 0.01 |
| Check | 12/04/2015 | 21654 | 915323133 | KKS Meal - Clemens | -6.97 |
| Check | 12/04/2015 | 21654 | 915323133 | KKS Taxi - Clemens | -60.00 |
| Check | 12/04/2015 | 21654 | 915323133 | KKS Auto Rental - Clemens | -49.01 |
| Check | 12/04/2015 | 21654 | 915323133 | KKS Southwest - Clemens | -452.00 |
| Check | 12/18/2015 | 21646 | ILYM Group, Inc. | 198 - Clemens | -538.24 |
| Check | 12/23/2015 | 21708 | Thomson West | Clemens | -4.14 |
| Check | 01/11/2016 | 21868 | 915323133 | KKS/ Combs Reporting | -1,912.50 |
| Check | 01/11/2016 | 21868 | 915323133 | KKS/ Combs Reporting - Clemens | -2,806.70 |
| Check | 01/20/2016 | 21865 | Federal Express | Clemens | -20.34 |
| Check | 01/29/2016 | 21945 | Golden State Overnight | Clemens | -19.68 |
| Check | 01/29/2016 | 21945 | Golden State Overnight | Clemens | -13.82 |
| Check | 01/29/2016 | 21945 | Golden State Overnight | Clemens | -14.35 |
| Check | 01/29/2016 | 21945 | Golden State Overnight | Clemens | -13.82 |
| Check | 01/29/2016 | 21945 | Golden State Overnight | Clemens | -13.82 |
| Check | 01/29/2016 | 21945 | Golden State Overnight | Clemens | -14.09 |
| Check | 01/29/2016 | 21945 | Golden State Overnight | Clemens | -13.82 |
| Check | 01/29/2016 | 21945 | Golden State Overnight | Clemens | -13.82 |
| Check | 01/29/2016 | 21945 | Golden State Overnight | Clemens | -14.35 |
| Check | 01/29/2016 | 21945 | Golden State Overnight | Clemens | -13.82 |
| Check | 01/29/2016 | 21945 | Golden State Overnight | Clemens | -13.82 |
| Check | 01/29/2016 | 21945 | Golden State Overnight | Clemens | -14.35 |
| Check | 01/29/2016 | 21945 | Golden State Overnight | Clemens | -13.82 |
| Check | 01/29/2016 | 21945 | Golden State Overnight | Clemens | -13.82 |
| Check | 01/29/2016 | 21945 | Golden State Overnight | Clemens | -14.09 |

3:16 PM
05/13/16
Accrual Basis

# Client Cost Account
## Class QuickReport
### All Transactions

| Type | Date | Num | Name | Memo | Amount |
|------|------|-----|------|------|--------|
| Check | 01/29/2016 | 21945 | Golden State Overnight | Clemens | -14.09 |
| Check | 01/29/2016 | 21945 | Golden State Overnight | Clemens | -14.09 |
| Check | 01/29/2016 | 21945 | Golden State Overnight | Clemens | -13.82 |
| Check | 02/01/2016 | 22097 | 915323133 | CP/ USPS - Clemens | -18.11 |
| Check | 02/01/2016 | 22097 | 915323133 | CP/ USPS - Clemens | -18.11 |
| Check | 02/12/2016 | 22080 | Golden State Overnight | Clemens | -20.36 |
| Check | 02/12/2016 | 22080 | Golden State Overnight | Clemens | -13.82 |
| Check | 02/12/2016 | 22080 | Golden State Overnight | Clemens | -14.09 |
| Check | 02/12/2016 | 22080 | Golden State Overnight | Clemens | -8.00 |
| Check | 02/23/2016 | 22148 | Tina Cates | Parking - Clemens | -18.00 |
| Check | 02/24/2016 | 22156 | Legal Support Network, LLC | Clemens | -95.00 |
| Check | 02/24/2016 | 22156 | Legal Support Network, LLC | Clemens | -75.00 |
| Check | 02/29/2016 | 22208 | Federal Express | Clemens | -17.11 |
| Check | 03/01/2016 | 22217 | Robert Yapp | Mileage - Clemens | -140.40 |
| Check | 03/07/2016 | 22248 | Atkinson-Baker, Inc. | AA0199B - Clemens | -289.25 |
| Check | 03/07/2016 | 22266 | Kitty Szeto | Mileage - Clemens | -66.53 |
| Check | 03/08/2016 | 22295 | 915323133 | Meal - Clemens | -10.88 |
| Check | 03/09/2016 | 22287 | Sonya Ekblad | Depo Witness & Mileage - Clemens | -87.46 |
| Check | 03/09/2016 | 22312 | Deborah Cole | Witness/Mileage - Clemens | -51.30 |
| Check | 03/09/2016 | 22313 | Christie Fleisher | Witness/Mileage - Clemens | -141.70 |
| Check | 03/09/2016 | 22314 | Marjorie Manuel | Witness/Mileage - Clemens | -58.08 |
| Check | 03/09/2016 | 22315 | Suzi Brown | Witness/Mileage - Clemens | -140.57 |
| Check | 03/09/2016 | 22316 | The Claro Group, LLC | Andrew Cook MD Witness/Mileage - ... | -1,187.50 |
| Check | 03/09/2016 | 22317 | Maria Garcia | Witness/Mileage - Clemens | -136.05 |
| Check | 03/09/2016 | 22318 | Alexandrea Johnson | Witness/Mileage - Clemens | -132.66 |
| Check | 03/09/2016 | 22319 | Debbie Nicholson | Witness/Mileage - Clemens | -58.08 |
| Check | 03/09/2016 | 22320 | Ngoc Trinh | Witness/Mileage - Clemens | 0.00 |
| Check | 03/09/2016 | 22321 | Monica Martinez | Witness/Mileage - Clemens | -127.01 |
| Check | 03/09/2016 | 22322 | Alexandra Montiel | Witness/Mileage - Clemens | 0.00 |
| Check | 03/09/2016 | 22323 | LeeAnne Petricks | Witness/Mileage - Clemens | -47.91 |
| Check | 03/09/2016 | 22324 | Cynthia Thomas | Witness/Mileage - Clemens | -41.30 |
| Check | 03/09/2016 | 22325 | Brittany Drake | Witness/Mileage - Clemens | -51.30 |
| Check | 03/09/2016 | 22326 | Maria Fuentes | Witness/Mileage - Clemens | -53.56 |
| Check | 03/09/2016 | 22327 | Theresa Lancaster | Witness/Mileage - Clemens | -41.30 |
| Check | 03/09/2016 | 22328 | Rocio Bernal-Yates | Witness/Mileage - Clemens | -49.04 |
| Check | 03/09/2016 | 22329 | Kathleen Zabalza | Witness/Mileage - Clemens | -49.04 |
| Check | 03/09/2016 | 22330 | Alicia Moser | Witness/Mileage - Clemens | -53.65 |
| Check | 03/09/2016 | 22331 | Elizabeth Boles | Witness/Mileage - Clemens | -53.56 |
| Check | 03/10/2016 | 22340 | 915323133 | KKS/ Auto Rental - Clemens | -265.01 |
| Check | 03/10/2016 | 22340 | 915323133 | KKS/ Meal - Clemens | -6.20 |
| Check | 03/10/2016 | 22340 | 915323133 | KKS/ Air - Clemens | -112.98 |
| Check | 03/10/2016 | 22340 | 915323133 | KKS/ Air Clemens | -180.10 |
| Check | 03/10/2016 | 22340 | 915323133 | KKS/ Air Clemens | -253.98 |
| Check | 03/10/2016 | 22340 | 915323133 | KKS/ Pacer - Clemens | -0.40 |
| Check | 03/10/2016 | 22340 | 915323133 | JB/ Air - Clemens | -672.20 |
| Check | 03/11/2016 | 22346 | Atkinson-Baker, Inc. | AA01927 AB - Clemens | -783.90 |
| Check | 03/11/2016 | 22346 | Atkinson-Baker, Inc. | AA01928 AB - Clemens | -399.10 |
| Check | 03/11/2016 | 22346 | Atkinson-Baker, Inc. | AA0192B AB - Clemens | -312.85 |
| Check | 03/11/2016 | 22348 | TransPerfect Legal Solutions, Inc. | 091105A - Clemens | -2,625.00 |
| Check | 03/11/2016 | 22350 | John Bickford | Mileage - Clemens | -96.44 |
| Check | 03/11/2016 | 22350 | John Bickford | Mileage - Clemens | -78.84 |
| Check | 03/11/2016 | 22350 | John Bickford | Mileage - Clemens | -70.96 |
| Check | 03/17/2016 | 22422 | Eric Wilson | Transportation - Clemens | -26.11 |
| Check | 03/17/2016 | 22422 | Eric Wilson | Hotel - Clemens | -170.77 |
| Check | 03/17/2016 | 22422 | Eric Wilson | Clemens | -9.55 |
| Check | 03/17/2016 | 22422 | Eric Wilson | Transportation - Clemens | -22.12 |
| Check | 03/17/2016 | 22426 | Atkinson-Baker, Inc. | AA01929 AB - Clemens | -630.30 |
| Check | 03/17/2016 | 22426 | Atkinson-Baker, Inc. | AA01926 AB - Clemens | -431.35 |
| Check | 03/17/2016 | 22426 | Atkinson-Baker, Inc. | AA0192A AB - Clemens | -935.45 |
| Check | 03/23/2016 | 22459 | Eric Wilson | Parking - Clemens | -40.00 |
| Check | 03/23/2016 | 22469 | Magdalene Sophia Puente | 16027 - Clemens | -1,526.70 |
| Check | 03/23/2016 | 22469 | Magdalene Sophia Puente | 16028 - Clemens | -1,129.59 |
| Check | 03/23/2016 | 22469 | Magdalene Sophia Puente | 16024 - Clemens | -1,731.00 |
| Check | 03/23/2016 | 22469 | Magdalene Sophia Puente | 16025 - Clemens | -1,531.50 |
| Check | 03/23/2016 | 22470 | Executive Limousine Services | 1129 - Clemens | -370.00 |
| Check | 03/24/2016 | 22488 | Golden State Overnight | Clemens | -14.11 |
| Check | 03/24/2016 | 22488 | Golden State Overnight | Clemens | -14.11 |
| Check | 03/24/2016 | 22488 | Golden State Overnight | Clemens | -14.11 |

3:16 PM

**Client Cost Account**

05/13/16

**Class QuickReport**

Accrual Basis

**All Transactions**

| Type | Date | Num | Name | Memo | Amount |
|------|------|-----|------|------|--------|
| Check | 03/24/2016 | 22488 | Golden State Overnight | Clemens | -14.11 |
| Check | 03/24/2016 | 22488 | Golden State Overnight | Clemens | -14.11 |
| Check | 03/24/2016 | 22488 | Golden State Overnight | Clemens | -14.11 |
| Check | 03/24/2016 | 22488 | Golden State Overnight | Clemens | -14.11 |
| Check | 03/24/2016 | 22489 | Magdalene Sophia Puente | 16034 - Clemens | -1,295.20 |
| Check | 03/24/2016 | 22493 | Esquire Deposition Solutions, LLC | INV718328 - Clemens | -1,333.34 |
| Check | 03/24/2016 | 22493 | Esquire Deposition Solutions, LLC | INV718335 - Clemens | -414.63 |
| Check | 03/28/2016 | 22499 | Magdalene Sophia Puente | 16030 - Clemens | -1,774.67 |
| Check | 03/28/2016 | 22499 | Magdalene Sophia Puente | 16033 - Clemens | -1,570.20 |
| Check | 03/28/2016 | 22497 | Ronin Media House, Inc. | RMH16-044 - Clemens | -2,550.00 |
| Check | 03/29/2016 | 22523 | Kitty Szeto | Mileage - Clemens | -79.92 |
| Check | 03/29/2016 | 22523 | Kitty Szeto | Mileage - Clemens | -79.92 |
| Check | 03/29/2016 | 22530 | Naomi Pontious | Mileage - Clemens | -60.80 |
| Check | 03/29/2016 | 22530 | Naomi Pontious | Parking - Clemens | -23.00 |
| Check | 03/30/2016 | 22545 | Esquire Deposition Solutions, LLC | INV0720361 - Clemens | -1,186.65 |
| Check | 03/30/2016 | 22545 | Esquire Deposition Solutions, LLC | INV0720303 - Clemens | -1,289.68 |
| Check | 03/30/2016 | 22545 | Esquire Deposition Solutions, LLC | INV0720675 - Clemens | -487.50 |
| Check | 03/30/2016 | 22545 | Esquire Deposition Solutions, LLC | INV0720630 - Clemens | -1,183.20 |
| Check | 03/30/2016 | 22545 | Esquire Deposition Solutions, LLC | INV0721145 - Clemens | -464.20 |
| Check | 03/30/2016 | 22545 | Esquire Deposition Solutions, LLC | INV0722595 - Clemens | -1,275.45 |
| Check | 03/30/2016 | 22545 | Esquire Deposition Solutions, LLC | INV0722093 - Clemens | -2,833.00 |
| Check | 03/30/2016 | 22545 | Esquire Deposition Solutions, LLC | INV0722566 - Clemens | -1,438.25 |
| Check | 04/04/2016 | 22567 | Esquire Deposition Solutions, LLC | INV0724068 - Clemens | -2,828.95 |
| Check | 04/04/2016 | 22567 | Esquire Deposition Solutions, LLC | INV0724311 - Clemens | -627.95 |
| Check | 04/04/2016 | 22568 | Hahn & Bowersock, Inc. | 492156 - Clemens | -1,769.77 |
| Check | 04/04/2016 | 22568 | Hahn & Bowersock, Inc. | 492224 - Clemens | -2,477.27 |
| Check | 04/04/2016 | 22568 | Hahn & Bowersock, Inc. | 492120 - Clemens | -1,846.95 |
| Check | 04/04/2016 | 22568 | Hahn & Bowersock, Inc. | 492279 - Clemens | -2,397.98 |
| Check | 04/05/2016 | 22597 | Esquire Deposition Solutions, LLC | INV0722526 - Clemens | -580.00 |
| Check | 04/07/2016 | 22636 | TransUnion Risk and Alternative Data | Clemens | -22.00 |
| Check | 04/07/2016 | 22638 | 915323133 | KKSParking - Clemens | -36.00 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Parking - Clemens | -36.00 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Parking - Clemens | -3.00 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Parking - Clemens | -36.00 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Parking - Clemens | -8.00 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Meal - Clemens | -3.45 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Meal - Clemens | -20.00 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Taxi - Clemens | -4.75 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Taxi - Clemens | -13.80 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Meal - Clemens | -8.00 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Hotel - Clemens | -143.75 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Travel - Clemens | -112.76 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Hotel - clemens | -560.94 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Taxi - Clemens | -39.60 |
| Check | 04/07/2016 | 22638 | 915323133 | KKSTaxi - Clemens | -31.63 |
| Check | 04/07/2016 | 22638 | 915323133 | KKSTaxi - Clemens | -4.75 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Meal - Clemens | -2.17 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Meal - Clemens | -16.62 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Transportation - Clemens | -33.00 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Meal - Clemens | -5.59 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Meal - Clemens | -42.85 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Taxi - Clemens | -4.75 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Meal - Clemens | -6.05 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Meal - Clemens | -13.00 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Hotel - Clemens | -146.24 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Taxi - Clemens | -9.01 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Hotel - Clemens | -181.48 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Taxi - Clemens | -82.80 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Taxi - Clemens | -4.75 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Meal - Clemens | -2.69 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Meal - Clemens | -5.05 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Parking - Clemens | -12.00 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Parking - Clemens | -12.00 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Fuel for Rental - Clemens | -33.11 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Rental car refund - Clemens | 150.00 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS - Taxi - Clemens | -24.61 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Taxi - Clemens | -4.75 |
| Check | 04/07/2016 | 22638 | 915323133 | KKS Meal - Clemens | -28.00 |

3:16 PM

05/13/16

Accrual Basis

# Client Cost Account
## Class QuickReport
### All Transactions

| Type | Date | Num | Name | Memo | Amount |
|------|------|-----|------|------|--------|
| Check | 04/07/2016 | 22638 | 915323133 | JB - Parking - Clemens | -36.00 |
| Check | 04/07/2016 | 22638 | 915323133 | JB - Meal - Clemens | -44.93 |
| Check | 04/07/2016 | 22638 | 915323133 | JB - Parking - Clemens | -60.00 |
| Check | 04/07/2016 | 22638 | 915323133 | JB - Meal - Clemens | -30.41 |
| Check | 04/07/2016 | 22638 | 915323133 | JB - Hotel - Clemens | -137.47 |
| Check | 04/07/2016 | 22638 | 915323133 | JB - Taxi - Clemens | -80.00 |
| Check | 04/07/2016 | 22638 | 915323133 | JB - Meal - Clemens | -8.66 |
| Check | 04/07/2016 | 22638 | 915323133 | JB - Meal - Clemens | -13.15 |
| Check | 04/07/2016 | 22638 | 915323133 | JB - Transportation - Clemens | -78.00 |
| Check | 04/07/2016 | 22638 | 915323133 | ARW Meal - Clemens | -16.90 |
| Check | 04/08/2016 | 22646 | Golden State Overnight | Clemens | -14.11 |
| Check | 04/08/2016 | 22646 | Golden State Overnight | Clemens | -14.11 |
| Check | 04/11/2016 | 22659 | Atkinson-Baker, Inc. | AA01CF8 AB - Clemens | -453.25 |
| Check | 04/11/2016 | 22659 | Atkinson-Baker, Inc. | AA01926 AB - Clemens | -20.00 |
| Check | 04/15/2016 | 22718 | Jo Ann Bryce | Clemens | -160.05 |
| Check | 04/22/2016 | 22794 | Thomson West | Clemens | -12.07 |
| Deposit | 04/26/2016 | 10296 | william Bryce | Clemens | 4.85 |
| Check | 04/28/2016 | 22813 | Express Network | 82631 - Clemens | -55.00 |
| Check | 04/28/2016 | 22813 | Express Network | 84017 - Clemens | -385.00 |
| Check | 04/28/2016 | 22813 | Express Network | 80322 - Clemens | -232.36 |
| Check | 04/28/2016 | 22813 | Express Network | 80435 - Clemens | -229.00 |
| Check | 04/28/2016 | 22813 | Express Network | 84808 - Clemens | -55.00 |
| Check | 04/28/2016 | 22824 | Hahn & Bowersock, Inc. | 493669 - Clemens | -1,175.00 |
| Check | 05/05/2016 | 5 | 915323133 | KKS - Travel - Clemens | -32.00 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Flight Clemens | -407.96 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Hotel - Clemens | -172.59 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Taxi - Clemens | -6.85 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Taxi - Clemens | -6.48 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Meal - Clemens | -9.29 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Fuel - Clemens | -10.36 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Car Rental - Clemens | -82.72 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Hotel - Clemens | -109.21 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Taxi - Clemens | -6.21 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Taxi - Clemens | -5.95 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Payless - Clemens | -0.74 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Meal - Clemens | -29.00 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Fuel for rental - Clemens | -12.42 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Hotel - Clemens | -7.65 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Hotel - Clemens | -145.40 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Taxi - Clemens | -10.00 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Rental - Clemens | -119.46 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Meal - Clemens | -10.78 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Meal - Clemens | -4.25 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Taxi - Clemens | -45.00 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Taxi - Clemens | -22.44 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Taxi - Clemens | -8.43 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Taxi - Clemens | -37.98 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Meal - Clemens | -4.24 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Taxi - Clemens | -16.02 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Hotel - Clemens | -102.67 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Taxi - Clemens | -8.65 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Taxi - Clemens | -6.85 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Hotel - Clemens | -446.36 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Taxi - Clemens | -28.75 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Car Rental - Clemens | -149.13 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Meal - Clemens | -12.24 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Fuel - Clemens | -19.25 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Flight - Clemens | -263.98 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Flight - Clemens | -22.00 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Taxi - Clemens | -45.00 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Taxi - Clemens | -8.66 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Meal - Clemens | -6.70 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Taxi - Clemens | -4.75 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Meal - Clemens | -10.00 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Meal - Clemens | -6.90 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Taxi - Clemens | -5.66 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Hotel - Clemens | -145.40 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Flight - Clemens | -228.98 |

**3:16 PM**

**05/13/16**

**Accrual Basis**

# Client Cost Account
## Class QuickReport
### All Transactions

| Type | Date | Num | Name | Memo | Amount |
|------|------|-----|------|------|--------|
| Check | 05/05/2016 | 5 | 915323133 | KKS Flight - Clemens | -131.10 |
| Check | 05/05/2016 | 5 | 915323133 | KKS Flight - Clemens | -206.98 |
| Check | 05/05/2016 | 5 | 915323133 | JB - Flight - Clemens | -117.96 |
| Check | 05/05/2016 | 5 | 915323133 | JB Parking - Clemens | -30.00 |
| Check | 05/05/2016 | 5 | 915323133 | JB Meal - Clemens | -24.00 |
| Check | 05/05/2016 | 5 | 915323133 | JB Meal - Clemens | -21.11 |
| Check | 05/05/2016 | 5 | 915323133 | JB Taxi - Clemens | -53.65 |
| Check | 05/05/2016 | 5 | 915323133 | JB Flight - Clemens | -457.96 |
| Check | 05/05/2016 | 5 | 915323133 | NP Fuel - Clemens | -14.80 |
| Check | 05/05/2016 | 5 | 915323133 | NP Rental - Clemens | -35.01 |
| Check | 05/05/2016 | 5 | 915323133 | NP Fuel - Clemens | -27.93 |
| Check | 05/05/2016 | 5 | 915323133 | NP Taxi - Clemens | -33.90 |
| Check | 05/05/2016 | 5 | 915323133 | NP - Fuel Clemens | -26.93 |
| Check | 05/05/2016 | 5 | 915323133 | NP Flight - Clemens | -477.96 |
| Check | 05/05/2016 | | 915323133 | AC/ Copy Fees - Clemens | -1,681.85 |
| Check | 05/10/2016 | 22978 | John Bickford | Mileage - Clemens | -76.14 |
| Check | 05/10/2016 | 22978 | John Bickford | Mileage - Clemens | -76.14 |
| Check | 05/11/2016 | 22994 | TSG Reporting | 021816-335762 - Clemens | -728.00 |
| Check | 05/11/2016 | 5 | 915323133 | JB - Flight - Clemens | -117.96 |
| Check | 05/12/2016 | 23004 | TransPerfect Legal Solutions, Inc. | 094682 - Clemens | -675.00 |
| Check | 05/12/2016 | 23017 | Robert Parris, A Professional Corp | Airfare - Clemens | -359.96 |
| Check | 05/12/2016 | 23017 | Robert Parris, A Professional Corp | Parking - Clemens | -18.51 |
| Check | 05/12/2016 | 23017 | Robert Parris, A Professional Corp | Taxi - Clemens | -65.00 |
| Check | 05/12/2016 | 23017 | Robert Parris, A Professional Corp | Bart x2 - Clemens | -40.00 |
| Check | 05/12/2016 | 23017 | Robert Parris, A Professional Corp | Meal - Clemens | -15.06 |
| Check | 05/12/2016 | 23017 | Robert Parris, A Professional Corp | Meal x 5 - Clemens | -79.59 |
| Check | 05/12/2016 | 23017 | Robert Parris, A Professional Corp | Mileage - Clemens | -78.84 |
| Check | 05/13/2016 | | Thomson West | Clemens | -1.80 |
| Check | 05/13/2016 | | Thomson West | Clemens | -107.76 |
| Check | 05/13/2016 | | Express Network | 83793 - Clemens | -95.00 |
| Check | 05/13/2016 | | Express Network | 87088 - Clemens | -95.00 |
| Check | 05/13/2016 | | Express Network | 87672 - Clemens | -99.00 |
| Check | 05/13/2016 | | Express Network | 87834 - Clemens | -100.50 |

Total CLASS Clemens v. Hair 156576      -80,226.85

**TOTAL**      **-80,226.85**

## <u>CERTIFICATE OF SERVICE</u>

I, John M. Bickford, an attorney, certify that on August 10, 2016, I served the above and foregoing **DECLARATION OF JOHN M. BICKFORD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL**, by causing true and accurate copies of such paper to be filed and transmitted to the persons shown below via the Court's CM/ECF electronic filing system, on this the 10th day of August, 2016.

SEYFARTH SHAW LLP
Andrew M. McNaught, Esq.
Justin T. Curley, Esq.
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone:    (415) 397-2823
Facsimile:    (415) 397-8549
E-mail: amcnaught@seyfarth.com
jcurley@seyfarth.com


/s/ *John M. Bickford*  .
John M. Bickford